UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MDL NO. 11-MD-02222-COHN/SELTZER

IN RE:     ENFAMIL LIPIL MARKETING )
           AND SALES PRACTICES      )
           LITIGATION               )
                                    )
                                    )
                                    )        MDL-2222
                                    )
This Document Relates to:           )
                                    )
*Nelson v. Mead Johns & Company, LLC* )
No. 09-61625-CIV-COHN/SELTZER       )
                                    )
                                    )

## STATEMENT OF OBJECTION TO PROPOSED SETTLEMENT AND INCORPORATED MEMORANDUM SUPORTING OBJECTION

NOW INTO COURT COMES Class Member and Objector, Sandra M. Pack ("Mrs.

Pack"), by and through counsel, pursuant to the Court's Order Preliminarily Approving Class

Action Settlement, Conditionally Certifying the Class, Providing for Notice and Scheduling

Order dated March 18, 2011, and Rule 23(d) of the Federal Rules of Civil Procedure, and

submits this Statement of Objection to Proposed Settlement and Incorporated Memorandum

Supporting Objection.

Mrs. Pack is a citizen and resident of Knox County, Tennessee. Her address is 1803

Water Mill Trail, Knoxville, TN 37922. She does not have a home phone number. In order to

satisfy the requirement that she provide her signature in on her objection, Mrs. Pack hereby

tenders as **Collective Exhibit 1** (1) a copy of her completed claim form verifying she is a Class

member and (2) an original "Signature of Class Member/Objector", both of which were signed

personally by Mrs. Pack.

As set forth in more detail below, Mrs. Pack objects to the settlement as well as Class Counsel's request for attorneys' fees in the amount of Three Million Five Hundred Thousand Dollars ($3,500,000.00).

## I. INTRODUCTION

Plaintiffs allege Defendant falsely represented to consumers that its Enfamil LIPIL® baby formula was the only formula containing docosahexaenoic acid and arachidonic acid which promote brain and eye development in infants. According to the Amended Complaint (*09-cv-61625-JI, dkt 139, ¶11*), "Defendant's Enfamil LIPIL was a leading brand of infant formula, with approximately $2.8 billion in sales in 2008." Assuming similar sales during the 4 ½ year class period, Enfamil LIPIL sales by Defendant total approximately $12.5 Billion.

Plaintiffs further allege that Enfamil LIPIL is sold at a "hefty premium" and "faces tough competition from lower-priced store brands and private label product." (Id. ¶3). Objector Lisa Wallace Grossman has advised the Court that Enfamil was 20% higher than its competitors.[1] Assuming Ms. Grossman's 20% premium is a reasonable estimate of the unwarranted price differential, damages to the class as a whole would be $2.52 Billion.

Numerous lawsuits were filed across the United States, which were ultimately transferred to this Court pursuant to the 28 U.S.C. §1407.

The parties have reached a proposed settlement, which this Court has preliminarily approved. Under the proposed settlement, Class Members will collectively receive between $8,000,000 and $12,000,000 in cash or Enfamil Premium® Infant formula ("Infant Formula");

---

[1] *11-md-02222-JI, dkt. 51.* ("It was about $24 a can. This was a good 20% more than the less expensive, but equally nutritious, alternatives. Roughly, our family was 'guilted' by Enfamil, out of approximately $170 over the twelve months.")

specifically, a Class Member who purchased Enfamil LIPIL for six months or less is eligible to receive $6.00 in cash or one (1) 12.5 oz. container (or the nearest equivalent) of Infant Formula, and a Class Member who purchased Enfamil LIPIL for more than six months is eligible to receive $12.00 in cash or two (2) 12.5 oz. containers (or the nearest equivalent) of Infant Formula. However, as explained in the Notice to Class Members, "if the value of Infant Formula (valued at retail) and cash actually claimed by Class Members exceeds $12 Million, then benefits will be reduced proportionally."[2]  Importantly, lawyers for the Plaintiffs have also negotiated for Defendant to pay additional monies which are not available for distribution to Class Members, specifically a $3,500,000 attorneys' fee, $140,000 in expenses and $23,000 collectively in incentive payments to the named plaintiffs.

As set forth below, Objector objects to the proposed settlement for five primary reasons. First, the proposed settlement is inadequate.  Second, the allocation of the settlement among Class members who choose to receive Infant Formula and those who prefer cash is unfair, and the unfairness is potentially exacerbated by the unclear mechanisms by which compensation will be "reduced proportionally" in the event claims exceed $12 Million.  Third, the potential *cy pres* distribution of any portion of the settlement in this case is improper.  Fourth, the requested attorneys' fees are excessive and should be included in the funds available for distribution to Class members.  Fifth, the notice to class members regarding their right to object to the fees and expenses sought by Class Counsel is fundamentally flawed to such an extent that it violates due process and Rule 23, such that additional notice is required.

---

[2] If claims are less than $8,000,000, rather than provide additional compensation to Class members, Defendant will pay the remainder in its products to undefined charities.

3

## II.   STANDARD OF REVIEW

**A.   Standard for Approving Class Action Settlements in General**

A district court may approve a settlement only if it is "fair, reasonable, and adequate."

Fed. R. Civ. Proc. 23(e)(1)(C).  The Supreme Court has emphasized that the predominant

concern for the district court when reviewing a proposed class action settlement should be to

protect absent class members.  *Amchem Prods., Inc. v. Windsor*, 117 S. Ct. 2231 (1997).

Absent class members have little at stake and thus insufficient incentive to closely

monitor class counsel and his strategic choices. *See, Mars Steel Corp. v. Continental Ill. Nat 'I*

*Bank & Trust Co., 834 F.2d 677, 681 (7th Cir. 1987)*. Accordingly, the role of the District Courts

in evaluating proposed settlements is akin "to the high duty of care that the law requires of

fiduciaries." *Reynolds v. Beneficial Nat'l Bank, 288 F.3d 277, 280 (7th Cir. 2002)*.  District

Courts must "exercise the highest degree of vigilance in scrutinizing proposed settlements of

class actions." *Synfuel Techs., Inc. v. DHL Express (USA), Inc., 463 F.3d* 646, 653 *(7th Cir.*

*2006)* quoting *Reynolds, 288 F.3d at 279*.

Rule 23(e) provides no specific guidance on how courts assess the fairness of class action

settlements.  However, the Eleventh Circuit has set forth six factors to consider "[i]n determining

whether the proposed settlement protects the interests of the absent class members" and is fair, -

adequate, and reasonable:

> (1) the likelihood of success at trial; (2) the range of possible
> recoveries; (3) the point on or below the range of possible
> recoveries at which the settlement is fair, adequate and reasonable;
> (4) the complexity, expense and duration of litigation; (5) the
> substance and degree of opposition to the settlement; and (6) the
> stage of the proceedings at which the settlement was achieved.

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 558-59 (N.D. Ga. 2007),

quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  See also, Klonoff, Robert

H., *Class Actions and Other Multi-Party Litigation*, p. 192-3 (West 1999).

      Courts have demonstrated an appropriately higher level of scrutiny of certain class action

settlements. In particular, Courts are highly skeptical of settlements using in kind payments as

the primary means of compensating class members, see, *In re Mexico Money Transfer Litig.*, 267

F.3d 743 (7th Cir. 2001), and/or lower compensation to certain class members, see *In Re General*

*Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig. ("G.M. Trucks)*, 55. F. 3d 768,

808 (3d. Cir. 1995) ("One sign that a settlement may not be fair is that some segments of the

class are treated differently from others.")

      Turning to the issue of notice, "class actions, as other cases, are subject to the

requirements of due process." *Twigg v. Sears & Roebuck & Co., 153 F.3d 1222, 1226 (11th Cir.*

*1998).*  The Eleventh Circuit has explained the due process requirements of advising absent class

members of their rights as follows:

> "The essence of due process is that deprivation of life, liberty, or
> property by adjudication be preceded by *notice* and opportunity for
> a hearing appropriate to the nature of the case." *In re Nissan Motor*
> *Corp. Antitrust Litig., 552 F.3d 1088, 1103 (5th Cir. 1977)*
> *(citation and quotations omitted) (emphasis added).* See also *In re*
> *Gen. Am. Life. Ins. Co. Sales Practices Litig., 357 F.3d 800, 804*
> *(8th Cir. 2004)* (stating, in the context of a class action, that "[t]he
> most important element of due process is adequate notice."). Our
> predecessor circuit has stated that "[t]o satisfy this principle, it is
> not only necessary that the notice reach the parties affected but that
> it convey the required information." *Nissan, 552 F.3d at 1103*
> *(citations omitted).* The notice sent to class members must inform
> them whether "claims like [theirs] were litigated in the [earlier]
> action." *Twigg, 153 F.3d at 1228.* In addition, the class members'
> "substantive claims must be adequately described [and] the notice
> must also contain information reasonably necessary to make a

decision to remain a class member and be bound by the final
judgment." *Nissan, 552 F.3d at 1104-05*. In reviewing the class
notice to determine whether it satisfies these requirements, "we
look solely to the language of the notices and the manner of their
distribution." *Twigg, 153 F.3d at 1227*.

*Adams v. Southern Farm Bureau Life Ins., 493 F.3d 1276, 1285 (11ᵗʰ Cir. 2007)*.

### III.   STATEMENT OF SPECIFIC OBJECTIONS

### A.   THE SETTLEMENT IS INADEQUATE

In determining whether the monetary relief in a proposed class action settlement is

adequate, district courts are instructed to compare the settlement to "the present value of the

damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not

prevailing." *G.M. Trucks*, 55 F.3d at 806 (quoting *Manual for Complex Litigation 2d*).  "This

inquiry measures the value of the settlement itself to determine whether the decision to settle

represents a good value for a relatively weak case or a sell-out of an otherwise strong case." *In re*

*Chambers Dev. Sec. Litig.*, 912 F. Supp. at 839. 912 F. Supp. 822, 839 (W.D. Pa. 1995).  See

also, *G.M. Trucks*.

The settling parties bear the burden of proving the reasonableness of a proposed

settlement. *Holmes v. Continental Can. Co., 706 F.2d 1144 (11ᵗʰ Cir. 1983)*.  The court must

conduct its own independent analysis of the settlement terms, rather than accept the parties'

biased opinions, conclusions and assurances.[3]  *In re Pet Food Prod. Liab. Lit.*, 629 F.3d 333 (3ʳᵈ

Cir. 2010); see also, *Reynolds*, 288 F.3d at 283 (cautioning against "paint[ing] with too broad a

brush [and] substituting intuition for . . . evidence and careful analysis").

---

[3] Plaintiffs remarkably rely upon a footnote in *Leverso* v. *Southtrust Bank Nat 'l Ass'n,* 18 F.3d 1527 (11th Cir.
1994) for the proposition that this Court should blindly accept the opinions of Class Counsel in determining the
adequacy of the settlement.  However, the footnote merely refers to the factors considered by the District Court as
part of the history of the litigation.  To be sure, *Leverso* does not support the proposition that the district court should
merely follow the opinions of Class Counsel.  Further, in *Leverso* the Eleventh Circuit determined the trial court
judge had abused his discretion and ***reversed*** the lower court's opinion.

"Reliance on counsel's opinion tends to render the district court captive to the attorney and fosters rubber stamping by the court rather than the careful scrutiny which is essential in judicial approval of class action settlements. Such a practice offers the same host of dangers that underlies the evidentiary rule against the admissibility of hearsay testimony.  The objectors and the court must judge the evidence second hand and determine the credibility, not of the actual witnesses, but of the attorney for such witnesses." *Holmes, 706. F. 2d at 1150.*

Despite bearing the burden of "developing a record" regarding the fairness and adequacy of the settlement, *Holmes, 706. F. 2d at 1147*, the parties have provided little or no facts or data to the Court and absent Class members.  For example, Plaintiff's Memorandum filed in support of the settlement (*11-md-02222-JI, dkt # 54-1*) contains *not one word* regarding the possible damages award in this case.  Moreover, Class Counsel severely overstates the prospect of Mead Johnson successfully defending this case on the merits.  After all, in a case brought successfully against Mead Johnson by PBM Products, LLC (Mead Johnson's competitor in the baby formula market), a jury has already determined that its advertisements were false.[4]

Make no mistake, if well prosecuted, this is very good lawsuit for the Class.  There is a roadmap for proving liability through the *PBM* case.  There are significant damages, not to mention the availability of treble damages and attorneys' fees.  Given these factors, the relatively minimal settlement (which includes a cumbersome claims process and reduced compensation to class members preferring cash to baby formula) is inadequate.  More importantly, the parties have not met ***their burden*** to prove the settlement is adequate.

---

[4] Although it appealed, Mead Johnson did not attack the jury's determination that it had engaged in false advertising of Enfamil LIPIL. The Fourth's Circuit's opinion characterizes the issues on appeal as "(1) whether the district court erred in its dismissal of Mead Johnson's counterclaims; (2) whether the district court abused its discretion in its admission of expert opinion testimony and evidence of prior litigation between the parties; and (3) whether the district court erred or abused its discretion in issuing [an] injunction." *PBM Products, LLC v. Mead Johnson & Co. 639 F.3d 111 (4th Cir. 2011).*

Mrs. Pack believes under the proposed structure a reasonable settlement would be 40-50% of potential damages (including treble damages and attorney fees.) See, *Van Horn v. Nationwide Prop. & Casualty Co. 2010 U.S. Distr. LEXIS 42357 \*19 (N.D. Ohio, April 30, 2010) (characterizing fifty percent recovery as a "good result" but not "an extraordinary one.")*

## B.   THE ALLOCATION OF THE SETTLEMENT PROCEEDS IS UNFAIR

"Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *In re Computron Software Inc., 6 F. Supp. 2d 313, 321 (D.N.J. 1998).* See also, *Holmes, 706. F. 2d at 1147,* recognizing that "[w]hile most cases deal with the fairness of the total settlement as between the defendant and the class as a whole, the same legal principles apply 'with as much force' to appellate review of the allocation agreement as to review of the settlement between plaintiffs and defendants (citing *In re Chicken Antitrust Litigation,* 669 F.2d at 238 and *In re Corrugated Container Antitrust Litigation,*643 F.2d 195, 218-21 (5th Cir.1981), *cert. denied,* 456 U.S. 98, 1012.

"Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable." In re Aetna, 2001 WL 20928, at \*12 (citing *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000).

In this case, not only is the settlement amount low, but the allocation is unfair. Class members who choose the option of receiving cash will be shortchanged. The cash payment is $6.00 or $12.00; whereas the retail price of a single 12.5 oz. can of Enfamil Premium is approximately 14.00. Mrs. Pack and other Class Members preferring cash receive less than ½ that value that other Class members choosing to receive Enfamil Premium.

Class members should not be forced to accept product they do not need or want in order to be on equal footing with other Class members. Nor, should they be forced to do business with a company that deceived them to obtain the full benefits of the settlement.

Moreover, if the claims exceed $12 Million such that the benefits are "proportionately reduced," Class members choosing to receive cash may be shortchanged even more. For example, if benefits are proportionately reduced 20%[5], the $6.00/$12.00 payment becomes $4.80/$9.60. But, what about the reduction in Infant Formula – would those choosing to receive Infant Formula receive 20% less formula (i.e. a 10 oz. container)? Mrs. Pack and her counsel understand that Defendant does not currently manufacture a 10 oz. container[6], and it is highly unlikely Mead Johnson will manufacture a special 10 oz. container simply to fulfill the settlement. Rather, Defendant will in all likelihood give Class members choosing Infant Formula the full benefit of the settlement and only reduce the cash payments. Of course, at this point, many Class members' children will have outgrown the need for formula anyway.

Further, because there are no restrictions on Defendant's ability to change the size of Infant Formula containers it markets and sells or the retail price of its product, the amount payable to Class members choosing cash is subject to change. Defendant could, for example, raise the retail price of the Infant Formula by selling larger containers[7] and/or increasing its prices, which would have the potential effect of lowering the cash it is required to pay.

---

[5] The 10% reduction if for illustration purposes only. Of course, no one can predict the size of the reduction, if any.
[6] According to Defendant's website, the 12.5 oz. is the *smallest* size container of Enfamil Premium powder currently sold by Defendant, with the exception of single serving packets.
http://www.enfamil.com/app/iwp/enf10/content.do?dm=enf&id=/Consumer_Home3/Infants/EnfamilPremiumInfant&iwpst=B2C&ls=0&csred=1&r=3490614741

[7] Exhibit H to the Complaint demonstrates that Mead Johnson previously sold its product in 12.9 oz. containers, so clearly the size of the container is subject to change.

9

For example, suppose there are a total of 1,000,000 class members who submit claims, all of whom purchased Enfamil LIPIL for more than 6 months; 200,000 class members choose to receive Infant Formula; and, 800,000 choose to receive cash.  At a retail price of $14.00 per container, the total claims are $15.2 million.[8]  The pro rata reduction would be 21% ($12 Million ÷ $15.2 Million = 79%, meaning each claimant will receive 79% of the claim and the "proportionate" reduction is 21%); the cash distribution is thus reduced from $12.00 to $9.48 ($12.00 X .79 = $9.48).

But, if due to inflation or other factors the retail price of the container rises to $17.50[9], the total claims become $16.6 Million.[10]  In turn, the pro rata reduction becomes 28% ($12 Million ÷ $16.6 Million = 72%, and the cash distribution is further to $8.64 ($12.00 X .72 = $8.64).  But, the Class members choosing to receive Infant Formula likely will not suffer any loss for the reasons described above; that is, Mead Johnson will not specially manufacture a 9 oz. container any more than it would specially manufacture a 10 oz. container.  Accordingly, Class members choosing to receive product, in effect, will have their compensation increased because they will receive a product with a higher retail price.

The bottom line is that if prices for Enfamil Premium rise, ironically the only class members harmed will be those who obviously have no desire or need for baby formula and who are effectively forced to accept a smaller amount of cash.[11]

---

[8] Under that scenario, total claims are calculated as follows:
> Cash Claims = 800,000 X $12.00 = $9,600,000.
> Infant Formula Claims = 200,000 X $28 = $5,600,000.
> Total Claims = $9,600,000 + $5,600,000 = $15,200,000.

[9] This equates to a 25% price increase.

[10] Under this scenario, total claims are calculated as follows:
> Cash Claims = 800,000 X $12.00 = $9,600,000.
> Infant Claims = 200,000 X $35 = $7,000,000.
> Total Claims = $9,600,000 + $7,000,000 = $16,600,000.

[11] Mrs. Pack suggests that one method to at least partially remedy the inequitable allocation is to value Infant Formula at Mead Johnson's cost of production, rather than the retail price.

## C.    THE POTENTIAL *CY PRES* DISTRIBUTION IS IMPROPER

Mrs. Pack also objects to any potential distribution of infant formula to unnamed charities

as part of the settlement. A *cy pres* distribution should only be made after all Class members

who file claims are compensated ***in full*** – which will certainly not occur under the proposed

settlement. [12]

A *cy pres* remedy is appropriate only where *excess* class recovery – i.e. funds remaining

after all class members have been ***fully compensated*** - cannot feasibly be distributed to

individual class members or where unclaimed funds remain following distribution to the class.

See *In re Pharmaceutical Industry Avg. Wholesale Price Lit., 588 F.3d 24 (1st Cir. 2009)*

(approving *cy pres* of unclaimed funds because district court had ensured full treble recovery of

class members first), *Molski v. Gleich, 318 F.3d 937 (9th Cir. 2003)* (rejecting a proposed

consent decree because the *cy pres* award replaced individual damages) and *In re Matzo Food*

*Products Litigation, 156 F.R.D. 600 (D.N.J. 1994)* (refusing to approve class settlement with

only *cy pres* distribution), *Government Employees Hosp. Ass'n v. Serono Intern., S.A., 246*

*F.R.D. 93, (D. Mass. 2007)*.

In this case, Class members will not be *fully* compensated.  Further, the settlement at

issue here already contains a method to distribute funds to class members.  Using *cy pres* to

benefit third-parties instead of class members is inappropriate.  In short, there is no defensible

reason to have any *cy pres* distribution in this settlement until reasonable measures are taken to

ensure that the Class members (or alternatively all Class members who file claims) are

completely compensated to the fully extent allowed by law.

---

[12] Mrs. Pack does not challenge the propriety of *cy pres* awards in limited circumstances, despite the inherent conflicts such distributions create.  See, e.g., Martin H. Redish, et al., Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis, 62 Fla. L. Rev. 617 (2010).

**D.    THE $3,500,000 PORTION OF THE SETTLEMENT
ATTRIBUTATBLE TO ATTORNEY FEES SHOULD BE
INCLUDED IN THE FUNDS DISTRIBUTABLE TO CLASS
MEMBERS, AND THE FEES REQUESTED BY CLASS COUNSEL
ARE EXCESSIVE.**

A fundamental problem with Class Counsel's proposed settlement is the improper and

conflicting manner in which Class Counsel accounts for the $3,500,000, which Class Counsel

separately negotiated for their fee.  Moreover, the fee requested fee is excessive.

Although the amount of attorneys' fees to be awarded in this case is generally within the

Court's discretion, "a judge's discretion [on the issue of attorneys' fees] is not unlimited." Hardt

v. Reliance Standard Life Ins. Co., — U.S. — , 130 S. Ct. 2149, 2158 (2010).  Specifically, when

a district court commits an error of law in deciding how to exercise its discretion, that court has,

by definition, abused its discretion. *United States v. Brown, 332 F.3d 1341, 1343 (11th Cir.

2003)* ("A district court by definition abuses its discretion when it makes an error of law."

quoting *Koon v. United States, 518 U.S. 81, 100, 116 S.Ct. 2035, 2047 (1996)*).

1.    *The $3,500,000 belongs to the Class members, not Class Counsel.*

Make no mistake - the rights of Class members in this case (specifically the *Nelson* case)

include a claim for attorneys' fees

> (1) In any civil litigation resulting from an act or
> practice involving a violation of this part, except as
> provided in subsection (5), the prevailing party, after
> judgment in the trial court and exhaustion of all appeals,
> if any, may receive his or her reasonable attorney's fees
> and costs from the nonprevailing party.

> (2) The attorney for the prevailing party shall submit a
> sworn affidavit of his or her time spent on the case and
> his or her costs incurred for all the motions, hearings,
> and appeals to the trial judge who presided over the civil
> case.

(3) The trial judge may award the prevailing party the
sum of reasonable costs incurred in the action plus a
reasonable legal fee for the hours actually spent on the
case as sworn to in an affidavit.

(4) Any award of attorney's fees or costs shall become a
part of the judgment and subject to execution as the law
allows.

Florida Statutes §501.2105. [13]

    Importantly, any fee award under this statute is payable to prevailing party – not the

prevailing party's attorney. *Turner v. Sec. of the Air Force, 944 F.2d 804 (11ᵗʰ Cir. 1991)* (fee

shifting statutes were "not passed for the benefit of attorneys but to enable litigants to obtain

competent counsel worthy of a contest with the caliber of counsel available to their opposition"

citing *Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 719 (5th Cir.1974)*, such that

"it is clear that the award of attorneys' fees belongs to the prevailing party, not to the attorney

representing the party.") See also, *Astrue v. Ratliff, 130 S. Ct. 2421, 2125 (2010) ("prevailing

party is a 'term of art' and that refers to the prevailing litigant.") and United States, ex. Rel.

Virani v. Jerry M. Lewis Truck Parts & Equip., 89 F. 3d 574, 577 (9ᵗʰ Cir. 1996) ("The Supreme

Court has made in clear that, in general, statutes bestow fees on parties, not upon attorneys.")*

    By classifying this matter as a "common fund" case, Class Counsel seems to

acknowledge the $3,500,000 is first and foremost payable to the Class. But Class Counsel wants

to have their cake and eat it too.

    One the one hand, Class Counsel asks the Court to grant them a percentage of the

common fund; but on the other hand, in the notice regarding the proposed settlement, Class

Counsel advised Class members that the Court's award of fees "will not affect the value of the

---

[13] Rights to attorneys' fees are generally available under unfair and deceptive trade practices statutes or similar laws in every state.

Settlement proceeds to be distributed to the Class."

https://formulasettlement.com/FrequentlyAskedQuestions.aspx[14]

Moreover, it is noteworthy that while the lawyers needed 2 mediations and 8 months to settle the claims of the Class, the parties allegedly negotiated the $3.5 Million fee in one week or less. *Blood Dec. ¶18 ("The Parties did not negotiate the issue of Plaintiffs' Counsel's attorneys' fees and reimbursement of expenses until after agreement on the substantive aspects of the Settlement. These negotiations took place during the week of March 6, 2011.")* There is no indication that defense counsel reviewed the number or hours incurred by Class Counsel or their hours. [15]

Unquestionably, any award of attorneys' fees is first and foremost payable to the parties – in this case the Class. Accordingly, the proposed settlement, if approved, should be viewed as a fund of between $11.5 Million to $15.5 Million, all of which is available for distribution to Class members, reduced only by the fees, expenses and incentive awards approved by this Court.

  2.   *Class Counsel's Lodestar is Excessive. Specifically, The Lodestar Should be Calculated Based Solely Upon the Number of Hours Worked by the Attorneys for Allison Nelson.*

---

[14] The "Frequently Asked Questions" section of the settlement website states:

  **17. How will the lawyers be paid?**

  **Answer:**

  Class Counsel in the Nelson case and Plaintiffs' counsel in the seven other similar cases that will be resolved by this Settlement have not received any payment for their services in conducting the litigation on behalf of the Class Representative and the Members of the Class. If the Settlement is approved by the Court, Mead Johnson has agreed to pay attorneys' fees in the amount of $3.5 million and expenses not to exceed the amount of $140,000, subject to the approval of the Court. Any award will cover the fees and expenses for the attorneys in the eight cases filed against Mead Johnson. Any fees and expenses awarded to these attorneys by the Court will be paid by Mead Johnson and will not affect the value of the Settlement proceeds to be distributed to the Class. (emphasis added)

[15] Given the quick negotiation and lack of any indication of critical flyspecking of Class Counsels' hours/rates, one is apt to wonder whether there might have been an understanding all along that the negotiated fee was going to 25% of the overall recovery.

Class Counsel has provided very few details regarding work performed by the numerous law firms seeking payment, and likely with good reason. The work was necessarily fraught with duplication which did not benefit the Class or otherwise improve the settlement. But, of course, as with all class action settlements none of the parties seeking approval of this settlement have any interest or incentive in highlighting the excessive fee and as expected, have present the proposed settlement to both the class and the court in the most favorable light, downplaying any possible weaknesses or problems with the deal. *See, Amchem,* 521 U.S. at 621.

Mead Johnson wants the case to be resolved, the named plaintiffs want their incentive award, and the Plaintiffs' attorneys want to be paid.[16] In the absence of an adversarial proceeding, the court is poorly situated to uncover any potential conflicts between class counsel and the class, or among various class members, or to otherwise assess the fairness of the proposed settlement. Hence, the significance of hearing the contentions of objectors, and the duty of the court to fully explain their objections on the record. *Waters v. City of Chicago,* 420 N .E.2d 599 (Ill. App. 1981). After all, it has been said that objectors are the *only* parties with an incentive to uncover flaws in the proposed settlement. Wasserman, R., *Dueling Class Actions,* 80 B. U. L. Rev. 461, 483 (April 2000).

This matter was not consolidated by the Judicial Panel on Multidistrict Litigation until February 2011 – the exact same time when Mr. Blood was purportedly finishing his settlement negotiations. *Dec. of Timothy G. Blood ("Blood Dec."), :09-cv-61625-JIC dkt 138-2, ¶17.* Because Mr. Blood was concluding his negotiations when this case became a MDL, clearly the other firms seeking payment had absolutely zero involvement in reaching the settlement. In the

---

[16] Understandably, counsel in the *Nelson* case must ensure the other lawyers are paid, or else run the risk that they will file objections and jeopardize the settlement.

end, their involvement did not improve the settlement any.  Yet, they seek a substantial portion
of the settlement funds.

The Declaration of David Pastor (*11-md-02222-JI,  dkt 54-6, "Pastor Dec"*) is a good
example.  He describes his work and the work of his firm as follows:

> 5.  My firm was counsel for plaintiffs in two actions that are part
> of MDL No. 2222, *Martin* v. *Mead Johnson Nutrition Company,*
> No. 09-11609-NMG (D. Mass.) and *Kaplan* v. *Mead Johnson
> Nutrition Company,* No. 09-644 (M.D. Fla.). My firm conducted
> substantial legal and factual research relating to the drafting of the
> complaints, amended complaints, and the statutory demand letter
> under the Massachusetts consumer protection act and also
> conducted additional research and investigation during the overall
> prosecution of our cases. We also consulted with clients and
> consultants; attended motion hearings and status conferences;
> briefed and argued motions to dismiss and objections to the Report
> and Recommendation of the Magistrate Judge, including factual
> research and investigation regarding jurisdictional issues. We also
> reviewed substantial documents in the ordinary course of
> prosecuting our actions and preparing our class certification
> submissions; participated in case management conferences with
> defendants' counsel; and prepared papers in response to MDL
> motion for transfer.

Mr. Pastor's efforts do not appear to have resulted in any benefit to the Class.  He did not
participate in any mediation or negotiation of the proposed settlement.  And, although he claims
to have "consulted with [clients and] consultants," the expenses of his firm (*Pastor Dec. ¶7*)
reflect that $0.00 was spend on "Expert/Consultants!"  With due respect to Mr. Pastor and the
other co-counsel, each appears to have simply filed a "copycat" lawsuit  on the heels of the PBM
case against Mead Johnson which was being fought in Virginia's federal "rocket docket."  There
is no evidence that Mr. Pastor or other co-counsel performed any task that was not duplicative of
the work performed by Mr. Blood and the other lawyers who filed the *Nelson* case.

Because the attorneys for Allison Nelson appear to have prosecuted and resolved this case solely on their own, only their fees and expenses should be considered by the Court.[17]

3. *The Hourly Rates Used in the Lodestar Calculation Should be The Prevailing Market Rate for Fort Lauderdale, Florida*

This Court should calculate a lodestar based upon the prevailing rates in this venue, not what Class Counsel might receive in higher priced markets such as California and Massachusetts. "The hourly rate must be determined with reference to prevailing market rates in the relevant community." *Davis v. Locke, 936 F.2d 1208 (11th Cir.1991).* The prevailing party bears the burden of justifying the rate requested. *Id. at 1215.*

In this case, Class Counsel has not established the prevailing market rate, but the rates charged by Mr. Wright may be instructive. If this Courts finds that in cases pending in this venue he and his firm typically receive the rates set forth in his Declaration ($450.00/hour for Sr. Partners, $350.00 for other lawyers, 175.00 for law clerks, and $150.00 for paralegals), Mrs. Pack will not object to these rates being applied across the board to all of the lawyers representing Allison Nelson.

4. *Class Counsel Should Not Receive a Multiplier or Enhancement Above the Lodestar*

The United States Supreme Court in *Perdue v. Kenny A. ex. rel. Winn*, 130 S. Ct. 1662 (2010) recently reaffirmed six (6) "important rules" regarding federal fee shifting statutes. First, a reasonable fee is a fee sufficient to induce a capable attorney to undertake the representation. Second, the lodestar method yields a fee that is presumptively sufficient. Third, multipliers (or "enhancements") may be awarded only in "rare" and "exceptional" circumstances. Fourth, a Court must not award an enhancement based on a factor that is subsumed in the lodestar calculation; therefore, the complexity of a case or the quality of counsel's performance generally

---

[17] In addition, only Allison Nelson should receive an incentive award.

may not be used to justify an enhancement because these factors should be fully and adequately addressed by hours recorded by counsel and counsel's hourly rate respectively. Fifth, the fee applicant bears the burden of proving that an enhancement is justified. Finally, an attorney requesting an enhancement above the lodestar must set forth "specific evidence" to support the award.

At a minimum, *Perdue* is persuasive authority for this Court. At least one federal court has applied to a "common fund" case under state law. "Although decided in the context of statutory fee shifting under 42 *U.S.C.* §1988, *Perdue* nevertheless provides persuasive caution that multipliers must be reserved for "rare" and "exceptional" circumstances. *[citation omitted]* Although this Court does not read *Perdue* to prohibit the use of multipliers in class actions, the case does suggest that enhancements are atypical and should not duplicate the same considerations affecting the lodestar rate." *Van Horn 2010 U.S. Dist. LEXIS 42357 *16*[18]

Because the proposed settlement if far from "exceptional," the attorneys for Ms. Nelson should not receive any multiplier or enhancement.

## E.   THE NOTICE TO CLASS MEMBERS OF CLASS COUNSEL'S MOTION FOR FEES, EXPENSES AND INCENTIVE AWARDS WAS FLAWED

"[P]rocess which is a mere gesture is not due process." *Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).* "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford

---

[18] The Court in *Van Horn* applied a 20% enhancement to the lodestar, but only after reducing class counsel's hourly rates by 20% because the requested rates were deemed too high for that venue.

them an opportunity to present their objections." *Mullane, 339 U.S. at 314 (internal citations omitted).*[19]

In this case, with regard to their application for attorneys' fees, it is clear that Class Counsel simply went through the motions and made no real effort to adequately notify Class members. Counsel did not place the motion and memorandum on the website dedicated to this matter. Further, despite knowing of the fact that Mrs. Pack was being represented by undersigned counsel and having a physical address, fax number and email address, Class Counsel did not forward a copy of their motion. In fact, Class Counsel took affirmative action to prevent Mrs. Pack from easily accessing their motion and memorandum by objecting to her counsel's request for ECF privileges in this case.

Even the limited notice to Class members was defective and failed to comply with Rule 23(h). Notice under Rule 23 must be structured "in a manner that enables class members rationally to decide whether they should intervene in the settlement proceedings or otherwise make their views known." *Reynolds v. National Football League*, 584 F.2d 280, 285 (8th Cir.1978). As explained above, the attorneys' fees should have been included in the funds distributable to the Class. Accordingly, the Notice should have advised class members (1) that any amount paid to the attorneys would reduce the funds available for distribution to the Class, and (2) that Class members had the right to object Class Counsel's fee request.

Not only did the Notice fail to notify the Class of this information, it misled Class members by advising them that "[a]ny fees and expenses awarded to these attorneys by the Court

---

[19] In addition, Rule 23(h) explicitly requires that notice of the motion for fees and expenses be "directed to class members in a reasonable manner." See, *In re: Mercury Interactive Corp. Securities Litigation, 618 F. 3d 988 (9th Cir. 2010)* (a district court errs as a matter of law - and thus abuses its discretion - when it sets the objection deadline for class members before the deadline for class counsel to file its motion for attorneys' fees and costs.)

will be paid by Mead Johnson and will not affect the value of the Settlement proceeds to be distributed to the Class."

For these reasons, the Notice (and lack thereof) in this case violated Rule 23 and due process.

## IV.  REQUEST FOR PERMISSION TO SPEAK AT FAIRNESS HEARING

Undersigned counsel requests permission to speak at the Fairness Hearing, and intends to request the Court's permission to appear telephonically.

## IV.  PRAYER FOR RELIEF

WHEREFORE, Sandra R. Pack, by and through counsel, prays that this Court reject the proposed settlement as inadequate.  Alternatively, Mrs. Pack prays that the Court (1) reject the proposed allocation as unfair to Class members, such as herself, who will choose to receive cash instead of Infant Formula, and (2) reject any cy pres distribution of the funds.

In addition, Mrs. Pack prays that this Court order that the $3,500,000 currently payable only to Class Counsel, instead be distributable to the Class to the extent the Court-awarded fees and expenses are less than $3,500,000.   Further, Mrs. Pack prays that the Court limit any award to Class Counsel for attorneys' fees to an appropriate lodestar amount, with no multiplier or enhancer, for only those lawyers representing Allison Nelson, and calculate at hourly rates not to exceed the rates typically charged and collected by William C. Wright.

Finally, Mrs. Pack requests that this Court decree that the Notice to Class members of Class Counsel request for attorneys' fees violated due process and Rule 23 and order (1) that the time for objections to Class Counsel's request for attorneys' fees and expenses be extended, (2) that Class Counsel be ordered to make a copy of its motion for attorneys' fees and expenses

available at https://formulasettlement.com/CourtDocuments.aspx and (3) that Class Counsel or

Defendant pay for additional publication notice to class members advising them that the

objection period has been extended.

Respectfully submitted this _19th_ day of August, 2011.

James. H. Price
249 North Peters Road, Suite 101
Knoxville, Tennessee  37923
(865) 246-0800
*Attorney for Class Member Sandra M. Pack*

CERTIFICATE OF SERVICE

I certify that on this ___19th___ day of August, 2011, a copy of the foregoing was served upon

the following:

Timothy G. Blood
Blood Hurst & O'Reardon
600 B. Street, Suite 1550
San Diego, CA  92101
*Class Counsel*

William C. Wright
The Wright Law Office, P.A.
301 Clematis Street, Suite 3000
West Palm Beach, FL  33401
*Class Counsel*

Gail Gottehrer
Axinn Veltrop Harkrider, LLP
90 State House Square
Hartford, CT 06103
*Mead Johnson's Counsel*

Parties may also access this filing through the Court's electronic filing system.

James. H. Price

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MDL NO. 11-MD-02222-COHN/SELTZER

IN RE:     **ENFAMIL LIPIL MARKETING** )
           **AND SALES PRACTICES** )
           **LITIGATION** )
            )
            )
_____ )    **MDL-2222**
            )
**This Document Relates to:** )
            )
*Nelson v. Mead Johns & Company, LLC* )
**No.  09-61625-CIV-COHN/SELTZER** )
            )
_____ )

**COLLECTIVE EXHIBIT 1 TO
SANDRA M. PACK'S STATEMENT OF OBJECTION AND
INCORPORATED MEMORANDUM SUPORTING OBJECTION**

This Claim Form must be
submitted online or
mailed and postmarked by
**November 25, 2011.**
Only one claim per household.

## CLAIM FORM

INFANT FORMULA SETTLEMENT

Please print (or type) clearly in blue or black ink.

FOR OFFICIAL USE ONLY

01

*9 9 9 9 9 9 9 9 9 9*

Claim Forms must be submitted online or
postmarked by **November 25, 2011** and mailed to:

Infant Formula Settlement
P.O. Box 2472
Faribault, MN 55021-9172

### 1. CLASS MEMBER INFORMATION

Your Name: _SANDIA M. PACK_

Your Mailing Address: _1803 Water Mill Trail_

City: _Knoxville_       State: _TN_       Zip Code: _37922_

Daytime Phone: ( _865_ ) _246_ - _0800_       E-mail Address *(optional)*: _____
- _Number for my attorneys_

### 2. BENEFIT SECTION INFORMATION

| | |
|---|---|
| A. How many months between October 13, 2005 and March 31, 2010 did you purchase Enfamil LIPIL®? *(check only one box)* | ☐ Six months or less<br>☒ More than six months |
| B. In what months and years did you purchase Enfamil LIPIL®? *(List by month and year range – for example, 05/2006 – 09/2006.)* | MONTH/YEAR  MONTH/YEAR<br>03/2008 - 03/2009<br>__/____ - __/____<br>__/____ - __/____ |
| C. For each child who was fed the Enfamil LIPIL® that you purchased between October 13, 2005 and March 31, 2010, please list the child's month and year of birth | MONTH/YEAR OF BIRTH<br>02/2008<br>__/____<br>__/____ |
| D. Which of the following Settlement benefits do you want to receive? *(check only one box)* | ☒ Cash<br>☐ Enfamil Premium® Infant |
| E. For the child or children identified above, did you receive Enfamil LIPIL® through the U.S.D.A.'s Women, Infants and Children program ("WIC")? (If you identified multiple children above, only answer "yes" if true for all of them.) | ☐ Yes<br>☒ No |

### 3. SIGN AND DATE YOUR CLAIM FORM

I affirm, under penalty of perjury, that I bought Enfamil LIPIL® infant formula in the United States between October 13, 2005 and March 31, 2010, that I did not receive Enfamil LIPIL® infant formula through the U.S.D.A.'s Women, Infants and Children ("WIC") program or purchase it for purposes of resale, and that all of the information on this Claim Form is true and correct to the best of my knowledge.

_Sandra M Pack_       _Sandra M Pack_       _8 / 2 / 11_
Signature                    Print Name                    Month/ Day /Year

*Your personal information is being collected for purposes of the proposed Settlement and will not be used for any other purpose without your permission.





## SIGNATURE OF CLASS MEMBER/OBJECTOR

Pursuant to the instruction for filing objections in *In Re: Enfamil LIPIL Marketing and Sales Practices Litigation*, No. 11-MD-02222-Cohn/Seltzer, I, Sandra M. Pack, am providing my signature below to accompany the Statement of Objection to Proposed Settlement and Incorporated Memorandum Supporting Objection filed on my behalf by Lacy, Price & Wagner, P.C.

Sandra M. Pack