UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| IN RE: ENFAMIL LIPIL MARKETING AND SALES PRACTICES LITIGATION, MDL No. 2222 | ) ) ) ) | Case No. 0:11-MD-02222-JIC <br><br> CLASS ACTION |
| THIS DOCUMENT RELATES TO: | ) ) ) | |
| *Nelson v. Mead Johnson Nutrition Company, et al.*, No. 09-61625-CIV-COHN/SELTZER | ) ) ) ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT
AND FOR ATTORNEYS' FEES AND EXPENSES**

00034923

## TABLE OF CONTENTS

Page

I. INTRODUCTION ....................................................................................................1

II. THE SMALL NUMBER OF OBJECTIONS SUPPORTS APPROVAL .......................3

III. THE OBJECTORS HAVE NOT MET THEIR BURDEN ...............................................4

    A. The Compensation to Individual Class Members is Adequate ...........................4

    B. The Settlement Redresses the Alleged Misconduct ...............................................7

    C. The *Cy Pres* Distribution is Proper ....................................................................8

    D. The Allocation of Settlement Benefits is Fair and Reasonable .........................10

    E. The Notice to Class Members Was Clear, Informative and Readily Meets Due Process .......................................................................................................11

    F. The Requested Award of Attorneys' Fees and Expenses is Reasonable ............13

        1. Dennis and Gnerer Objections to the Fee Award ...................................13

        2. Pack Does Not Dispute that 25% of the Total Settlement Value is a Reasonable Fee Award ..........................................................................14

        3. The Appropriate Method of Measuring Attorneys' Fees Is a Percentage of the Common Benefit .......................................................15

IV. THE PACK OBJECTION IS DEFECTIVE AND SHOULD BE STRICKEN .............18

V. CONCLUSION ...................................................................................................18

00034923

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<span style="font-variant: small-caps;">ASES</span>

*Allapattah Servs., Inc. v. Exxon Corp.*,
  No. 91-0986-CIV, 2006 U.S. Dist. LEXIS 88347 (S.D. Fla. Apr. 07, 2006)...........................4

*Alleyne v. Time Moving & Storage Inc.*,
  264 F.R.D. 41 (E.D.N.Y. 2010) .............................................................................................15

*Ass'n for Disabled Americans, Inc.* v. *Amoco Oil Co.*,
  211 F.R.D. 457 (S.D. Fla. 2002) ..........................................................................................3, 4

*Behrens v. Wometco Enter., Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988) ..............................................................................................5

*Bennett v. Behring Corp.*,
  96 F.R.D. 343 (S.D. Fla. 1982), ............................................................................................11

*Borcea v. Carnival Corp.*,
  238 F.R. D. 664 (S.D. Fla. 2006) ..............................................................................................5

*Camden I Condo. Ass'n v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ...........................................................................................14, 15

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ..................................................................................................3

*Elkins v. Equitable Life Ins. of Iowa*,
  No. CIVA96-296-CIV-7-17B, 1998 U.S. Dist. LEXIS 1557 (M.D. Fla. Jan. 27, 1998) .........3

*Figueroa v. Sharper Image Corp.*,
  517 F. Supp. 2d 1292 (S.D. Fla. 2007) ..................................................................................16

*Flinn v. FMC Corp.*,
  528 F.2d 1169 (4th Cir. 1975) ..................................................................................................5

*Francisco v. Numismatic Guar. Corp. of Am.*,
  No. 06-61677, 2007 U.S. Dist. LEXIS 96618 (S.D. Fla. Jan. 30, 2007)..................................8

*Gov't Emp. Hosp. v. Serono Int'l, S.A.*,
  246 F.R.D. 93 (D. Mass. 2007)................................................................................................9

*Hall v. AT&T Mobility LLC*,
  2010 U.S. Dist. LEXIS 109355 (D.N.J., October 13, 2010).....................................................10

*Hartless v. Clorox Co.*,
   273 F.R.D. 630 (S.D. Cal. 2011) ............................................................................9

*Hayes v. Arthur Young & Co.*,
   Nos. 91-15531, 91-15546 and 91-15593, 1994 U.S. Dist. LEXIS 23608 (9th Cir.
   Aug. 26, 1994) ........................................................................................................9

*In re Aetna Inc. Sec. Litig.*,
   2001 U.S. Dist. LEXIS 68 (E.D. Pa., January 4, 2001) ........................................10

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   2009 U.S. Dist. LEXIS 88404 (E.D.N.Y., September 25, 2009)............................10

*In re Barnes v. Fleet Boston Fin. Corp.*,
   No. 01-10395, 2006 U.S. Dist. LEXIS 71072 (D. Mass. Aug. 22, 2006) ................2

*In re Computron Software*,
   6 F. Supp. 2d 313 (D.N.J. 1998) ...........................................................................10

*In re Ikon Office Solutions v. Stuart*,
   194 F.R.D. 166 (E.D. Pa. 2000).............................................................................10

*In re Lawnmower Engine Horse Power Marketing and Sales Practice Litig.*,
   733 F. Supp. 2d 997 (E.D. Wis 2010)......................................................................2

*In re Matzo Food Prods. Litig.*,
   156 F.R.D. 600 (D.N.J. 1994).................................................................................9

*In re Mercury Interactive Corp. Sec. Litig.*,
   618 F.3d 988 (9th Cir. 2010) .................................................................................13

*In re Sunbeam Sec. Litig.*,
   176 F. Supp. 2d 1323 (S.D. Fla. 2001) ..............................................................5, 15

*In re Toys "R" Us Antitrust Litig.*,
   191 F.R.D. 347 (E.D. N.Y. 2000) ...........................................................................8

*In re UnitedHealth Group PSLRA Litig.*,
   643 F. Supp. 2d 1107 (D. Minn. 2009).....................................................................2

*Martinez v. Rick Case Cars, Inc.*,
   278 F. Supp. 2d 1371 (S.D. Fla. 2003) ....................................................................7

*McKinnie v. JP Morgan Chase Bank, N.A.*,
   678 F. Supp. 2d 806 (E.D. Wis. 2009).................................................................8, 9

*Molski v. Gleich*,
   318 F.3d 937(9th Cir. 2003) .....................................................................................9

iii

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)............................................................................................11

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ...........................................................................5

*Perdue v. Kenny A. ex rel. Winn*,
   130 S. Ct. 1662 (2010)....................................................................................17

*Perez v. Asurion Corp.*,
   501 F. Supp. 2d 1360 (S.D. Fla. 2007) ...........................................................3

*Perry v. M/I Homes, Inc.*,
   2010 U.S. Dist. LEXIS 52703 (M.D. Fla., February 12, 2010).......................15

*Pinto v. Princess Cruise Lines*,
   513 F. Supp. 2d 1334 (S.D. Fla. 2007) .........................................................14

*Shaw v. Toshiba Am. Info., Inc.*,
   91 F. Supp. 2d 942 (E.D. Tex. 2000)..............................................................2

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir.1990) .........................................................................8

*Smith v. WM Wrigley, Jr. Co.*,
   No. 09-60646-civ-JIC (S.D. Fla.) .................................................................17

*Stahl v. Mastec, Inc.*,
   2008 U.S. Dist. LEXIS 120887 (M.D. Fla., May 20, 2008)...........................14

*Stoetzner v. United States Steel Corp.*,
   897 F.2d 115 (3d Cir. 1990)............................................................................3

*Tuckish v. Pompano Motor Co.*,
   337 F. Supp. 2d 1313 (S.D. Fla. 2004) ...........................................................8

*United States v. City of Miami*,
   614 F.2d 1322 (5th Cir. 1980) ........................................................................4

*Waters v. Int'l Precious Metals Corp.*,
   190 F.3d 1291 (11th Cir. 1999) ....................................................................14

00034923

**STATUTES**

Fed. R. Civ. P. 23 ..............................................................................................................12

Fed. R. Civ. P. 59(e) ...........................................................................................................2

FDUTPA ........................................................................................................................6, 7, 8

**OTHER AUTHORITIES**

*Manual for Complex Litigation (Fourth)*, §21.643 ...........................................................1

I.     **INTRODUCTION**

As set forth in Plaintiff's Motion for Final Approval of Settlement and for Attorneys' Fees and Expenses, (D.E. No. 54 or "Plaintiff's Motion"), the Settlement is fair, reasonable and adequate, and has been well received by the Class.[1]

Only ten Class Members filed objections.  Nine of the objectors are *pro per* Class Members who wrote to the Court voicing their concern with particular aspects of the Settlement. None of these objections present a reason to deny final approval of the Settlement.  Rather, in a back-handed manner, many of these objections actually support the Settlement and Plaintiff's allegations concerning Mead Johnson's alleged deceptive advertising.

The tenth objector is Sandra Pack, represented by attorney James H. Price.  Mr. Price is a "serial" or "professional" objector based in Knoxville, Tennessee.  Professional objectors pose a significant obstacle for the approval and implementation of class action settlements.  The *Manual for Complex Litigation (Fourth)* describes this type of objection and the problems it poses:

> Some objections, however, are made for improper purposes, and benefit only the objectors and their attorneys (*e.g.*, by seeking additional compensation to withdraw even ill-founded objections).  An objection, even of little merit, can be costly and significantly delay implementation of a class settlement....  Objections may be motivated by self-interest rather than a desire to win significant improvements in the class settlement.  A challenge for the judge is to distinguish between meritorious objections and those advanced for improper purposes.

*Manual for Complex Litigation (Fourth)*, §21.643, p. 326.

> Or as a court described the problem:
> Repeat objectors to class action settlement can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements.  The larger the settlement, the more cost-effective it is to pay the objectors rather than suffer the delay of waiting for an appeal to be resolved (even an expedited appeal).  Because of these economic realities professional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors.  Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose behalf the appeal is purportedly raised, gains nothing.

---

[1]     All capitalized terms not defined herein shall have the same meanings set forth in the Stipulation of Settlement.  *See* D.E. No. 26.

00034923

*In re Barnes v. Fleet Boston Fin. Corp.*, No. 01-10395, 2006 U.S. Dist. LEXIS 71072, at *3-4 (D. Mass. Aug. 22, 2006); *see also Shaw v. Toshiba Am. Info., Inc.*, 91 F. Supp. 2d 942, 973 (E.D. Tex. 2000) (courts should be on alert for lawyers who lodge objections to otherwise proper settlements for the sole purpose of obtaining "a fee by lodging generic, unhelpful protests"). Another court refers to serial objectors as "remoras" whose objections "contributed nothing." *In re UnitedHealth Group PSLRA Litig.*, 643 F. Supp. 2d 1107, 1108 (D. Minn. 2009).

As with other professional objectors, the Pack objection filed by Mr. Price does nothing to improve this Settlement. Nor is it intended to. For Price, the trial court proceedings are a waste of time. His game is to file a baseless objection, wait for the objection to be overruled, and then file a notice of appeal, using the delay inherent in an appeal to leverage a payment in return for dismissing the appeal.

The objections filed by Mr. Price in this case are in part verbatim and in part similar to the objections he recently filed in two other class action settlements: *In re Lawnmower Engine Horse Power Marketing and Sales Practice Litig.*, 733 F. Supp. 2d 997 (E.D. Wis 2010) (objection filed June 4, 2010) and *McDonough v. Toys "R" Us, Inc.,* No. 06cv00242 and *Elliot v. Toys "R" Us, Inc*, No. 09cv06151 (E.D. Pa) (objection filed June 22, 2011).[2]

In *In re Lawnmower*, Mr. Price represented James Marlow who (i) filed an objection (which was denied), (ii) requested discovery which he later abandoned, (iii) requested leave to appear at the fairness hearing telephonically (which was denied); (iv) after approval of the settlement, moved pursuant to Fed. R. Civ. P. 59(e) for the court to alter or amend the judgment (which was denied); and (v) appealed to the Seventh Circuit. After filing the notice of appeal, and without affecting any change in the settlement, Mr. Price took money in exchange for dismissing the appeal. Blood Reply Decl., Ex. A.

---

[2]   The objection filed by Price in *In re Lawnmower* and other related filings are collectively attached as Exhibit A to the Blood Reply Decl. The objection filed by Price in *Toys "R" Us* is attached as Exhibit B to the Blood Reply Decl. "Blood Reply Decl." refers to the Declaration of Timothy G. Blood in Support of Plaintiff's Reply in Support of Final Approval of Settlement and for Attorneys' Fees and Expenses, filed concurrently herewith.

00034923

In *Toys "R" Us*, Mr. Price represented Allison Lederer who, as here, objected that the settlement proceeds were inadequate and that the attorneys' fees requested (33%) were excessive and that at most, the fees should be 24.9%.  An order on final approval is pending.

In this case, Mr. Price has set off on the same course - starting with the same baseless objections - attacking the sufficiency of relief and attorneys' fees.  The objections should be overruled.  The relief provided through the Settlement is very close to Class Members' estimated aggregate damages (but without the risk, delay, or cost of trial), making the Settlement exceptional, not merely adequate.  Additionally, the requested attorneys' fees and costs of 25% of the value of the Settlement are reasonable and well within the range commonly awarded by this district, the Eleventh Circuit, and courts throughout the country.

## II.      THE SMALL NUMBER OF OBJECTIONS SUPPORTS APPROVAL

In addition to the factors set forth in Plaintiff's Motion, the Court should also look at the reaction of Class Members when considering the approval of a settlement.  The lack of any meaningful opposition strongly supports approval.  *See Stoetzner v. United States Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (concluding that when "only" 29 members of a 281 person class [*i.e.*, 10% of the class] objected, the response of the class as a whole "strongly favors [the] settlement"); *Cotton v. Hinton,* 559 F.2d 1326, 1333 (5th Cir. 1977) (settlement approval affirmed despite objections by half of the current employee class); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1382 (S.D. Fla. 2007) (100 objections "is a minuscule figure, and is insignificant when compared to the millions of Class members."); *Elkins v. Equitable Life Ins. of Iowa*, No. CIVA96-296-CIV-7-17B, 1998 U.S. Dist. LEXIS 1557, at *83-84 (M.D. Fla. Jan. 27, 1998) ("[t]here have been only six objections received from a Class of approximately 109,000 policy owners, which is a *de minimus* number" relative to the size of the class).  As here, "a small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness."  *Ass'n for Disabled Americans, Inc.* v. *Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002).

00034923

## III.     THE OBJECTORS HAVE NOT MET THEIR BURDEN

"[T]he burden must be on the objectant to convince the court to disapprove the proposed settlement, and the trial court's reasoned approval of the settlement will be entitled to much [deference]."  *United States v. City of Miami*, 614 F.2d 1322, 1334 (5th Cir. 1980).  Objectors carry a "heavy burden" to demonstrate that a settlement which has been preliminarily approved is unreasonable.  *Ass'n. For Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002); *accord Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-0986-CIV, 2006 U.S. Dist. LEXIS 88347, at *8-9 (S.D. Fla. Apr. 07, 2006).   Here, not only do the objectors fail to meet their burden, the objections are without any merit whatsoever.

### A.     The Compensation to Individual Class Members is Adequate

Five Class Members object that the relief to individual Class Members is insufficient.[3] Importantly, most of these objectors applaud the lawsuit and the settlement overall.  Objector Pacter writes: [I]t comes as no surprise this company acted in a manner that was unethical."  D.E. 47.  Objector Nivison writes:  "It's bad enough that the consumer is being taken advantage of by the Infant Formula companies with bad advertising."  D.E. No. 50.  Wallace-Grossman writes that she purchased Enfamil because it was advertised as containing LIPIL and therefore she believed it was "better than other brands of formula."  Because of Mead Johnson advertising claims, Wallace-Grossman "was torn" because "Enfamil was the most expensive.  Two or three times I purchased the cheaper generic brands, but then felt so guilty that I was giving my child less than the nutritionally best, that I immediately switched back to Enfamil."  D.E. No. 51.

Upset by the amount of money they spent on Enfamil in reliance on Mead Johnson's advertising, these five Class Members object that recovery to individual class members is not large enough.  *See*   D.E. 48 ($12 recovery is "insufficient compensation"); D.E. 50 (the $12 offered does nothing "for me or my child."); D.E. 51 ("I have a problem with the amount of the

---

[3]     See D.E. Nos. 47, 48, 50, 51 and 61 (objections filed by Pacter, Walters, Nivison, Wallace-Grossman, and Pack, respectively).

00034923

settlement."); D.E. 47 (claims should be per child, not per household); D.E. 61 at 8 ("a reasonable settlement would be 40-50% of potential damages (including treble damages and attorney fees)."

The settlement fund from which Class Members' claims will be paid has a minimum value of $8 million and a maximum value of $12 million.  While these objectors feel that their individual share of the settlement benefits is insufficient, the value of the Settlement overall is well within the range that the Class Members would have received if they had been successful at trial.[4]

In preparation for trial, Plaintiff's damages expert determined that the average price differential between Enfamil LIPIL and its brand-named competitors ranged between .65% and 3.8% in Florida during the Class Period.  Aggregating these differences weighted by market share, the price differential paid by Florida purchasers during the Class Period was just over $504,000.  Blood Reply Decl., ¶¶3-6.  Since Florida's population is 6% of the entire population of the United States, the total damages based upon the above stated price differential is roughly $8.4 million, or just slightly above the minimum $8 million provided by the Settlement to pay Class Member claims.[5]  Id., ¶¶5-6.  In short, Class Members can receive more than the 40% to 50% recovery that objector Pack asserts is reasonable and sufficient.  See D.E. No. 61 at 8.

---

[4]  The damages Class Members would have received at trial is not the retail purchase price paid, but difference between the price paid for Enfamil LIPIL and the price of a competing product that also contained DHA and ARA.  See e.g., D.E. 55 at 10 (Mead Johnson asserted that "under no theory of the case would Plaintiffs be entitled to recover the entire cost of their Enfamil LIPIL purchases.").

[5]  Even a settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair.  Borcea v. Carnival Corp., 238 F.R. D. 664 (S.D. Fla. 2006) ("a settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of potential recovery."); Behrens v. Wometco Enter., Inc., 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate"); In re Sunbeam Sec. Litig., 176 F. Supp. 2d 1323, 1331-1332 (S.D. Fla. 2001) (same);  Flinn v. FMC Corp., 528 F.2d 1169, 1173-74 (4th Cir. 1975) ("And because the cash settlement 'may only amount to a fraction of the potential recovery' will not per se render the  settlement inadequate or unfair");  Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th

00034923

In addition, these objectors fail to consider that the settlement relief is available to individual Class Members without proof of purchase or evidence of causation or damages, elements that Mead Johnson would have strongly contested at trial.  *See* D.E. No. 55 at 4-9. Finally, these objectors fail to consider that attorneys' fees and notice costs (costs which are normally borne by the class) are here paid by Mead Johnson ***in addition*** to the minimum $8 million value, which further increases the total Settlement value.

As to objector Pack in particular, she and her counsel Mr. Price didn't even bother to tailor the objection to the circumstances of this case.   Pack objects that the settlement is inadequate because the class could have received "treble damages."  D.E. No. 61 at 7 and 8.  The Florida Deceptive and Unfair Trade Practices Act, Fla Stat. §501.201 *et seq*. ("FDUTPA") does not provide for treble damages (nor does Pack cite to any applicable statute that does) and Nelson did not seek treble damages in her complaint.  D.E. No. 24 at 56.  It is absurd to object that the Settlement benefits are inadequate based upon a damages standard that does not apply.

Pack also argues that Plaintiff "severely overstates the prospect of Mead Johnson successfully defending this case on the merits."  D.E. No. 61 at 7.  Plaintiff did not overstate anything.  In a balanced manner, Plaintiff set forth the difficulties of proof against a tenacious opponent that was ready to appeal every possible order.  In fact, according to Mead Johnson, Plaintiff understated her difficulties of proof at trial.  *See* D.E. No. 55 at 4-9 (where Mead Johnson details why it believes Plaintiff would have difficulty proving a deceptive act, legal causation, and injury).  Moreover, Mead Johnson's appeal of the judgment in *PBM Products LLC v. Mead Johnson Nutrition Co.*, No. 09-cv-269 (E.D. Va.) (which appeal was not resolved until after this case settled) only confirms Mead Johnson's willingness to appeal.

---

Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair.").

00034923

**B.      The Settlement Redresses the Alleged Misconduct**

Three objectors present objections that actually support the Settlement.[6]  Dennis objects because he contends that Mead Johnson's advertising was not deceptive.  Dennis asserts that when he read the label he fully understood that Enfamil LIPIL had DHA and ARA, ***while other brands did not***.  D.E. No. 58.  That is exactly the false advertising claim at issue.  Other cheaper brands ***also*** contained DHA and ARA, yet consumers were led to believe that they had to pay the premium price of Enfamil LIPIL to get these ingredients.  Dennis proves the merits of Plaintiff's allegations.

Keller objects because the case is not about Enfamil's safety or nutritional value.  She says she got what she paid for, a safe and nutritional product.  D.E. No. 46.  Keller evidently disagrees with the consumer protection statutes enacted by state legislatures across the country that uniformly prohibit false and deceptive advertising, including, as in this case, deceptive advertising used to justify the higher price of Enfamil LIPIL as compared to other brands, or as alleged in other cases, deceptive advertising used to increase market share to the detriment of Mead Johnson's competitors.  *See PBM Products, LLC v. Mead Johnson Nutrition Co.*, No. 09-cv-269 (E.D. Va.).  Further, it is questionable that Keller did get what she paid for since she paid a premium for DHA and ARA that were also provided in less expensive infant formulas.

Riley objects to private enforcement of consumer protection statues, contending that if Mead Johnson broke the law "then the entity enforcing the law should deal with this matter through the stated penalties of law" by imposing "a hefty fine and a strike." D.E. No. 44.  State legislatures across the country disagree.   Legislatures recognize the benefits of private enforcement and expressly grant the right of private enforcement to consumers and business competitors.  *See, e.g.,* Fla. Stat. §501.211 (2011) (FDUTPA); *Martinez v. Rick Case Cars, Inc.*, 278 F. Supp. 2d 1371 (S.D. Fla. 2003) ("The clear intent of [FDUTPA] as expressed by its plain language is to provide both equitable and legal remedies to private consumers….").

---

[6]      *See* D.E. Nos. 44, 46, and 58 (objections of Riley, Keller and Dennis, respectively).

00034923

C.      The *Cy Pres* Distribution is Proper

Pack objects that a *cy pres* remedy is appropriate only after all Class Members have been "***fully compensated***." D.E. No. 61 at 11 (emphasis in original). This is not an objection, but an affirmation of the Settlement. Under the Settlement, Class Members have an opportunity to submit a claim, and without proof of purchase, receive their full share of Settlement benefits. Only after all eligible Class Members are paid their settlement benefits will the remainder be distributed to *cy pres* recipients. "The use of a *cy pres* contribution is proper and acceptable in class action settlements, particularly when locating and ascertaining the status of all individual class members is prohibitively difficult or expensive." *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 813 (E.D. Wis. 2009). *Cy pres* is also appropriate where, as here, individual class member claims involve small dollar amounts. *See Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677, 2007 U.S. Dist. LEXIS 96618, at *23 (S.D. Fla. Jan. 30, 2007) (collecting opinions and stating that "[t]he *cy pres* resolution adopted by the settlement agreement is particularly appropriate given the relatively small amount of damages the Class Members are likely to establish due to … the size of the individual losses."), *see also Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir.1990) (noting that "[f]ederal courts have frequently approved [*cy pres* awards] in the settlement of class actions where the proof of individual claims would be burdensome or the distribution of damages costly.") The *cy pres* component also benefits the general public and consumers, as well as the public interest of deterring false advertising - a primary objective under consumer protection statutes, including FDUTPA. *See Tuckish v. Pompano Motor Co.*, 337 F. Supp. 2d 1313, 1319 (S.D. Fla. 2004). *See also In re Toys "R" Us Antitrust Litig.,* 191 F.R.D. 347, 353-54 (E.D. N.Y. 2000) (approving settlement consisting entirely of *cy pres* contributions of toys and educational programs as serving the interests of plaintiffs and consumers and the public interests of disgorgement and deterrence).

To the extent Pack contends that each Class Member must be fully compensated to an amount they could hypothetically obtain if they prevailed on every claim at trial, that contention

8

is not supported by the case law she cites.  *See* D.E. No. 61, citing *In re Pharm. Indus. Avg. Wholesale Price Litig.*, 588 F.3d 24, 35 (1st Cir. 2009).  However, in *Pharmaceutical Industry* the First Circuit merely held that the district court did not abuse its discretion by approving a settlement that provided over a 100% recovery to all claimants prior to *cy pres* distribution.  By no stretch did the court hold that a 100% recovery is required before any *cy pres* distribution can be made.  *See id.* at 33-35 (citing cases where *cy pres* distribution occurred after class members claimed their share from the settlement fund).[7]  Regardless, here, as shown above, Class Members who submit eligible claims will receive on average their full recovery or very close to it.

To the extent Pack is suggesting that unclaimed funds should go to the Class Members instead of to *cy pres*, she is wrong.  As the Ninth Circuit explained in *Hayes v. Arthur Young & Co.*, "[d]istributing the unclaimed funds pro rata would thus give the claiming class members a windfall; it might also encourage the bringing of class actions likely to result in large uncollected damage pools and create conflicts of interest between the named plaintiffs and other class members.  Thus, any excess unclaimed damages should not be distributed among the claiming plaintiffs."  *Hayes v. Arthur Young & Co.*, Nos. 91-15531, 91-15546 and 91-15593, 1994 U.S. Dist. LEXIS 23608, *57 (9th Cir. Aug. 26, 1994) (citing *Van Gemert v. Boeing Co.*, 553 F.2d 812, 815-16 (2d Cir. 1977)); *see also McKinnie*, 678 F.Supp.2d at 815 (approving *cy pres* distribution because "distributing any unclaimed amounts to claimants on a pro rata basis will result in an unwarranted windfall for those claimants"); *Hartless v. Clorox Co.,* 273 F.R.D. 630, 642 (S.D. Cal. 2011) (same).  Here, as is appropriate, after all eligible claims submitted by Class Members are fully paid, the remaining funds will be distributed to *cy pres* recipients approved by the Court.

---

[7]   The other authorities cited by Pack do not support her point.  *Molski v. Gleich*, 318 F.3d 937,4(9th Cir. 2003) (overturned on other grounds) and *In re Matzo Food Prods. Litig.*, 156 F.R.D. 600, 605-607 (D.N.J. 1994) concerned *cy pres* only consent decrees or settlement.  *Gov't Emp. Hosp. v. Serono Int'l, S.A.*, 246 F.R.D. 93 (D. Mass. 2007) did not address *cy pres* issues at all.

**D.      The Allocation of Settlement Benefits is Fair and Reasonable**

Objector Huter contends that the settlement relief is not equitably allocated because Class Members who bought Enfamil LIPIL for six months or less receive one 12 ounce can of formula or $6 and class members who bought for more than six months receive two cans or $12, irrespective of the actual amount of Enfamil purchased.  Class action law, however, approves of multi-tiered settlement structures.  "Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate."  *In re Ikon Office Solutions v. Stuart*, 194 F.R.D. 166, 184 (E.D. Pa. 2000).  Accordingly, courts routinely approve settlements that create broad categories of class members in order to allocate differing levels of compensation.  The allocation of compensation to the class does not have to perfectly align with each individual class member's specific losses to be "fair, reasonable and adequate."  *See, e.g., In re Computron Software*, 6 F. Supp. 2d 313, 321 (D.N.J. 1998) (approving an allocation plan that placed class members in uniform compensation categories based on the timing of their stock purchase); *see also In re Aetna Inc. Sec. Litig.*, 2001 U.S. Dist. LEXIS 68 at *37-38 (E.D. Pa., January 4, 2001) (same).

For example, in *Hall v. AT&T Mobility LLC,* 2010 U.S. Dist. LEXIS 109355 at *31-32 (D.N.J., October 13, 2010), the court approved a consumer class action settlement that provided for different levels of compensation to class members depending on whether they activated their cell phone service before or after May 25, 2008.  And in *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2009 U.S. Dist. LEXIS 88404 (E.D.N.Y., September 25, 2009), the court approved an antitrust settlement that created two class members groups, foreign or domestic air freight services consumers, and provided a different compensation multiplier for each group, irrespective of the potentially unique damages each consumer sustained.

Objector Pack says that the Settlement is unfair because it gives Class Members a choice between cash and infant formula and the infant formula's retail value is worth more than cash. Providing Class Members a choice in the form of relief is not unfair or unreasonable.  And not

providing a choice would not improve the Settlement.  It would only mean that Class Members could only get the lower cash relief or only get the formula which is no longer useful to many Class Members.

Pack next spends considerable time speculating what will happen if there is a pro rata reduction given that a can of formula cannot readily be reduced pro rata.  D.E. 61 at 9-10.  First, the Settlement provides that if pro rata reductions are necessary, those choosing formula will in no event receive less than one 8 ounce container (if in the six months-or-under category) or less than two 8 ounce containers (if in the over six months category).  D.E. No. 26 at 14-15.  Second, the point is moot because based upon the number of claims received to date (the Claim Submission Period is open until November 25, 2011), a pro rata reduction will not be required.  Rather, as contemplated by the Settlement, funds will remain for *cy pres* distribution.

### E.   The Notice to Class Members Was Clear, Informative and Readily Meets Due Process

The due process requirements do not require that the notice of class action restate every term of the stipulation of settlement, in this case a 31-page document.  Such a notice would be counter-productive because the detail and length would discourage class members from reading the very notice designed to inform them.  Accordingly, notice should be reasonably calculated to apprise class members of the action and the proposed settlement, and afford them an opportunity to object or opt-out.  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Bennett v. Behring Corp.,* 96 F.R.D. 343, 353 (S.D. Fla. 1982), *affirmed*, 737 F. 2d 982 (11th Cir. 1984) ("It is not the function of the settlement notice to fully inform the class of all of the details of the settlement, but merely to put class members on notice of the general parameters of the settlement and to inform them of where information as to the specifics may be obtained.") (citation omitted).  In order to assist the courts and the parties to draft legally adequate and understandable class action notices, the Federal Judicial Center conducted a project whereby it studied empirical research and commentary on the plain language drafting of legal documents and tested class notices.  It then drafted various types of class notices with yet further input from

experts and the public.  *See* http://www.fjc.gov (Class Action Notice Page).  The notice used in this case was modeled after the class action notice forms recommended by the Federal Judicial Center and readily meets due process requirements as the Court previously found.  D.E. No.  28 at 4 (the Class Notice "meet[s] the requirements of Federal Rules of Civil Procedure, Rule 23 and due process, . . ." ).

Pack nonetheless objects to the distribution and content of the notice.  As to notice distribution, Pack complains because Plaintiff's motion for final approval was not posted on the Settlement Website and that Class Counsel did not provide a copy of the motion to Pack after her attorney sought to appear.  D.E. No. 61 at 19.  What nonsense.  Adequate notice does not require that publicly available documents be provided to class members.  Pack cites no authority, because there is none, that final approval briefs must be posted on the internet or provided to objector's counsel.  Pack's counsel easily knows how to (and did) obtain Plaintiff's final approval motion and supporting documents from PACER.

As to the content of the notice, Pack complains that it "misled" Class Members by advising them that any awarded attorneys' fees "would be paid by Mead Johnson and not affect the value of the Settlement proceeds to be distributed to the Class."  This is not misleading; it is, on the contrary, exactly how the settlement works.  D.E. 26 at 26 (Stipulation, §VIII.A.).  Pack also complains that the notice should have advised Class Members of their right to object to the requested attorneys' fees.  It does.  Class Members are advised that they "have the right to file written comments and/or objections with the Court if there is something about the Settlement that you don't like."  D.E. No. 26-2 at 6.  And one explicitly stated settlement term described in the notice is attorneys' fees.  *Id.* at 5.  Indeed, the notice here describes attorneys' fees and objection rights in terms substantially similar to those recommended by the Federal Judicial Center.  *See*  http://www.fjc.gov (Class Action Notice Page, Securities class action and settlement: full notice at 7).

Objector Huter obliquely attacks the notice by saying it does not provide enough information for her to assess the reasonableness of the attorneys' fees or class incentive awards.

00034923

It is clearly impossible to provide all of the facts, evidence and legal authority supporting the requested attorneys' fees and incentive awards in a class notice. However, Class Members are encouraged to visit the Settlement Website or call the toll-free number (it's at the bottom of each and every page of the notice) if they have questions. D.E. No. 26-2. Class Members are also advised to contact Class Counsel and were given Class Counsel's website (www.bholaw.com) for this purpose. *Id.* at 7. In fact, over 18,500 persons called the toll free number, and there were over one million visits to the Settlement Website, indicating that Class Members knew how to obtain information when they wanted it. D.E. No. 55-1 at 3 (Declaration of Joel Botzet). Moreover, if Huter had cared to review it, and in compliance with *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, (9th Cir. 2010), Plaintiff's Motion, including all of the information and declarations supporting the requested attorneys' fees and incentive awards, was publicly available to Huter two weeks prior to the objection deadline.

**F.    The Requested Award of Attorneys' Fees and Expenses is Reasonable**

As detailed in Plaintiff's Motion, as of early August 2011, Plaintiffs' Counsel collectively spent 6,375 hours litigating this case and the seven other related class action lawsuits pending against Mead Johnson that will be resolved by this Settlement. Plaintiffs' Counsel will have incurred considerably more hours by the time final approval is obtained, the Settlement defended on appeal, and relief distributed to Class Members and *cy pres* recipients. The requested attorneys' fees will compensate all Plaintiffs' Counsel in the eight Enfamil class actions, and represents 25% of the value of the settlement to the Class and a 1.2 multiplier on counsels' lodestar.

**1.    Dennis and Gnerer Objections to the Fee Award**

Gnerer and Dennis object that the fees are excessive compared to the recovery available to an individual Class Member. D.E. Nos. 43 and 58, respectively. This is of course the wrong measure. The reasonableness of attorneys' fees are measured in comparison to the total settlement value to the Class as a whole, not to the individual recovery, which in the nature of class actions is often not a large amount (hence the superiority of class proceedings). *See e.g.,*

00034923

*Camden I Condo. Ass'n v. Dunkle,* 946 F2d 768, 774 (11th Cir. 1991) ("[I]n this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."); *Pinto v. Princess Cruise Lines*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007) ("The proper manner to calculate attorneys' fees is to identify the fund created for the benefit of the class and to award Class Counsel a reasonable percentage of that fund as an attorneys' fee."); *Stahl v. Mastec, Inc.*, 2008 U.S. Dist. LEXIS 120887 at *3-7 (M.D. Fla., May 20, 2008) (citing the "reasonable percentage" standard and awarding 28.8% of the common fund as attorneys' fees).  Neither Dennis nor Gnerer object that a fee award of 25% of the settlement value is excessive.

### 2.    Pack Does Not Dispute that 25% of the Total Settlement Value is a Reasonable Fee Award

In the traditional common fund settlement, attorneys' fees, notice and administrative costs are paid off the top of the common fund, with the remainder going to the class.   In a "constructive common fund" settlement, such as here, a fund is established to pay class members and, in addition to that fund, defendant pays attorneys' fees and notice/administrative costs. Therefore, with a constructive common fund, when calculating the value of the settlement for purposes of awarding attorneys' fees based on a percentage of that value, the value includes the entire constructive common fund, i.e., the settlement fund (here a minimum of $8 million), estimated notice and claim review costs ($2,926,319), and attorneys' fees and expenses ($3.64 million).  *See* D.E. No. 54-1 at 21 n. 8 (authorities cited in Plaintiff's Motion on constructive common fund settlements).

Pack does not dispute that this is a constructive common fund case.  Nor does Pack contend that a fee award of 25% of the constructive common fund is excessive or unreasonable. Instead Pack objects that if the requested attorneys' fees and expenses are not awarded in full, then the remainder should revert to the Class Members, not to Defendant.  D.E. No. 61 at 14.

Pack is wrong.  A settlement is not unfair even if the unused ***common fund*** reverts to defendant.  For example, in *Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291, 1295-96 (11th

00034923

Cir. 1999) the Eleventh Circuit upheld approval of a settlement in which the unclaimed common fund reverted to the defendant instead of to *cy pres*. *See also Perry v. M/I Homes, Inc.,* 2010 U.S. Dist. LEXIS 52703 at *8 (M.D. Fla., February 12, 2010) (finding a settlement that included a reversion of unclaimed money to defendant was "fair and reasonable"); *Alleyne v. Time Moving & Storage Inc.,* 264 F.R.D. 41, 46 (E.D.N.Y. 2010) (approving settlement where unclaimed money in the common fund reverted to defendant). Here, the only possible reversion of the constructive common fund could be unawarded attorneys' fees; no portion of the minimum $8 million fund reverts to Mead Johnson. This potential reversion of unawarded attorneys' fees (which in any event should be zero) does not make the Settlement unfair or unreasonable.

> **3.  The Appropriate Method of Measuring Attorneys' Fees Is a Percentage of the Common Benefit**

In her opening brief, Plaintiff cited the established law that "in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768, 774 (11th Cir. 1991). *See also In re Sunbeam Sec. Litig.,* 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001).

As stated above, Pack does **not** contend that an attorney fee award of 25% of the total settlement value is unreasonable. Indeed, she would be hard pressed to do so. Her counsel, Mr. Price, in his most recent objection argued that a reasonable attorneys' fee award would be 24.9% (reduced from the 33.3% sought by plaintiffs' counsel). *See* Blood Reply Decl., Ex. B at 7 (objection filed by Price in *Toys "R" Us*).

Tacitly conceding the reasonableness of a 25% fee award, Pack instead presumes (without discussion) a lodestar/multiplier method and argues that Plaintiffs' Counsels' hours and rates are excessive. Pack contends that only Nelson's counsels' time should be considered, baldly asserting that the work done in the other class actions "was necessarily fraught with

duplication" and that counsel in these cases "had absolutely zero involvement in reaching the settlement." D.E. No. 61 at 15.

First, nobody disputes that the *Nelson* case was the furthest along of the eight pending class actions. Nelson had obtained certification of a Florida class, had conducted significant discovery, and was exchanging expert witness disclosures when the case settled. However, that Mead Johnson settled in the strongest, most developed action supports the Settlement, it does not undermine it. This Settlement is the opposite of a "reverse auction" settlement whereby a defendant settles in the weakest, least developed case with the most ineffectual lawyers to obtain a better result for itself and to the detriment to the class. *See Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1306 (S.D. Fla. 2007).

Second, Plaintiffs' Counsel's work was not duplicative. Until just before settlement when Defendant invoked MDL procedures, Mead Johnson chose to litigate the eight actions as separate actions in different district courts. The separate actions necessarily required separate work from each plaintiff's counsel depending upon the claims made in that case. For example, Mead Johnson filed motions to dismiss in the *Nelson, Martin, Kaplan, Weeks* and *Francis* cases, each of which required separate briefing based upon the state law at issue.[8] In fact, Plaintiffs' Counsel should be commended for achieving the level of coordination that they did; reducing duplicative work as much as possible by permitting the *Nelson* case to move forward as the flagship action.

---

[8]   Pack inexplicably singles out the law firm of Gilman and Pastor, LLP asserting that it did not perform "any task that was not duplicative." D.E. 61 at 16. This is simply false. Gilman and Pastor was counsel of record in both *Martin* and *Kaplan*, in which defendant filed separate motions to dismiss and motions to strike addressing the different states' laws and classes at issue in the respective cases. Pack is also wrong about the "consultant" issue. Gilman and Pastor consulted with knowledgeable individuals on the use of DHA and ARA in infant formula. They do not seek expert or consultant expenses because there was no formal engagement and no expert fees paid. As to settlement, Gilman and Pastor was involved in discussions starting in November 2010. *See* Declaration of David Pastor in Further Support of Plaintiff's Motion for Final Approval of Settlement and for Attorneys' Fees and Expenses, ¶¶4-11 filed concurrently.

Third, Nelson had obtained a certified class of **Florida** purchasers and was proceeding to trial on the Florida class.  However, by coordinating efforts, Class Counsel were able to obtain a settlement for a **nationwide** class.  Pack is therefore flat wrong that the other cases' "involvement did not improve the settlement any."  D.E. No. 61 at 15-16.

Fourth, the advanced stage of proceedings in *Nelson* is appropriately reflected in the respective hours of Plaintiffs' Counsel.  Of the 6,375 hours spent by Plaintiffs' Counsel in the eight actions, 5,012 hours were incurred by Nelson's counsel.  *See* D.E. Nos. 54-2 to 54-17 (Plaintiffs' Counsel's Declarations).

Finally, Pack's plea to exclude all hours except for those in *Nelson* gets her nowhere.  If these hours are excluded, the requested fee is just a 1.5 multiplier on Nelson's counsels' lodestar.  Even if the Court were to reduce the total lodestar by one-half, the multiplier would still only be 2.3, well within the range awarded by courts in this Circuit and across the nation.  *Princess Cruise Lines*, 513 F. Supp. 2d at 1344 (citing lodestar multiples from 2.26 to 12).  Moreover, the reality is that by the time this case is litigated through the inevitable appeal to be filed by Pack, and by the time Class Member claims are paid, and the *cy pres* recipients are selected and the *cy pres* distribution is completed, Plaintiffs' Counsel's current 1.2 multiplier on their lodestar will have disappeared.[9]

Under the percentage of the fund measure used in the Eleventh Circuit (and the lodestar cross-check), the fee requested of 25% of the constructive common fund (or the lodestar with a

---

[9]   Pack's attack on Plaintiffs' Counsel's hourly rates should be rejected for the same reasons.  That is to say, even if the rates were significantly reduced, the lodestar/multiplier would be in a reasonable range. Pack also wrongly asks the Court to impose a two rate tier: one for partners and one for all other attorneys.  D.E. No. 61 at 17.  The rates requested are appropriately particularized to the experience and status of each attorney, not uniform rates that do not take such factors into account.  Moreover, the hourly rates of some of the same counsel here were recently considered by the Court in granting the attorneys' fee award in *Smith v. WM Wrigley, Jr. Co.*, No. 09-60646-civ-JIC (S.D. Fla.).  Blood Reply Decl., ¶7.  The Court should also reject Pack's invitation to award a zero multiplier.  The sole authority cited by Pack for the "rare" circumstances for multipliers is a case regarding federal fee shifting statutes.  *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662 (2010).  *Perdue* does not apply here.

00034923

1.2 multiplier), is fair and reasonable to compensate Plaintiffs' Counsel for the excellent resolution obtained.

## IV.    THE PACK OBJECTION IS DEFECTIVE AND SHOULD BE STRICKEN

The objection filed by attorney James Price on behalf of objector Pack is defective because at the time it was filed Mr. Price was not admitted to practice in this case or in this court. D.E. No. 65.  Indeed, well before the Pack objection was filed, Class Counsel opposed Price's motion for limited appearance that attempted to circumvent the *pro hac vice* admission requirements.  D.E. 56 (filed Aug. 11, 2011, eleven days before the objection deadline).[10]  Price nonetheless filed the Pack objection without first obtaining admission in this Court or even submitting a *pro hac vice* application through local counsel.  Were Pack now to re-file her objection in *pro per* or through her attorney (assuming he seeks and obtains *pro hac vice* admission), the objection would be untimely.

## V.    CONCLUSION

For the reasons stated above and in her opening memorandum, Plaintiff requests that the Court enter the proposed final order and judgment: (1) certifying the Class; (2) granting approval of the Settlement; (3) granting the agreed-to award of attorneys' fees and expenses of $3,500,000.00 and $140,000.00, respectively; and (4) granting the agreed-to incentive awards to the plaintiffs in the Enfamil Lawsuits.


Respectfully submitted,
Dated:  September 6, 2011                    THE WRIGHT LAW OFFICE, P.A.
                                             WILLIAM C. WRIGHT


                                    By:          s/  *William C. Wright*
                                             WILLIAM C. WRIGHT

---

[10]    Price's motion for limited appearance was denied by the Court on August 29, 2011.  D.E. 65.

00034923

301 Clematis Street, Suite 3000
West Palm Beach, FL 33401
Telephone:  561/514-0904
561/514-0905 (fax)
willwright@wrightlawoffice.com

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD
THOMAS J. O'REARDON II
600 B Street, Suite 1550
San Diego, CA  92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com


BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
Elaine A. Ryan
Patricia N. Syverson
2901 N. Central Ave., Suite 1000
Phoenix, AZ 85012
Telephone:  602/274-1100
602/798-5860 (fax)
eryan@bffb.com
psyverson@bffb.com

WHATLEY DRAKE & KALLAS
PATRICK J. SHEEHAN
60 State Street, Seventh Floor
Boston, MA  02109
Telephone: 617/573-5118
617/573-5090 (fax)
psheehan@wdklaw.com

Attorneys for Plaintiff Allison Nelson

19

00034923

CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 6, 2011.

*s/  William C. Wright*
_____

WILLIAM C. WRIGHT
THE WRIGHT LAW OFFICE, P.A.
WILLIAM C. WRIGHT
301 Clematis Street, Suite 3000
West Palm Beach, FL 33401
Telephone:  561/514-0904
561/514-0905 (fax)
willwright@wrightlawoffice.com

20

00034923