```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                       FT. LAUDERDALE DIVISION
 3                       Case 11-02222-MD-COHN
 4
     IN RE:  ENFAMIL-LIPIL MARKETING AND SALES PRACTICES
 5   LITIGATION
 6                                        FT. LAUDERDALE, FLORIDA
 7                                        September 26, 2011
 8
                                          (Pages 1 - 20)
 9   ------------------------------------------------------------
10
11           TRANSCRIPT OF CLASS ACTION FAIRNESS HEARING
                 BEFORE THE HONORABLE JAMES I. COHN,
12                   UNITED STATES DISTRICT JUDGE
13   APPEARANCES:
14   FOR THE PLAINTIFF:     WILLIAM C. WRIGHT, ESQ.
                            THE WRIGHT LAW OFFICE, P.A.
15                          301 Clematis Street, Suite 200
                            West Palm Beach, Fl. 33401
16
                            TIMOTHY G. BLOOD, ESQ.
17                          BLOOD HURST & O'REARDON L.L.P.
                            600 B Street, Suite 1550
18                          San Diego, Ca. 92101
19                          DAVID PASTOR, ESQ.
                            GILMAN AND PASTOR, L.L.P.
20                          63 Atlantic Avenue
                            3rd Floor
21                          Boston, Ma. 02110
22
     FOR THE DEFENDANT:     GAIL L. GOTTEHRER, ESQ.
23                          AXINN VELTROP HARKRIDER, L.L.P.
                            90 State House Square
24                          Hartford, Ct. 06103
     \
25
```

```
1   FOR THE OBJECTORS:     DALE PAUL DiMAGGIO, ESQ.
                           MALIN HALEY DiMAGGIO BOWEN & LHOTA, P.A.
2                          1936 S. Andrews Avenue
                           Ft. Lauderdale, Fl. 33316
3
                           W. ALLEN McDONALD, ESQ.
4                          LACY PRICE & WAGNER
                           249 N. Peters Road, Ste 101
5                          Knoxville, Tn. 37923

6                          HOWARD WEIL RUBINSTEIN, ESQ.
                           4000 N. Ocean Drive
7                          E Tower, 201
                           Singer Island, Fl. 33404
8

9

10
    REPORTED BY:           PAULINE A. STIPES, RPR-CM
11                         Official United States Court Reporter
                           Federal Courthouse
12                         299 E. Broward Boulevard, Room 203
                           Ft. Lauderdale, FL  33301
13                                            954-769-5496

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1          THE COURT:  Folks, you all can be seated.

2          It is nine o'clock so I guess we can proceed.

3          THE COURT:  In Re:  Enfamil-Lipil, MDL litigation, 11

4   dash 02222.

5          This is the final fairness hearing.

6          Would counsel for the respective parties state your

7   appearances.

8          Mr. Blood.

9          MR. BLOOD:  Yes, Timothy Blood for the plaintiff.

10         MR. WRIGHT:  William Wright for the plaintiff.

11         MR. RUBINSTEIN:  Howard Rubinstein here for the

12   California cases for Weeks and Francis.

13         MR. PASTOR:  David Pastor representing Martin and

14   Kaplan in the MDL.

15         MS. GOTTEHRER:  Gail Gottehrer for the defendant, Mead

16   Johnson.

17         MR. DiMAGGIO:  Dale DiMaggio and Allen McDonald for

18   Sandra Pack.

19         THE COURT:  Class certification was granted by this

20   Court in November of last year.

21         The Enfamil case was consolidated by this Court by

22   order on the panel of multi-district litigation February 9th of

23   this year.

24         There are currently eight cases that comprise this

25   MDL.

4

1          On March 18th, this Court granted preliminary approval

2   of the Class Action settlement.  Allison Nelson was appointed

3   class representative, Class consol, was appointed to represent

4   the Class, and the claims administrator was directed to publish

5   the Class notice and administer the claims.

6          Final approval was set for today's date.

7          I believe that a total of 11 objections have been

8   filed, I might be off, but there are 11.

9          They essentially fall into three categories.  Number

10  one, concerns over the amount of the attorney's fees; number

11  two, concerns with Class Actions in general; and number three,

12  concerns over the adequacy of the settlement.

13         If there are any objectors present who wish to address

14  the Court, I will hear from you at this time at the podium.

15         I ask you state your name when you arrive at the

16  podium, and then you may argue your objection.

17         MR. McDONALD:  Allen McDonald, I represent objector

18  and Class Member Sandra Pack.

19         THE COURT:  Okay.

20         MR. McDONALD:  Your Honor, we filed a 20 page

21  statement of our objection and I am not going to recite all of

22  that, but what I do want to do is to hit the highlights and

23  also address some of the issues which were set forth in the

24  reply that was filed by both Class counsel and by the

25  defendants.

5

1           One of the issues, Your Honor, to begin with, would be

2   the adequacy of the settlement.

3           Now Class counsel takes the position that the

4   appropriate measure of damages relates only to sales of other

5   brand named products of baby formula.

6           However, when Class counsel filed their amended

7   complaint after the settlement in this case was reached, that

8   was not at all what their position was.

9           I will have to quote, if I could, from their complaint

10  which was filed, I believe, March 15th.

11          "Defendant whose product enjoys significant brand

12  recognition and sells at a hefty premium faces tough

13  competition from lower brands and private label product."

14          Plaintiff believes that store competition and brand

15  was relevant.

16          Paragraph three.

17          Lower price brands especially store brands and private

18  labels.  That is paragraph 13 continuing.

19          The SEC registration statement quoted by the amendment

20  of the complainer in this case, "In periods of economic

21  uncertainty, consumers tend to shift their purchases from our

22  higher priced premium products to lower priced products

23  including private label and store brand products.

24          "We believe private label and store brand products

25  manufacturers have continued to gain market share in the United

1   States over the past 12 months."

2          That is the Defendant's language quoted by the amended

3   complaint.  And there are many other examples, Your Honor, that

4   can found in paragraphs 22 and 23 of the amended complaint.

5          Furthermore, in the jurisdiction of Virginia, one

6   private label store brand producer, PBM, obtained a 13.5

7   million dollar verdict against the defendant.

8          They were not selling other brand named products.

9   They were only selling private label store brand products.  At

10   least, that is the understanding I have from reading the

11   appellate decision.

12          It is fundamentally inconsistent both of the pleadings

13   in this case and in the findings of fact by a jury in Virginia

14   as affirmed on appeal that the Class wide measure of damages

15   would be limited to two elements or simply two brand named

16   products.

17          And if that is an underlying assumption that Class

18   counsel had when this settlement was reached, which in reading

19   their response or their reply, I believe it is, then this

20   settlement is inadequate.

21          I will move on, Your Honor.  I will try to be brief.

22          Regarding the amount of attorney's fees, one

23   fundamental issue is whether this is a fee shifting case or

24   common fund case.

25          When it was beneficial to Class counsel, they called

1   it a fee shifting case.

2        They wanted their fee paid by the defendants not out

3   of the common fund of the settlement but when it benefited them

4   in terms of how they provided notice to the Class members, all

5   of a sudden this became a common fund case, and we believe this

6   is a fee shifting case.

7        The settlement arose under FDFTPA, Florida Deceptive

8   Fair Trade Practices Act, which gives a fee shifting mechanism

9   to successful plaintiffs.

10       It is not a common fund case, and, so, the attorney's

11  fees should not be awarded based on common fund or 25 percent;

12  but, under FDFTPA.  It has to be done on the Lodestar method

13  based on the number of hours invested by plaintiff's counsel;

14  and so, we believe that the Lodestar method is the only method

15  which would be applicable to this case.

16       Regarding cy pres, cy pres should only be used when

17  the Class members have been fully compensated.

18       And that does not mean fully compensated under the

19  terms of the settlement that was reached.  It means fully

20  compensated to the full extent of whatever damages that they

21  may have.

22       Here, Your Honor, the Class members have not been

23  fully compensated and there would be no windfall to any Class

24  Member.

25       Finally, Your Honor, one issue which the Court did not

1   include in its list of subject matters of objections, the

2   aspect of the notice that is provided.

3        Because the attorney's fees should be looked at as a

4   fee shifting mechanism and because the motion for attorney's

5   fees was not reasonably directed to the Class members such as

6   being put on the website that was available in this case,

7   notice was not properly given under Rule 23(h), and I think

8   that I read where Class counsel now says that they are unaware

9   of any precedent for any motion for attorney's fees to be

10  placed upon the website that is being administered.

11       Well, I can't speak to any court precedent, but I

12  could speak to a Class Action I was involved with, In Re:

13  Hydrogen Peroxide in Philadelphia, the indirect purchaser

14  action.

15       As soon as the Mercury interactive case came out of

16  the 9th Circuit, we were in the middle of settling that case,

17  and we, in reading that decision, made the decision and told

18  the Court that we were doing so to put our motion for

19  attorney's fees on the settlement website in that case.

20       Now, there has been, I guess, quite an attempt to

21  shoot the messenger in this case and speak magnetically about

22  Mr. Price and the fact that he has filed an objection in the

23  past, but I want to make clear that what I am asking the Court

24  to do is perfectly consistent with what I thought needed to be

25  done when I sat exactly where they are sitting trying to obtain

1  approval for Class Action settlement.

2          And I think, Your Honor, I had one other issue that I

3  wanted to address quickly regarding the amount of settlement.

4          That is the fact that enhanced damages are debatable

5  in just about every jurisdiction there is, including the State

6  of Florida.

7          Now, while it is true that their complaint did not

8  seek treble damages, it did seek punitive damages; that is,

9  after they had been through all of the discovery in the Florida

10  case, and having looked at all of the evidence that they

11  obtained and what they could get from the case in Virginia,

12  Class counsel believe this was a case where punitive damages

13  were appropriate, and, yet, in advocating that this settlement

14  be approved, they are wholly ignoring the possibility, very

15  likely possibility, that enhanced damages would be available.

16  Be they treble damages in Tennessee, punitive damages in

17  Florida, or regarding Massachusetts where Mr. Pastor is at, the

18  Court there is mandated to give at least double damages and can

19  give treble damages on the finding of willful or knowing

20  conduct by the defendant.

21          Thank you, Your Honor, that is all I have.

22          THE COURT:  Any other objectors present who wish to be

23  heard?

24          All right.  Response by counsel for the Class.

25          MR. BLOOD:  Thank you, Your Honor, Timothy Blood

1  counsel to the Class.

2      Unless the Court has any particular questions, I will

3  go through the issues in order.

4      With regard to Mr. McDonald's first point, the measure

5  of damages, we did ask for full restitution and a different --

6  different measures of price differential between private label

7  and the premium priced Enfamil-Lipil.

8      The problem we had from a damages standpoint is that

9  the purchasers of this product bought premium brand infant

10 formula.  Enfamil is not the only premium priced formula out

11 there.  There are others.

12     In assessing the case, we felt there was a significant

13 risk and discounted the case for that risk.  When the jury was

14 going to compare price differential, it would compare between

15 premium brand Enfamil and other premium brands since these are

16 premium brand purchasers.

17     Mr. McDonald is right, there is a growing market share

18 for the lower price store brand product.

19     The Class is made up of people who were buying the

20 premium brands in this case, Enfamil, not the store brand.

21     When you do the differential between Enfamil and

22 Similac, the damages are 8.4 million nationwide.

23     We have a settlement guaranteeing a minimum of

24 $8,000,000 to maximum $12,000,000, add on attorney's fees and

25 cost of settlement.  That goes up 14.5 million to 18.5 million.

1    I think the settlement properly reflects the fact that

2    we thought it was a long shot to get something beyond the

3    difference in price between one premium brand, Enfamil, that is

4    probably the best one, but we did get more money for the Class

5    but we didn't get a full restitutionary measure or anything

6    else.

7        The illustration demonstrates the settlement is a good

8    one, and we got more than the sort of probably most likely but

9    minimal damage amount that we would have been requesting.

10        Now, with regard to fees, I think Mr. McDonald is

11   confusing the fee shifting statute with the manner in which

12   fees are measured.

13        Mr. McDonald is correct, Florida and a number of other

14   state consumer protection laws have fee shifting statutes.

15        That means the prevailing plaintiff gets to recover

16   his or her fees and costs if they are successful.

17        Well, we did that which is why the fees and costs and

18   the cost of settlement administration and notice are added on

19   top of the eight to $12,000,000 recovery by the Class.

20        So those fees were properly shifted in this

21   settlement.

22        The next question becomes how do you measure those

23   fees?

24        As the Court is aware, there are two different

25   measures of fees.

1          One is the Lodestar multiplier method and the other

2     one the percentage method.

3          In the 11th Circuit, it is crystal clear the 11th

4     Circuit follows the percentage of the benefit method.

5          Here we are squarely right at 25 percent of the low

6     end of the settlement which the 11th Circuit has made clear is

7     the benchmark of percentage.

8          Now, we also did a Lodestar multiplier cross check

9     which in some circuits, not so much the 11th Circuit but in

10    other circuits, is required.

11         When one does the Lodestar multiplier cross check, we

12    get a Lodestar -- a multiplier, rather, of 1.2.

13         1.2 is at the low end if not below what are acceptable

14    multipliers in fee shifting or Lodestar multiplier analysis.

15         So, whether one looks at this from a percentage basis

16    or Lodestar multiplier basis, the fee number is right where it

17    should be.

18         Now, with regard to the cy pres argument, I am not

19    sure I understand the argument.

20         It is only when the Class members are fully

21    compensated should there be a cy pres element.  The purpose of

22    the cy pres mechanism occurs when we can't find everybody,

23    either because, as of here, we don't have names and addresses

24    of everybody or becomes prohibitively expensive to locate

25    everybody.  So, after a reasonable effort, there is money left

1  over.  Rather than having money going to the alleged wrongdoer,

2  it goes to a charity.  That is what the cy pres is.

3       We have a very good program.  There was email notice,

4  post card notice, people got notice of the settlement right to

5  the front door, notice in magazines, over the internet, quite a

6  bit of notice here; and, so, when there is money left over,

7  that would be appropriately cy pres.

8       THE COURT:  That is the -- as I understand, to me

9  Mr. McDonald's cy pres argument related back to the adequacy of

10 the settlement.

11      MR. BLOOD:  If you take the total damage figure of 8.4

12 and divide that by the number of Class members, the average

13 recovery ends up being something less than $4.00.  Here the

14 minimum amount somebody will get is $6.00, and maximum is

15 $12.00.  If you apply the minimum damage amount, which is a

16 reasonable measure, folks are getting more than they would get

17 if the jury were to award that amount of damages and every

18 Class Member claimed.

19      There is extra money under that amount of damages that

20 people are recovering.

21      And also goes to the fifth point, I will get back to

22 notice in a second, about enhanced damages.

23      Now, people are getting more than what they would

24 otherwise get, so I guess in that sense people would be

25 getting -- receiving a settlement that reflects some sort of

1  enhancement.

2  There is a reason why case law also says that courts

3  are to look to experienced counsel to determine whether or not

4  a settlement is fair, reasonable, and adequate.

5  Mr. McDonald may think this is a punitive damages

6  case.

7  I litigated this case.  I don't think it is a punitive

8  damages case.  I don't think it is treble damages case and not

9  many fraud statutes allow for that under these circumstances

10  anyway.

11  Even if it did, the settlement does reflect

12  enhancement over the minimum amount of damages that likely

13  would be recovered by the Class.

14  THE COURT:  How was the 8.4 million dollar figure that

15  you stated earlier, how was that computed?

16  MR. BLOOD:  It was extrapolated from the Florida

17  numbers.

18  As the Court may recall, they actually exchanged

19  expert reports in the Nelson case, and it is part -- one of our

20  experts was a damage expert and the damage amount was $504,000

21  in Florida based on the difference in value between

22  Enfamil-Lipil, and other premium brands, and we extrapolated

23  that figure nationwide.

24  Based on our discovery, that was a reasonable

25  extrapolation.  Florida population generally reflects useage of

1  Enfamil.

2        THE COURT:  That 8.4 million dollar figure represents

3  what?

4        MR. BLOOD:  That represents the damages calculated the

5  difference between Enfamil and a melding of the other premium

6  brands like Similac.  Enfamil was a little more expensive than

7  premium brands like Similac.

8        If you would aggregate that difference, that is what

9  the 8.4 million represents.

10       With regard to notice, and the availability of the

11  papers, first of all, maybe I am getting too old, it wasn't

12  that long ago, I don't think, when Class notices would simply

13  say, and if you want to see any papers or records, go to the

14  courthouse and get them, and that would be in a nationwide

15  Class, and people couldn't access the internet.  There wasn't

16  internet or courts didn't have the internet and people would go

17  and call counsel for the parties and say please send me these

18  papers or they would get the papers from the courthouse through

19  court services.

20       Now federal courts have Pacer system.  Anyone in the

21  world, doesn't have to be in the United States, you could pull

22  up documents on Pacer and get all the pleadings anybody would

23  ever want.

24       That is available in this case.  Anyone could have

25  pulled those documents down.  People could have called up

1   counsel and requested papers.  We routinely provide papers to

2   people if they are requested.

3          We never received any request.

4          I don't think, with regard to the content of the

5   notice, I think it would be a bad idea to put in the notice

6   fine points, like the measure of fees in a particular case,

7   whether it is going to be a common fund or a Lodestar

8   multiplier.

9          That is detailed and is way, way, way beyond what

10  virtually all Class members would understand or need to know in

11  a Class notice.

12         I think one of the problems we have with Class

13  notices, there is too much detail in them already.

14         A much more effective notice says something less

15  rather than more.

16         I would disagree with adding any further detail about

17  the method of calculating attorney's fees in a Class Action.

18         Your Honor, if you have any other questions, I am

19  happy to answer them.

20         THE COURT:  No, sir.

21         Does counsel for Mead Johnson wish to be heard?

22         MS. GOTTEHRER:  Nothing, unless you have questions.

23         THE COURT:  Mr. McDonald, is there are anything else

24  you would like to say.

25         MR. McDONALD:  A couple points quickly.

1          I am certainly not sure where Mr. Blood obtains his

2   information that none of the Class members ever purchased store

3   brands, that they were only comparing Enfamil-Lipil to the

4   other premium brand.  I think that is a leap of logic that it

5   is improper for Class counsel to have taken.

6          Regarding cy pres, my point was that the Class members

7   who are identified and have made claims should be fully

8   compensated, and, yes, it certainly does go to the allocation

9   of the settlement funds, as well.

10         If a Class Member has taken all of the necessary steps

11  to make a claim, then I think they should be fully compensated

12  before we give money over to whoever the charities are.

13         THE COURT:  But isn't that what the settlement calls

14  for?

15         MR. McDONALD:  Yes, Your Honor, but I don't think the

16  defendants have any need or desire one way or the other to pay

17  charities versus pay Class Members that they misrepresented the

18  product to.

19         They certainly don't care where the money goes.

20         Class counsel represents the Class Members.  I don't

21  think they have any interest of taking money out of Class

22  Members' pockets.

23         THE COURT:  But the cy pres donation only applies

24  after all Class Members -- their claims have been satisfied.

25         MR. McDONALD:  Correct.

18

1          But, for example, those Class Members who have had

2   additional children and they need Enfamil premium will get a

3   can of Enfamil premium with a retail value of 14 or $15.00 or

4   two cans with a retail value of 28 or $30.00.

5          Class Members such as Ms. Pack who have no -- who have

6   no more children have no need or desire for an extra can of

7   Enfamil, received $6.00 or $12.00.

8          My point is that the Class Members choosing cash

9   should get an amount equal to those who are receiving Enfamil

10  premium before we give money to Class -- to cy pres recipients.

11         That is my point.

12         Regarding whether or not this is punitive damages

13  case, Mr. Blood says this is not a punitive damages case, I

14  know everything about it and it is not.

15         Well, subject to Rule 11, he filed an amended

16  complaint in this case after having all of the information that

17  he has now and he said it was.

18         Regarding putting court documents on the website, yes,

19  back in the old days before Al Gore created the internet, it

20  was required that people go to the courthouse.

21         Here there is a link on the Enfamil settlement website

22  for court documents.

23         Now, Class Members should be able to expect important

24  court documents to be on there.

25         I mean, we are not asking that they go out and do

1  something that they haven't already planned to do.

2          We are simply asking that they give complete

3  information.

4          Along those same lines, Mr. Blood makes the point of,

5  well, we should give -- I suppose the best way to explain this

6  point is less is more when it comes to Class Action notices.

7          In this case, they added more.  They added language in

8  their own notice given to Class Members that said whatever the

9  Court awards in attorney's fees will not affect the amount that

10  is available for distribution to the Class.

11          I think, Your Honor, that can be read as giving a

12  disincentive for any Class Member to even look at the amount of

13  attorney's fees in this case.  And there was no need for them

14  to include that.

15          That was a gratuitous inclusion that they chose to put

16  in.

17          I'm here saying that it was inappropriate for them to

18  put that in there.

19          I think the money, first and foremost, belongs to

20  Class Members.  The fee shifting statutes are clear that

21  prevailing party attorney's fees go to the prevailing party,

22  not to prevailing party's counsel.

23          And, so, if there is a reduction in the amount of

24  fees, that money should be available, either to Class Members

25  or the cy pres if the Court chooses.  I don't think it does,

1  but if the Court chooses that is where it should go, it should

2  not revert to these defendants.  I think it was inadequate

3  notice for them to include that language in the notice.

4          Thank you, Your Honor.

5          Unless you have some questions.

6          THE COURT:  No, sir.

7          All right.  Anyone else wish to be heard any further?

8          MR. BLOOD:  Not unless Your Honor has any questions.

9          THE COURT:  No, I don't, thank you.

10         The Court has reviewed the stipulation of settlement,

11  the objections that were filed, the arguments of counsel here

12  this morning.

13         In addition, the Court has considered the six relevant

14  factors set forth in Bennett versus Bearing Corporation, 737

15  F.2d, 982 at 986, 11th Circuit, 1984 case.

16         And the Court finds that the settlement achieved in

17  this multi-district litigation case is fair, reasonable, and

18  adequate and is not the product of collusion.

19         The Court respectfully overrules each of the

20  objections raised by each of the objectors.

21         There is a strong judicial policy favoring settlement

22  as a realization that compromise is the essence of settlement.

23         Counsel for all parties appear to have performed their

24  duties diligently.

25         The parties' extensive submissions are highly detailed

1  and demonstrate why the settlement is fair and reasonable.

2        The Court must wait until November the 11th to enter

3  the proposed order.  28 United States Code 1715(b) requires the

4  claims administrator mail packages containing notice of the

5  settlement and final fairness hearing to certain federal and

6  state officials.  A final judgment cannot enter until 90 days

7  after that mailing.

8        Because the mailing was not completed until August the

9  11, 2011, the final order cannot be entered until November 11,

10  2011 at the earliest.

11        Is there anything further?

12        MR. BLOOD:  Nothing for the plaintiffs, Your Honor.

13        MS. GOTTEHRER:  Not for the defendant.

14        Thank you.

15        THE COURT:  Thank you all.  That will conclude this

16  final fairness hearing.

17        (Thereupon, the hearing was concluded.)

18

19

20

21

22

23

24

25

1

2

3

4                     C E R T I F I C A T E

5          I hereby certify that the foregoing is an accurate

6   transcription of proceedings in the above-entitled matter.

7

    October 6, 2011            \s\ Pauline A. Stipes
8   _____          _____
         DATE                    PAULINE A. STIPES
9                                Official United States Court Reporter
                                 299 E. Broward Boulevard, Room 203
10                               Ft. Lauderdale, Fl. 33301
    954-769-5496
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## A

able 18:23
above-entitled 22:6
acceptable 12:13
access 15:15
accurate 22:5
achieved 20:16
Act 7:8
action 1:11 4:2 8:12,14 9:1 16:17 19:6
Actions 4:11
add 10:24
added 11:18 19:7,7
adding 16:16
addition 20:13
additional 18:2
address 4:13,23 9:3
addresses 12:23
adequacy 4:12 5:2 13:9
adequate 14:4 20:18
administer 4:5
administered 8:10
administration 11:18
administrator 4:4 21:4
advocating 9:13
affect 19:9
affirmed 6:14
aggregate 15:8
ago 15:12
Al 18:19
alleged 13:1
Allen 2:3 3:17 4:17
Allison 4:1
allocation 17:8
allow 14:9
amended 5:6 6:2,4 18:15
amendment 5:19
amount 4:10 6:22 9:3 11:9 13:14 13:15,17,19 14:12,20 18:9 19:9 19:12,23
analysis 12:14
Andrews 2:2
answer 16:19
anybody 15:22
anyway 14:10
appeal 6:14
appear 20:23
appearances 1:13 3:7
appellate 6:11
applicable 7:15
applies 17:23
apply 13:15
appointed 4:2,3
appropriate 5:4 9:13
appropriately 13:7
approval 4:1,6 9:1
approved 4:16
argue 4:16
argument 12:18,19 13:9
arguments 20:11
arose 7:7
arrive 4:15
asking 8:23 18:25 19:2
aspect 8:2
assessing 10:12
assumption 6:17
Atlantic 1:20
attempt 8:20
attorney's 4:10 6:22 7:10 8:3,4,9 8:19 10:24 16:17 19:9,13,21
August 21:8
availability 15:10
available 8:6 9:15 15:24 19:10,24
Avenue 1:20 2:2
average 13:12
award 13:17
awarded 7:11
awards 19:9
aware 11:24
AXINN 1:23

## B

B 1:17
baby 5:5
back 13:9,21 18:19
bad 16:5
based 7:11,13 14:21,24
basis 12:15,16
Beach 1:15

## B (cont.)

Bearing 20:14
believe 4:7 5:10,24 6:19 7:5,14 9:12
believes 5:14
belongs 19:19
benchmark 12:7
beneficial 6:25
benefit 12:4
benefited 7:3
Bennett 20:14
best 11:4 19:5
beyond 11:2 16:9
bit 13:6
Blood 1:16,17 3:8,9,9 9:25,25 13:11 14:16 15:4 17:1 18:13 19:4 20:8 21:12
Boston 1:21
bought 10:9
Boulevard 2:12 22:9
BOWEN 2:1
brand 5:5,11,14,23,24 6:6,8,9,15 10:9,15,16,18,20 11:3 17:4
brands 5:13,17,17 10:15,20 14:22 15:6,7 17:3
brief 6:21
Broward 2:12 22:9
buying 10:19

## C

C 1:14 22:4,4
Ca 1:18
calculated 15:4
calculating 16:17
California 3:12
call 15:17
called 6:25 15:25
calls 17:13
cans 18:4
can't 8:11 12:22
card 13:4
care 17:19
case 1:3 3:21 5:7,20 6:13,23,24 7:1 7:5,6,10,15 8:6,15,16,19,21 9:10 9:11,12 10:12,13,20 14:2,6,7,8,8 14:19 15:24 16:6 18:13,13,16 19:7,13 20:15,17
cases 3:12,24
cash 18:8
categories 4:9
certain 21:5
certainly 17:1,8,19
certification 3:19
certify 22:5
charities 17:12,17
charity 13:2
check 12:8,11
children 18:2,6
chooses 19:25 20:1
choosing 18:8
chose 19:15
Circuit 8:16 12:3,4,6,9 20:15
circuits 12:9,10
circumstances 14:9
claim 17:11
claimed 13:18
claims 4:4,5 17:7,24 21:4
class 1:11 3:19 4:2,3,3,4,5,11,18 4:24 5:3,6 6:14,17,25 7:4,17,22 7:23 8:5,8,12 9:1,12,24 10:1,19 11:4,19 12:20 13:12,18 14:13 15:12,15 16:10,11,12,17 17:2,5,6 17:10,17,20,20,21,24 18:1,5,8,10 18:23 19:6,8,10,12,20,24
clear 8:23 12:3,6 19:20
Clematis 1:15
Code 21:3
COHN 1:11
collusion 20:18
comes 19:6
common 6:24 7:3,5,10,11 16:7
compare 10:14,14
comparing 17:3
compensated 7:17,18,20,23 12:21 17:8,11
competition 5:13,14
complainer 5:20
complaint 5:7,9 6:3,4 9:7 18:16
complete 6:1
completed 21:8

## C (cont.)

comprise 3:24
compromise 20:22
computed 14:15
concerns 4:10,11,12
conclude 21:17
concluded 21:17
conduct 9:20
confusing 11:11
considered 20:13
consistent 8:24
consol 4:3
consolidated 3:21
consumer 11:14
consumers 5:21
containing 21:4
content 16:4
continued 5:25
continuing 5:18
Corporation 20:1
correct 11:13 17:25
cost 10:25 11:18
costs 11:16,17
couldn't 15:15
counsel 3:6 4:24 5:3,6 6:18,25 7:13 8:8 9:12,24 10:1 14:3 15:17 16:1 16:21 17:5,20 19:22 20:11,23
couple 16:25
court 1:1 2:11 3:1,3,19,20,21 4:1 4:14,19 7:25 8:1 11:8,23 9:18,22 10:2 11:24 13:8 14:14,18 15:2,19 16:20,23 17:13,23 18:18,22,24 19:9,25 20:1,6,9,10,13,16,19 21:2,15 22:9
courthouse 2:11 15:14,18 18:20
courts 14:2 15:16,20
created 18:19
cross 12:8,11
crystal 12:3
Ct 1:24
currently 3:24
cy 7:16,16 12:18,21,22 13:2,7,9 17:6,23 18:10 19:25

## D

Dale 2:1 3:17
damage 11:9 13:11,15 14:20,20
damages 5:4 6:14 7:20 9:4,8,8,12 9:15,16,16,18,19 10:5,8,22 13:17 13:19,22 14:5,8,8,12 15:4 18:12 18:13
dash 3:4
date 4:6 22:8
David 1:19 3:13
days 18:19 21:6
debatable 9:4
Deceptive 7:7
decision 6:11 8:17,17
defendant 1:22 3:15 5:11 6:7 9:20 21:13
defendants 4:25 7:2 17:16 20:2
Defendant's 6:2
demonstrate 21:1
demonstrates 11:7
desire 17:16 18:6
detail 16:13,16
detailed 16:9 20:25
determine 14:3
didn't 11:5 15:16
Diego 1:18
difference 11:3 14:21 15:5,8
different 10:5,6 11:24
differential 10:6,14,21
diligently 20:24
DiMAGGIO 2:1 3:17,17
directed 4:4 8:5
disagree 16:16
discounted 10:13
discovery 9:13 14:24
disincentive 19:12
distribution 19:10
DISTRICT 1:1,1,12
divide 13:12
DIVISION 1:2
documents 15:22,25 18:18,22,24
doesn't 15:21
doing 8:18
dollar 6:7 14:14 15:2
donation 17:23
don't 12:23 14:7,8 15:12 16:4 17:15

## D (cont.)

17:19,20 19:25 20:9
door 13:5
double 9:18
Drive 2:6
duties 20:24

## E

E 2:7,12 22:4,4,9
earlier 14:15
earliest 21:10
economic 5:20
effective 16:14
effort 12:25
eight 3:24 11:19
either 12:23 19:24
element 12:21
elements 6:15
email 13:3
ends 13:13
Enfamil 3:21 10:10,15,20,21 11:3 15:1,5,6 18:2,3,7,9,21
Enfamil-Lipil 1:4 3:3 10:7 14:22 17:3
enhanced 9:4,15 13:22
enhancement 14:1,12
enjoys 5:11
enter 21:2,6
entered 21:9
equal 18:9
especially 5:17
ESQ 1:14,16,19,22 2:1,3,6
essence 20:22
essentially 4:9
everybody 12:22,24,25
evidence 9:10
exactly 8:25
example 18:1
examples 6:3
exchanged 14:18
expect 18:23
expensive 12:24 15:6
experienced 14:3
expert 14:19,20
experts 14:20
explain 19:5
extensive 20:25
extent 7:20
extra 13:19 18:6
extrapolated 14:16,22
extrapolation 14:25

## F

F 22:4
faces 5:12
fact 6:13 8:22 9:4 11:1
factors 20:14
fair 7:8 14:4 20:17 21:1
fairness 1:11 3:5 21:5,16
fall 4:9
favoring 20:21
FDFTPA 7:7,12
February 3:22
federal 2:11 15:20 21:5
fee 6:23 7:1,2,6,8 8:4 11:11,14 12:14,16 19:20
fees 4:10 6:22 7:11 8:3,5,9,19 10:24 11:10,12,16,17,20,23,25 16:6,17 19:9,13,21,24
felt 10:2
fifth 13:21
figure 13:11 14:14,23 15:2
filed 4:8,20,24 5:6,10 8:22 18:15 20:11
final 3:5 4:6 21:5,6,9,16
Finally 7:25
find 12:22
finding 9:19
findings 6:13
finds 20:16
fine 16:6
first 10:4 15:11 19:19
FI 1:15 2:2,7,12 22:10
Floor 1:20
Florida 1:1,6 7:7 9:6,9,17 11:13 14:16,21,25
folks 3:1 13:16
follows 12:4
foregoing 22:5
foremost 19:19

formula 5:5 10:10,10
forth 4:23 20:14
found 6:4
Francis 3:12
fraud 14:9
front 13:5
Ft 1:2,6 2:2,12 22:10
full 7:20 10:5 11:5
fully 7:17,18,19,23 12:20 17:7,11
fund 6:24 7:3,5,10,11 16:7
fundamental 6:23
fundamentally 6:12
funds 17:9
further 16:16 20:7 21:11
Furthermore 6:5
F.2d 20:15

**G**

G 1:16
Gail 1:22 3:15
gain 5:25
general 4:11
generally 14:25
getting 13:16,23,25 15:11
GILMAN 1:19
give 9:18,19 17:12 18:10 19:2,5
given 8:7 19:8
gives 7:8
giving 9:11
go 10:3 15:13,16 17:8 18:20,25 19:21 20:1
goes 10:25 13:2,21 17:19
going 4:21 10:14 13:1 16:7
good 11:7 13:3
Gore 18:19
Gottehrer 1:22 3:15,15 16:22 21:13
granted 3:19 4:1
gratuitous 19:15
growing 10:17
guaranteeing 10:23
guess 3:2 8:20 13:24

**H**

HALEY 2:1
happy 16:19
HARKRIDER 1:23
Hartford 1:24
haven't 19:1
hear 4:14
heard 9:23 16:21 20:7
hearing 1:11 3:5 21:5,16,17
hefty 5:12
higher 5:22
highlights 4:22
highly 20:25
hit 4:22
Honor 4:20 5:1 6:3,21 7:22,25 9:2 9:21,25 16:18 17:15 19:11 20:4,8 21:12
HONORABLE 1:11
hours 7:13
House 1:23
Howard 2:6 3:11
HURST 1:17
Hydrogen 8:13

**I**

idea 16:5
identified 17:7
ignoring 9:14
illustration 11:7
important 18:23
improper 17:5
inadequate 6:20 20:2
inappropriate 19:17
include 8:1 19:14 20:3
including 5:23 9:5
inclusion 19:15
inconsistent 6:12
indirect 8:13
infant 10:9
information 17:2 18:16 19:3
interactive 8:15
interest 17:21
internet 13:5 15:15,16,16 18:19
invested 7:13
involved 8:12
Island 2:7

isn't 17:13
issue 6:23 7:25 9:2
issues 4:23 5:1 10:3
I'm 19:17

**J**

JAMES 1:11
Johnson 3:16 16:21
JUDGE 1:12
judgment 21:6
judicial 20:21
jurisdiction 9:5
jury 6:13 10:13 13:17

**K**

Kaplan 3:14
know 16:10 18:14
knowing 9:19
Knoxville 2:5

**L**

L 1:22
label 5:13,23,24 6:6,9 10:6
labels 5:18
LACY 2:4
language 6:2 19:7 20:3
Lauderdale 1:2,6 2:2,12 22:10
law 1:14 14:2
laws 11:14
leap 17:4
left 12:25 13:6
LHOTA 2:1
limited 6:15
lines 19:4
link 18:21
list 8:1
litigated 14:7
litigation 1:5 3:3,22 20:17
little 15:6
locate 12:24
Lodestar 7:12,14 12:1,8,11,12,14 12:16 16:7
logic 17:4
long 11:2 15:12
look 14:3 19:12
looked 8:3 9:10
looks 12:15
low 12:5,13
lower 5:13,17,22 10:18
L.L.P 1:17,19,23

**M**

Ma 1:21
magazines 13:5
magnetically 8:21
mail 21:4
mailing 21:7,8
MALIN 2:1
mandated 9:18
manner 11:11
manufacturers 5:25
March 4:1 5:10
market 5:25 10:17
MARKETING 1:4
Martin 3:13
Massachusetts 9:17
matter 4:11
matters 8:1
maximum 10:24 13:14
McDONALD 2:3 3:17 4:17,17,20 10:17 11:10,13 14:5 16:23,25 17:15,25
McDonald's 10:4 13:9
MDL 3:3,14,25
Mead 3:16 16:21
mean 7:18 18:25
means 7:19 11:15
measure 5:4 6:14 10:4 11:5,22 13:16 16:6
measured 11:12
measures 10:6 11:25
mechanism 7:8 8:4 12:22
melding 15:5
Member 4:18 7:24 13:18 17:10 19:12
members 7:4,17,22 8:5 12:20 13:12 16:10 17:2,6,17,20,22,24 18:1,5,8,23 19:8,20,24

Mercury 8:15
messenger 8:21
method 7:12,14,14 12:1,2,4 16:17
middle 8:16
million 6:7 10:22,25,25 14:14 15:2 15:9
minimal 11:9
minimum 10:23 13:14,15 14:12
misrepresented 17:17
money 11:4 12:25 13:1,6,19 17:12 17:19,21 18:10 19:19,24
months 6:1
morning 20:12
motion 8:4,9,18
move 6:21
multiplier 12:1,8,11,12,14,16 16:8
multipliers 12:14
multi-district 3:22 20:17

**N**

N 2:4,6
name 4:15
named 5:5 6:8,15
names 12:23
nationwide 10:22 14:23 15:14
necessary 17:10
need 16:10 17:16 18:2,6 19:13
needed 8:24
Nelson 4:2 14:19
never 16:3
nine 3:2
notice 4:5 7:4 8:2,7 11:18 13:3,4,4 13:5,6,22 15:10 16:5,5,11,14 19:8 20:3,3 21:4
notices 15:12 16:13 19:6
November 3:20 21:2,9
number 4:9,10,11 7:13 11:13 12:16 13:12
numbers 14:17

**O**

objection 4:16,21 8:22
objections 4:7 8:1 20:11,20
objector 4:17
objectors 2:1 4:13 9:22 20:20
obtain 8:25
obtained 6:6 9:11
obtains 17:1
occurs 12:22
Ocean 2:6
October 22:7
OFFICE 1:14
Official 2:11 22:9
officials 21:6
Okay 4:19
old 15:11 18:19
order 3:22 10:3 21:3,9
overrules 20:19
o'clock 3:2
O'REARDON 1:17

**P**

Pacer 15:20,22
Pack 3:18 4:18 18:5
packages 21:4
page 4:20
Pages 1:8
paid 7:2
Palm 1:15
panel 3:22
papers 15:11,13,18,18 16:1,1
paragraph 5:16,18
paragraphs 6:4
part 14:19
particular 10:2 16:6
parties 3:6 15:17 20:23,25
party 19:21,21
party's 19:22
Pastor 1:19,19 3:13,13 9:17
PAUL 2:1
Pauline 2:10 22:7,8
pay 17:16,17
PBM 6:6
people 10:19 13:4,20,23,24 15:15 15:16,25 16:2 18:20
percent 7:11 12:5
percentage 12:2,4,7,15
perfectly 6:5

performed 20:23
periods 5:20
Peroxide 8:13
Peters 2:4
Philadelphia 8:13
placed 8:10
plaintiff 1:14 3:9,10 5:14 11:15
plaintiffs 7:9 21:12
plaintiff's 7:13
planned 19:1
pleadings 6:12 15:22
please 5:17
pockets 17:22
podium 4:14,16
point 10:4 13:21 17:6 18:8,11 19:4 19:6
points 16:6,25
policy 20:21
population 14:25
position 5:3,8
possibility 9:14,15
post 13:4
Practices 1:4 7:8
precedent 8:9,11
preliminary 4:1
premium 5:12,22 10:7,9,10,15,15 10:16,20 11:3 14:22 15:5,7 17:4 18:2,3,10
pres 7:16,16 12:18,21,22 13:2,7,9 17:6,23 18:10 19:25
present 4:13 9:22
prevailing 11:15 19:21,21,22
price 2:4 5:17 8:22 10:6,14,18 11:3
priced 5:22,22 10:7,10
private 5:13,17,23,24 6:6,9 10:6
probably 11:4,8
problem 10:8
problems 16:12
proceed 3:2
proceedings 22:6
producer 6:6
product 5:11,13 10:9,18 17:18 20:18
products 5:5,22,22,23,24 6:8,9,16
program 13:3
prohibitively 12:24
properly 8:7 11:1,20
proposed 21:3
protection 11:14
provide 16:1
provided 7:4 8:2
publish 4:4
pull 15:21
pulled 15:25
punitive 9:8,12,16 14:5,7 18:12,13
purchased 17:2
purchaser 8:13
purchasers 10:9,16
purchases 5:21
purpose 12:21
put 8:6,18 16:5 19:15,18
putting 18:18
P.A 1:14 2:1

**Q**

question 11:12
questions 10:2 16:18,22 20:5,8
quickly 9:3 16:25
quite 8:20 13:5
quote 5:9
quoted 5:19 6:2

**R**

R 22:4
raised 20:20
reached 5:7 6:18 7:19
read 8:8 19:11
reading 6:10,18 8:17
realization 20:22
reason 14:2
reasonable 12:25 13:16 14:4,24 20:17 21:1
reasonably 8:5
recall 14:18
received 16:3 18:7
receiving 15:25 18:9
recipients 18:10
recite 4:21
recognition 5:12

records 15:13
recover 11:15
recovered 14:13
recovering 13:20
recovery 11:19 13:13
reduction 19:23
reflect 14:11
reflects 11:1 13:25 14:25
regard 10:4 11:10 12:18 15:10 16:4
regarding 6:22 7:16 9:3,17 17:6
  18:12,18
registration 5:19
related 13:9
relates 5:4
relevant 5:15 20:13
reply 4:24 6:19
REPORTED 2:10
Reporter 2:11 22:9
reports 14:19
represent 4:3,17
representative 4:3
representing 3:13
represents 15:2,4,9 17:20
request 16:3
requested 16:1,2
requesting 11:9
required 12:10 18:20
requires 21:3
respectfully 20:19
respective 3:6
response 6:19 9:24
restitution 10:5
restitutionary 11:5
retail 18:3,4
revert 20:2
reviewed 20:10
right 9:24 10:17 12:5,16 13:4 20:7
risk 10:13,13
Road 2:4
Room 2:12 22:9
routinely 16:1
RPR-CM 2:10
Rubinstein 2:6 3:11,11
Rule 8:7 18:15

S

s 2:2 22:7
sales 1:4 5:4
San 1:18
Sandra 3:18 4:18
sat 8:25
satisfied 17:24
saying 19:17
seated 3:1
SEC 5:19
second 13:22
see 15:13
seek 9:8,8
selling 6:8,9
sells 5:12
send 15:17
sense 13:24
September 1:7
services 15:19
set 4:6,23 20:14
settlement 4:2,12 5:2,7 6:18,20 7:3
  7:7,19 8:19 9:1,3,13 10:23,25
  11:1,7,18,21 12:6 13:4,10,25
  14:4,11 17:9,13 18:21 20:10,16
  20:21,22 21:1,5
settling 8:16
share 5:25 10:17
shift 5:21
shifted 11:20
shifting 6:23 7:1,6,8 8:4 11:11,14
  12:14 19:20
shoot 8:21
shot 11:2
significant 5:11 10:12
Similac 10:22 15:6,7
simply 6:15 15:12 19:2
Singer 2:7
sir 16:20 20:6
sitting 8:25
six 20:13
somebody 13:14
soon 8:15
sort 11:8 13:25

SOUTHERN 1:1
speak 8:11,12,21
Square 1:23
squarely 1:23
standpoint 10:8
state 1:23 3:6 4:15 9:5 11:14 21:6
stated 14:15
statement 4:21 5:19
States 1:1,12 2:11 6:1 15:21 21:3
  22:9
statute 11:11
statutes 11:14 14:9 19:20
Ste 2:4
steps 17:10
Stipes 2:10 22:7,8
stipulation 20:10
store 5:14,17,23,24 6:6,9 10:18,20
  17:2
Street 1:15,17
strong 20:21
subject 8:1 18:15
submissions 20:25
successful 7:9 11:16
sudden 7:5
Suite 1:15,17
suppose 19:5
sure 12:19 17:1
system 15:20

T

T 22:4,4
take 13:11
taken 17:5,10
takes 5:3
tend 5:21
Tennessee 9:16
terms 7:4,19
thank 9:21,25 20:4,9 21:14,15
think 8:7 9:2 11:1,10 14:5,7,8 15:12
  16:4,5,12 17:4,11,15,21 19:11,19
  19:25 20:2
thought 8:24 11:2
three 4:9,11 5:16
time 4:14
Timothy 1:16 3:9 9:25
Tn 2:5
today's 4:6
told 8:17
top 11:19
total 4:7 13:11
tough 5:12
Tower 2:7
Trade 7:8
TRANSCRIPT 1:11
transcription 22:6
treble 9:8,16,19 14:8
true 9:7
try 6:21
trying 8:25
two 4:11 6:15,15 11:24 18:4

U

unaware 8:8
uncertainty 5:21
underlying 6:17
understand 12:19 13:8 16:10
understanding 6:10
United 1:1,12 2:11 5:25 15:21 21:3
  22:9
useage 14:25

V

value 14:21 18:3,4
VELTROP 1:23
verdict 6:7
versus 17:17 20:14
Virginia 6:5,13 9:11
virtually 16:10

W

W 2:3
WAGNER 2:4
wait 21:2
want 4:22 8:23 15:13,23
wanted 7:2 9:3
wasn't 15:11,15
way 16:9,9,9 17:16 19:5
website 8:6,10,19 18:18,21

Weeks 3:12
WEIL 2:6
West 1:15
wholly 9:14
wide 6:14
willful 9:19
William 1:14 3:10
windfall 7:23
wish 4:13 9:22 16:21 20:7
world 15:21
Wright 1:14,14 3:10,10
wrongdoer 13:1

Y

year 3:20,23

$

$12,000,000 10:24 11:19
$12.00 13:15 18:7
$15.00 18:3
$30.00 18:4
$4.00 13:13
$504,000 14:20
$6.00 13:14 18:7
$8,000,000 10:24

0

02110 1:21
02222 3:4
06103 1:24

1

1 1:8
1.2 12:12,13
101 2:4
11 3:3 4:7,8 18:15 21:9,9
11th 12:3,3,6,9 20:15 21:2
11-02222-MD-COHN 1:3
12 6:1
13 5:18
13.5 6:6
14 18:3
14.5 10:25
15th 5:10
1550 1:17
1715(b) 21:3
18th 4:1
18.5 10:25
1936 2:2
1984 20:15

2

20 1:8 4:20
200 1:15
201 2:7
2011 1:7 21:9,10 22:7
203 2:12 22:9
22 6:4
23 6:4
23(h) 8:7
249 2:4
25 7:11 12:5
26 1:7
28 18:4 21:3
299 2:12 22:9

3

3rd 1:20
301 1:15
33301 2:12 22:10
33316 2:2
33401 1:15
33404 2:7
37923 2:5

4

4000 2:6

6

6 22:7
600 1:17
63 1:20

7

737 20:14

8

8.4 10:22 13:11 14:14 15:2,9

9

9th 3:22 8:16
90 1:23 21:6
92101 1:18
954-769-5496 2:13 22:10
982 20:15
986 20:15