**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 11-MD-02222-COHN/SELTZER**

**IN RE: ENFAMIL LIPIL MARKETING**
**AND SALES PRACTICES LITIGATION**
**MDL 2222**

_____

JOINT MOTION AND PLAINTIFF'S INCORPORATED MEMORANDUM OF LAW FOR A
BOND TO SECURE PAYMENT OF COSTS ON APPEAL
(FED. R. APP. P. 7)

## I.     INTRODUCTION

Pursuant to Federal Rule of Appellate Procedure 7, plaintiff, class representative and appellee Allison Nelson respectfully moves this Court for an order requiring objectors/appellants Margaret Huter and Sandra Pack to post an appeal bond in the amount of $61,400.  Defendant Mead Johnson & Company LLC ("Mead Johnson") joins in the motion and separately submits its supporting memorandum.

An appeal bond is appropriate in this case.  The record demonstrates that these appeals are without merit.  The Huter and Pack objections to this settlement were considered by the Court on the papers and at oral argument, and appropriately overruled.  Doc. 79.  The appeals to settlement filed by the professional objector counsel for Huter and Pack are frivolous and have been brought in bad faith.  Appellants are attempting to extort money from the parties in exchange for a dismissal of their appeals.  Absent a bond, there is significant risk that the objectors will not pay the costs on appeal.

These appeals were filed by "professional" objectors.  Counsel, Steve Miller[1] on behalf of Margaret Huter, and The Law Firm of Lacey, Price & Wagner (the "Price Firm")[2] on behalf of

---

[1] Steve Miller has filed objections to proposed settlements in at least the following fifteen cases: *In re Trans Union Corp. Privacy Litigation*, No. 00-04729 (N.D. Ill. Oct 15, 2008); *In re Reformulated Gasoline Antitrust and Patent Litigation*, No. 05-01671 (C.D. Cal. Nov. 19, 2008*); Milliron v. T-Mobile USA Inc.,* No. 08-04149 (Dist. of New Jersey July 2, 2009); *In re CLRB Hanson Industries, LLC v. Google, Inc.*, No. 05-03649 (N.D. Cal. July 10, 2009); *In re Mattel, Inc., Toy Lead Paint Products Liability Litigation*, No. 07-01897 (C.D. Cal. Feb. 19, 2010); *In re Tyson Foods, Inc.*, No. 08-01982 (Maryland April 19, 2010);  *In re Lawn Mower Engine Horsepower Marketing and Sales Practices Litigation*, No. 08-01999 (E.D. Wisconsin June 22, 2010);  *In re HP Inkjet Printer Litigation*, No. 05-3580 (N.D. Cal. Jan. 03, 2011); *The NVIDIA GPU Litigation*, 08-04312 (N.D. Cal. Jan. 14, 2011); *In re HP Laserjet Printer Litigation*, No. 07-0667 (C.D. Cal. Jan. 04, 2011);  *In re New Motor Vehicles Canadian Export Antitrust Litigation*, No. 03-1532 (Dist. of Maine Jan. 31, 2011); *White v. Experian Information Solutions, Inc.*, No. 05-1070 (C.D. Cal. Aug. 12, 2011); *Cassese v. Washington Mutual, Inc.*, No. 05-02724 (E.D. New York Sept. 8, 2011); *Blessing v. Sirius XM Radio, Inc.*, No. 09-10035 (S.D. New York Sept. 14, 2011); *In re Farmers Insurance Co., Inc, FCRA Litigation*, No. 03-158 (W.D. Okla. Oct. 28, 2011).  To date, counsel for plaintiff is unaware that any of Mr. Miller's objections have ever been sustained. The above objections are attached as Exhibits 1 through 15.
[2] The Price Firm has filed objections to proposed settlements in at least the following cases: *In re Lawnmower Engine Horse Power Marketing & Sales Practice Litig.*, 733 F.Supp.2d 997 (E.D. Wis. 2010) (objection filed June 4, 2010); *McDonough v. Toys "R" Us*, Inc., No. 06-00242; *Elliot v. Toys "R" Us, Inc.*, No. 09-06151(E.D. Pa.) (objection filed June 23, 2011); *In re Pre-Filled Propane Tank Marketing and Sales Practices Litigation*, MDL No. 2086 (W.D. Missouri) (objection filed Jan. 10, 2012).  To date, counsel for plaintiff is unaware any of the Price

Sandra Pack, have an established record of filing frivolous objections followed by appeals to class action settlements. Courts around the country and the *Manual for Complex Litigation* recognize the waste and abuse caused by serial objectors to class action settlements. *Manual for Complex Litigation (Fourth)*, §21.643, p. 326. For that reason, courts impose appeal bonds on serial objectors in the class action context. *See In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 816-817 (6th Cir. 2004) (trial court's imposition of a $50,000 appeal bond on serial objector upheld); *Conroy v. 3M Corp.*, 00-cv-2810, Order Granting Plaintiffs' Motion for Appellate bond (N.D. Cal. Aug. 10, 2006) (serial objectors ordered to post an appeal bond in the amount of $431,167); *Barnes v. FleetBoston Fin. Corp.*, No. 1:01-cv-1039, slip op. at *2 (D. Mass. Aug. 22, 2006) (order imposing $645,111 appeal bond on serial objectors). Accordingly, the $61,400 bond sought by plaintiff is appropriate. Compare, e.g., *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, MDL No. 1735, 2010 WL 786513, at *2 (D. Nev. Mar. 8, 2010) (aggregate $1.5 million appeal bond imposed on serial objectors).

## II.   BACKGROUND

After hard fought and protracted litigation, after class certification and shortly before trial, plaintiff and her counsel were able to achieve an excellent settlement for a nationwide class. The settlement guarantees that Mead Johnson will pay a minimum of $8 million in settlement benefits and *cy pres* distribution plus settlement administration costs and attorneys' fees.

The two objections generally concern the adequacy of the settlement, its *cy pres* aspect, and attorneys' fees. Each of the objections was addressed at length by plaintiff and Mead Johnson in their respective submissions prior to the final approval hearing. Doc. 69 and Doc. 70. The objections were also addressed by the Court at the fairness hearing held on September 26,

---

Firm's objections have been sustained. The above objections were previously submitted to the Court in Doc. 69, except for Mr. Price's most recent 2012 objection that is attached as Ex. 16.

2011.  Counsel for objector Pack attended the hearing and presented the merits of her objections.  After the hearing, the Court overruled the objections and entered an order granting final approval of the settlement on November 14, 2011.  Doc. 79.  Huter's notice of appeal was filed on December 12, 2011, and Pack's notice of appeal was filed on December 13, 2011.  Doc. 81 and Doc. 82.

It is not a coincidence that the only two class members to appeal the settlement are represented by counsel who repeatedly file baseless objections to class action settlements.  The *Manual for Complex Litigation* (*Fourth*) describes this type of objection and the problems it poses:

> Some objections, however, are made for improper purposes, and benefit only the objectors and their attorneys (e.g., by seeking additional compensation to withdraw even ill-founded objections).  An objection, even of little merit, can be costly and significantly delay implementation of a class settlement….  Objections may be motivated by self-interest rather than a desire to win significant improvements in the class settlement.  A challenge for the judge is to distinguish between meritorious objections and those advanced for improper purposes.

*Manual for Complex Litigation (Fourth)*, §21.643, p. 326.

The tactics of serial objector counsel like Mr. Miller and the attorneys from the Price Firm in repeatedly objecting to class action settlements have been condemned by federal judges.[3]

---

[3] *See, e.g., Shaw v. Toshiba Am. Info. Sys., Inc.,* 91 F. Supp. 2d 942, 973 (E.D. Tex. 2000); *In re AT&T Corp. Sec. Litig.*, No. 00-5364 (GEB), 2006 WL 2786945, at *1 (D.N.J. Sept. 26, 2006) ("AT&T II"); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 170-75 (3d Cir. 2006) ("AT&T I"); *In re Wal-Mart Wage & Hour Emp't*, 2010 WL 786513, at *1-3; *In re Bristol-Myers Squibb Sec. Litig.*, No. 06-2964, 2007 WL 2153284, at *1 (3d Cir. July 27, 2007) (affirming District Court's denial of objection to class action settlement); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1379 (S.D. Fla. 2007) (regarding objections and holding: "The Court did not find any of the papers filed by Objectors' Counsel to be particularly helpful or to have conferred a benefit on the Class, as they were generic compilations of well-known case law and lacked specific application to this case.  In short, they appeared to be standard form arguments filed in other cases."); *Varacallo v. Mass. Mud. Life Ins. Co.*, 226 F.R.D. 207, 251 (D.N.J. 2005) (overruling objection to class action settlement and finding "no merit" to the argument, *inter alia*, "that the Court should pay the attorneys' fees in installments, or 'stage the fees"); *Fielder v. Credit Acceptance Corp.*, No. CV96-24285 (16th Cir. Div. 1 Mo. Sept. 6, 2007) (regarding an objector's motion to intervene, "There is a record here of inconsistent factual assertions and at least one unsupported legal objection in this case.  The court does not intend to allow this class action litigation, which affects the rights of over 14,000 class members, to be derailed by uninformed or careless counsel who attempt to intervene at the eleventh hour. Intervention by Hernandez and his purported counsel would present serious risk of disruption to the continued progress of this litigation.  It would not

With the sole motivation of lining their own pockets, these professional objectors file baseless objections that they know will be overruled. They then file frivolous appeals that slow down the execution of settlements. *In re Checking Account Overdraft Litigation*, 2011 WL 5873389, at *30 (S.D. Fla. Nov. 22, 2011). Adding nothing to the settlements themselves, these individuals prey on the fact that it is often more cost-effective "to pay the objectors rather than suffer the delay of waiting for an appeal to be resolved (even an expedited appeal)." *In re Barnes v. Fleet Boston Fin. Corp.*, No. 01-10395, 2006 U.S. Dist. LEXIS 71072, at *3-4 (D. Mass. Aug. 22, 2006).

Margaret Huter and Sandra Pack are appealing an order that governs the rights of an entire class. Their meritless appeals serve to delay payment to all class members, without any ultimate benefit to the class. The highly detrimental impact of their appeals on the settlement agreement as to the entire class renders it appropriate for this Court to require them to post an appeal bond pursuant to Federal Rule of Appellate Procedure 7. For example, in *Allpattah Servs., Inc. v. Exxon Corp.*, 2006 WL 1132371, at *18 (S.D. Fla. April 7, 2006) the Court found a $13,500,000 appeal bond appropriate because the appeal detrimentally affected a settlement agreement as to the entire class. Here as well, if the objectors/appellants wish to pursue their objections beyond this point, they should be required to post a bond to compensate the class members for the delay that their actions will cause.

For objectors/appellants to succeed on appeal, they will need to establish that this court abused its discretion in approving what it determined to be a "fair, reasonable and adequate" settlement that compensates class members across the country for damages caused by Mead Johnson's business practices. Doc. 79; *Williams v. Rohm and Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011). Given the high likelihood the Order will be affirmed, the Court should

be allowed by this court.").

require each of the objectors/appellants to post a reasonable appeal bond. Such bonds will serve the dual objective of providing appellees protection during the pendency of the appeal while discouraging objectors/appellants and objecting counsel from viewing this settlement as a money making opportunity.

If objectors/appellants truly believe that their objections are well founded and they are motivated by genuine concern for the class members, they are encouraged to post the required bond and proceed. If, however, these appeals are what they appear to be, unscrupulous money grabs orchestrated by professional objectors, it is plaintiff's hope that by requiring significant bonds this Court may alter objectors/appellants' cost-benefit analyses such that these appeals will not represent the easy money they are hoping for.

### III. STANDARD FOR IMPOSITION OF RULE 7 APPEAL BOND

Appellate Rule 7 provides:

> In a civil case, the District Court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal.

Rule 7 is designed to "protect the right of appellees." *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002); *see also Eastwood Enterprises, LLC v. Farha*, 2011 WL 2681915, at *1 (M.D. Fla. July 11, 2011). The authority to impose a bond and to determine its amount lies squarely within the district court's discretion. *Pedraza*, 313 F.3d at 1329; *see also A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1028 (9th Cir. 2001); Fed. R. App. 7, 1979 advisory committee notes.

The costs that can be included in a Rule 7 bond are not limited to costs defined by Rule 39.[4] *Pedraza*, 313 F.3d at 1323. The district court has substantial discretion to determine the

---

[4] Rule 39(e) provides that "[t]he following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule: (1) the preparation and transmission of the record; (2) the reporter's transcript, if

00040944                                                 5

amount of a bond necessary to ensure the payment of costs on appeal. *Id.* at 1327.

Plaintiff here requests a bond in the amount of $61,400.  This figure represents (i) a reasonable approximation of the reimbursable expenses plaintiff will incur in addressing these appeals ($5,000) and (ii) $56,400 for the preservation of the status quo on behalf of the non-objecting settlement class members.  Fed. R. App. P. 39(e).

The first category of costs is routinely included in appeal bonds. See e.g., *O'Keefe v. Mercedes-Benz USA, LLC*, No. 01-CV-2902, 2003 U.S. Dist. LEXIS 9838 (E.D. Pa. 2003); Wright, Miller, & Cooper, *Federal Practice & Procedure* §3953 (3d ed. 1990).  The second category of costs "secures the prevailing party against any loss sustained as a result of being forced to forgo execution on a judgment during the course of an ineffectual appeal."  *Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979); *see also United States v. United States Fishing Vessel Maylin*, 130 F.R.D. 684, 686 (S.D. Fla. 1990).

When determining whether a bond should be posted, the court considers: (1) the risk that the appellant would not pay the appellee's costs if the appeal is lost; (2) the appellant's financial ability to post a bond; (3) whether the appellant has shown bad faith or vexatious conduct; and (4) the merits of the appeal.  *Fleury v. Richemont North America Inc.*, No. C-05-4525 EMC, 2008 U.S. Dist LEXIS 88166 at *19 (N.D. Cal. Oct. 21, 2008).

**A.  The Risk That the Objectors Will Not Pay Appellee's Costs**

When appellants are dispersed around the country, as in this matter, plaintiff would be required to institute different collection proceedings in multiple states to recover her costs.  In *Fleury*, the court found that such pending difficulty in relation to the recovery of costs weighed

---

needed to determine the appeal; (3) premiums paid for a supersedes bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal."

in favor of imposing a bond. There, the fact that the objector was not a resident of appellee's home state of California made it more difficult for the settling parties to collect their costs, thus justifying imposition of an appeal bond. *Fleury*, 2008 U.S. Dist. LEXIS 88166 at \*22; *see also In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d 210, 213 (S.D.N.Y. 2010) (court found a significant risk of non-payment where the objectors were dispersed around the country and plaintiffs would need to institute collection actions in numerous jurisdictions to recover their costs).

Objector Huter resides in Colorado, and objector Pack resides in Tennessee. Absent an appeal bond for costs, plaintiff will be forced to institute collection proceedings in both Colorado and Tennessee. An appeal bond is the only means to mitigate this risk.

### B. Financial Ability Undocumented

There is no evidence in the record indicating that either of the objectors/appellants would be unable to post a bond. Courts presume that appellants are financially able to post appeal bonds unless they demonstrate otherwise. *In re Initial pub. Offering Sec. Litig.*, 721 F.Supp. 2d 201, 213 (S.D.N.Y. 2010); *see also Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998) ("without any showing of [appellant's] financial hardship," the imposition of a bond is "not an impermissible barrier to appeal"). If there is no information in the record concerning the appellant's ability to post a bond, this factor weighs in favor of imposing one. *Fleury*, 2008 U.S. Dist. LEXIS 88166 at \*21; *see also Chiaverini, Inc. v. Frenchies Fine Jewelry*, No. 04 CV 74 891-DT, 2008 U.S. Dist. LEXIS 45726, at \*7 (E.D. Mich. June 12, 2008).

### C. The Objectors' and Their Counsels' Conduct and Motivations Warrant the Imposition of the Requested Appeal Bond

The Court will also consider the bad faith and vexatious conduct of the objectors/appellants. Appellants are here motivated by a bad faith desire to take advantage of the

class action process. Class members will not be paid any settlement benefits until the appeals have been resolved. Doc. 26 at 27. Appellants' motivation in filing their objections with this Court was to have those objections overruled so that they could file these appeals and gain leverage for what will be unscrupulous demands for payoffs to step aside. This was exactly the process followed by the Price Firm when it dismissed its appeal after receiving a payoff in *In re Lawnmower,* and the process followed by Miller in *In re Reformulated Gasoline*, *Milliron v. T-Mobile*, *In re Mattel, In re Tyson Foods*, *White v. Experian*, and *In re Farmers Insurance Co.*[5] *See In re Initial Public Offering Securities Litig.*, 728 F. Supp. 2d 289, 294 (S.D.N.Y. 2010) (court properly took counsels' status as professional objectors into account in setting appeal bonds).

The Court should also consider that counsel for Pack initially attempted to appear and represent its client in this Court without being properly admitted by *pro hac* admission procedures. Even after plaintiff pointed out the error, Price refused to comply with *pro hac* admission procedures until ordered by the Court to do so. Doc. 65. Pack and her counsel have continued their bad faith conduct up to the date of this filing. After filing her Notice of Appeal, Pack was required to submit to the Eleventh Circuit: a Civil Appearance Statement, a Certificate of Interested Persons and Corporate Disclosure Statement, and $455 in docket and filing fees. 11th Cir. R. 33-1(a), FRAP 26.1 and Fed.R. App.P. 24(a) *respectively*. Pack, however, failed to do so. On January 6, 2012 notice was sent to Pack and her attorneys stating that by law she was required to submit the appropriate documents and filing fees within 14 days. In again failing to take this matter seriously, Pack ignored the deadline set by the Eleventh Circuit and waited to take action until January 24, 2012. Counsel accordingly notes that, pursuant to Eleventh Circuit Rule 42-1(b), the clerk may dismiss Ms. Pack's appeal without further notice.

---

[5] The above dismissals are attached as Exhibits 17 through 23.

00040944

8

The bad faith of objector Huter is demonstrated by the fact that she filed her objection in *pro per* with counsel waiting in the wings for the appeal.  This recent tactic of professional objectors (the objection is filed in *pro per* and counsel surfaces for the appeal) raises ethical issues of ghost-writing by the attorney who hides his involvement until the appeal.  As stated in *Walker v. Pacific Maritime Assoc.*, 2008 WL 1734757, at * 2 (N.D. Cal. April 14, 2008), ghost-writing "frustrates the application of Federal Rule of Civil Procedure 11 which requires all attorneys to verify through their signatures that there are sufficient grounds for the arguments in their pleadings."  Or as the Court wrote in *Deforest v. Johnny Chisholm Global Events, LLC*, 2010 WL 1792094, at *5 (N.D. Fla. May 04, 2010) "this sort of 'ghost-writing' has been deemed a deliberate evasion of the responsibilities imposed on counsel by Federal Rule of Civil Procedure 11 and, as such, has been widely condemned as unethical".  *See also In re Mungo*, 305 B.R. 762 (Bkrtcy. D.S.C. October 17, 2003) ("ghost-writing must be prohibited…because it is a deliberate evasion of a bar member's obligations….").

### D.  The Appeals are Meritless

Finally, the Court will consider the merits of the appeal when determining the appeal bond.  *Fleury*, 2008 U.S. Dist. LEXIS 88166 at *22-23 (where court considered all objections and found them meritless, "this factor weighs in favor of a bond"); *In re Wal-Mart Wage & Hour Empl. Practices Litig.*, MDL No. 1735, 2010 U.S. Dist. LEXIS  21466, at *18 (D. Nev. Mar. 8, 2010) ("The Court further finds that the four Objectors should be required to file an appeal bond sufficient to secure and ensure payment of costs on appeals which in the judgment of this Court are without merit and will almost certainly be rejected…."); *Adsani*, 139 F.3d at 79 ("a district court's imposition of any sort of cost bond…can always be described as an implicit finding that the appellant's appeal lacks merit").

Reference to the objections of Huter and Pack demonstrates that their appeals are without merit. Consider first the arguments of Huter. Huter contends that the creation of two settlement distribution tiers, corresponding to the length of time the class member purchased the product, is inequitable. This method of settlement distribution has, however, routinely been recognized by the courts as fair and equitable. *See Hall v. AT&T Mobility LLC*, 2010 U.S. Dist. LEXIS 109355 at *31-32 (D.N.J., October 13, 2010). The allocation of compensation to the class does not have to perfectly align with each individual class member's specific losses to be "fair, reasonable and adequate." *See, e.g., In re Computron Software*, 6 F. Supp. 2d 313, 321 (D.N.J. 1998) (approving an allocation plan that placed class members in uniform compensation categories based on the timing of their stock purchase); *see also In re Aetna Inc. Sec. Litig.*, 2001 U.S. Dist. LEXIS 68 at *37-38 (E.D. Pa. January 4, 2001) (same).

Huter also objects to the attorneys' fees and plaintiff incentive awards because she could not tell how the fees were earned including "how much time and effort they put into the case." Doc. 62. This objection is factually inaccurate and representative of a meritless objection designed to set the stage for the appeal and hoped-for payoff. Reference to the trial docket (and the documents included therein) establishes that the request for attorneys' fees and incentive awards, including the time and effort spent on the case, was filed by plaintiffs and their counsel, weeks prior to Huter's objection. Doc. 54-1 at 31-46; Doc. 54-2 – 54-17. All of the information Huter said she needed was available to her and every other class member.

The objections of Ms. Pack are also without merit. Pack, through her attorneys, makes similar arguments with regard to the settlement distribution and approved attorneys' fees. Additionally, Pack challenges the settlement's adequacy, its *cy pres* award and the class notice procedure. Doc. 61.

Counsel dedicated considerable time in its Memorandum in Support of its Motion for Final Approval of Settlement discussing why the terms of this settlement are fair and adequate. Doc 54-1.  Pack, meanwhile, did not even bother to tailor her objection to the circumstances of this case.  Pack objects that the settlement is inadequate because the class could have received "treble damages." Doc. 61. The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201 *et seq.* ("FDUTPA"), however, does not provide for treble damages.

Pack objects that a *cy pres* remedy is appropriate only after all class members have been "fully compensated." Doc. 61.  This argument simply serves to reaffirm the terms of the settlement.  Under the settlement, class members have an opportunity to submit a claim, and without proof of purchase, receive their full share of settlement benefits. Only after eligible class members are paid their settlement benefits will the remainder be distributed to *cy pres* recipients.

The mechanics of the notice process are left to the discretion of the court, subject only to the broad "reasonableness" standards imposed by due process.  Counsel here developed a comprehensive and cost effective notice program.  Doc. 55-1 and 55-1.  Notice included direct mailing by email and mail to over 5 million potential class members, as well as extensive publication notice.  *Id.*  The content of the notice informed class members of the settlement terms and how to obtain additional information so desired.  Assistance was obtained from notice experts in drafting the notice, and this Court specifically recognized that the notice provided complies with due process requirements and Rule 23.  *Id.* and Doc. 79.  Accordingly, the objections of Pack, just like those of Huter, were appropriately overruled by this Court.  Doc. 79.

The objectors/appellants will only be able to make arguments on appeal that were already raised before the Court.  *Kensington Rock Island Ltd. P'ship v. Am. Eagle Partners*, 921 F.2d 122, 124-25 (7th Cir. 1990).  The Huter and Price objections were addressed at length by

plaintiff and defendant in their papers in support of final approval. Doc. 69 and Doc. 70. In addition, counsel for Pack attended the hearing and presented oral argument to attempt to support the objection. After full consideration, this Court overruled both the Huter and Pack objections. Doc. 79. The Court's rulings on the objections were correct. Appellants, therefore, will carry a "heavy burden" to demonstrate that the settlement is unreasonable. *Ass'n For Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002).

### IV. A BOND IN THE AMOUNT OF $61,400 SHOULD BE POSTED

A bond in the amount of $61,400 is reasonable. First, $5,000 is a fair estimate of the costs plaintiff will incur as a result of these appeals. *See Conroy v. 3M Corp.*, No. C 00-2810 CW, 2006 U.S. Dist. LEXIS 96169, at *11 (N.D. Cal. Aug. 10, 2006) (requiring objectors to post an appellate costs bond covering estimated taxable costs ($7500)); *Fleury*, 2008 U.S. Dist LEXIS 88166 at *30 (ordering appeal bond of $5,000 to cover costs of appeal). Pursuant to Rule 7, plaintiff is not required to make any "showing of costs for a bond motion." *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2007 U.S. Dist. LEXIS 47659, at *42 (D.N.J. June 29, 2007).

Taxable costs are those specified in Appellate Rule 39(e) and 28 U.S.C §1920. Courts have generally held taxable costs to include photocopying, printing, binding, filing, and service. *Trotta v. Lighthouse Point Land Co.*, No. 07-80269-civ, 2009 WL 2973234, at *2-3 (S.D. Fla. Sept. 11, 2009). Having litigated this matter for two years, through class certification, to the eve of trial, counsel has built a substantial record. Accordingly, this appeal will entail significant recoverable costs.

Plaintiff further requests that the Court require objectors/appellants to post a *supersedeas* bond in the amount of $56,400. The settlement does not permit distributions to settlement class members until after the resolution of any appeals. Doc. 26 at 27. These appeals can

conservatively be expected to last at least one year. During that time, significant work will be done to safeguard the rights of class members. Phone lines will be kept live and trained personnel will be staffed to respond to calls from class members. Declaration of Joel Botzet in Support of Motion for Appeal Bond at ¶ 8. IVR messages and phone scripts will be updated to accurately reflect the status of the settlement, the appeals and the claim review process. The settlement website must be regularly updated and maintained throughout the appeal process. *Id.* at ¶¶7-8. Finally, if the appeals last a significant amount of time, class member addresses and contact information will need to be updated so as to ensure appropriate distributions of settlement funds can be made when these appeals are ultimately withdrawn or resolved. *Id.* at ¶ 9. All of these actions cost time and money; approximately $4,700 for each month the appeal is pending. *Id.* at ¶ 6. In addition, class members incur the lost time/value of money as their cash awards are withheld pending the appeals. Accordingly, objectors/appellants should be jointly and severally liable to post a $56,400 *supersedeas* bond to maintain the status quo. *See e.g.*, *Allapattah Services, Inc.*, 2006 WL 1132371; *Popular Grove Planting and Refining Co.*, 600 F.2d at 1191; *United States*, 130 F.R.D. at 686.

Courts have discretion to increase the bond amount at any time. *See, e.g., id.* at *42-43 ("In addition to the printing and administrative costs associated with an appeal…it is possible that the plaintiffs will face different issues from different appellants, which may increase the expenses."). Plaintiff accordingly reserves the right to seek an increase in this amount if deemed necessary.

## V.   CONCLUSION

Rule 7 was enacted to provide appellees a basic level of assurance when addressing the frivolous appeals of objectors. *Adsani*, 139 F.3d at 75; *see also Pedraza*, 313 F.3d at 1333. The

relevant factors weigh heavily in favor of requiring the objectors/appellants to post bonds in this matter. Ordering the objectors/appellants to post a $61,400 bond will serve to protect the rights of appellee Nelson, thereby effectuating the purpose of Rule 7. Plaintiff respectfully requests that such an order be entered.

Counsel for movant has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

Dated: February 8, 2012

THE WRIGHT LAW OFFICE, P.A.
WILLIAM C. WRIGHT

By:   s/William C. Wright
            WILLIAM C. WRIGHT

301 Clematis Street, Suite 3000
West Palm Beach, FL 33401
Telephone: 561/514-0904
561/514-0905 (fax)
willwright@wrightlawoffice.com

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD
THOMAS J. O'REARDON II
600 B Street, Suite 1550
San Diego, CA  92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com


BONNETT, FAIRBOURN, FRIEDMAN
 & BALINT, P.C.
Elaine A. Ryan
Patricia N. Syverson
2901 N. Central Ave., Suite 1000
Phoenix, AZ 85012
Telephone:  602/274-1100
602/798-5860 (fax)
eryan@bffb.com

psyverson@bffb.com

WHATLEY DRAKE & KALLAS
PATRICK J. SHEEHAN
60 State Street, Seventh Floor
Boston, MA 02109
Telephone: 617/573-5118
617/573-5090 (fax)
psheehan@wdklaw.com

Attorneys for Plaintiff

00040944                                    15

CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.   Executed on February 8, 2012.

s/William C. Wright<br>
WILLIAM C. WRIGHT

THE WRIGHT LAW OFFICE, P.A.
WILLIAM C. WRIGHT
301 Clematis Street, Suite 3000
West Palm Beach, FL 33401
Telephone:  561/514-0904
561/514-0905 (fax)
willwright@wrightlawoffice.com