UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-MD-02222-COHN/SELTZER

IN RE: ENFAMIL LIPIL MARKETING
AND SALES PRACTICES LITIGATION
MDL 2222

_____

OBJECTOR SANDRA M. PACK'S OPPOSITION TO JOINT MOTION
FOR A BOND TO SECURE PAYMENT OF COSTS ON APPEAL
(FED. R. APP. P. 7)

**NOW COMES** the Appellant and objecting class member, Sandra Pack ("Ms. Pack"), and submits her brief in response to the Joint Motion for a Bond to Secure Payment of Costs on Appeal:

I. PRELIMINARY STATEMENT

The Class Plaintiff, Allison Nelson ("Plaintiff"), and the Defendant, Mead Johnson & Company LLC ("Defendant") (collectively, "Appellees"), have jointly moved the Court for an order requiring Ms. Pack to post a $61,400 appeal bond under Federal Rule of Appellate Procedure 7. Fantastically – and quite incorrectly – labeling Sandra M. Pack's objection to the settlement as an attempt at an "unscrupulous money grab" by a "professional objector," the Appellees ask the Court to require Ms. Pack, a schoolteacher and mother of two minor children, to post an appeal bond purportedly representing "a reasonable approximation of the reimbursable expenses plaintiff will incur in addressing these appeals ($5,000)" and a supersedeas bond in the amount of $56,400 "for the preservation of the status quo." The latter amount purportedly represents prospective damages in the nature of future incremental claims administration costs

*See* Motion, at p. 7.[1]

The joint motion should be denied in its entirety. Significantly, the Appellees' motion is premised largely on mere speculation, base conjecture, and guess-work, rather than reliable evidence. In the final analysis, it appears that the real purpose of the Appellees' motion is to do nothing more than compel Ms. Pack and her counsel to abandon her appeal by increasing their costs and to manufacture unreasonable procedural obstacles to her meritorious appeal. In

---

[1] Appellees label and deride Ms. Pack's counsel as "professional objectors," pointing to their representation of objecting class members in three (3) previous or pending actions. A brief response is in order to answer the Appellees' attempts to inflame the issue before this Court by engaging in a vicious personal assault on Ms. Pack's counsel. First, while Ms. Pack's counsel certainly do not disclaim representation of objecting class members in those three cases, they do take umbrage at the Appellees' implication that their representation in each of those cases has been characterized by anything other than zealous advocacy for their clients.

Second, two of those objections – the *In re Lawnmower* litigation in Wisconsin and the *Toys "R" Us, Inc.* litigation in Pennsylvania – have been overruled by district courts (the former objection was withdrawn on terms agreeable to the parties, and the latter objection is the subject of a pending appeal to the Third Circuit). However, the propriety of the third objection (*In re Pre-filled Propane Tank*) has yet to be decided by the United States District Court for the Western District of Missouri.

Third, despite the Appellees attack on Ms. Pack's counsel, the Appellees have not produced, nor can they produce, a single instance where a state or federal court has concluded that either Mr. Price or Mr. McDonald has filed a frivolous claim, much less a frivolous objection to a class action settlement. Further, the Court should be mindful that, in the aggregate, Mr. Price and Mr. McDonald have been practicing law for thirty-six (36) years in Tennessee, and according to publicly-available information from the Tennessee Board of Professional Responsibility, have never been disciplined for misconduct.

Fourth, the Appellees had every opportunity to delve into the "motivations" of Ms. Pack and her counsel for objecting to the settlement approved by this Court, through written discovery or depositions. However, not a single discovery request was propounded on Ms. Pack or her counsel. And other than the minimally relevant references to the three (3) other cases in which Ms. Pack's counsel have represented objecting class members, no evidence is offered by the Appellees about Ms. Pack's motivation. Yet, the Appellees, throughout their bond-motion papers, repeatedly hint at and infer unsubstantiated and unproven sinister motives on the part of Ms. Pack and her counsel.

response to the Appellee's motion, Ms. Pack most respectfully submits that while the Court may, in its discretion, rightfully require an appellant to post an appeal bond under appropriate circumstances, this case does not present such circumstances.

Introductorily, it is important to recognize that Rule 7 does not condition the right to an appeal on the filing of an appeal bond. Moreover, it appears that on its face, the amount of the requested bond is exorbitant, as it is highly unlikely that, in an era of electronic case management and e-filings, costs associated with a very limited appeal of a judgment approving a class action settlement will reach $5,000.

Furthermore, not only are the Appellees unable to cite to an Eleventh Circuit precedent to support the notion that so-called "delay damages" may be included in the bond amount in a case such as that before this Court, but they altogether disregard the Eleventh Circuit's holding that attorney's fees or damages resulting from delay or disruption of settlement administration caused by allegedly frivolous appeals are appropriate *only where* an relevant underlying statute provides for such costs. Here, it is undisputed that no such statutory provision is applicable, nor do the Appellees cite to such an underlying statute in their motion.

Also, the Appellees errantly suggest that the bulk of the requested bond – $56,400 in prospective delay damages – may be imposed as a *supersedeas bond* under Rule 8, Federal Rules of Appellate Procedure. To be sure, there is a plain distinction between "cost bonds" and "supersedeas bonds," as a Rule 8 supersedeas bond is *retrospective* in nature and covers sums related to the merits of the underlying judgment and a stay of its execution, whereas, a Rule 7 cost bond is *prospective* and relates to the potential expenses of litigating the appeal.

Finally, the Court should consider and weigh several factors to make the determination of

-3-

whether to order Ms. Pack to post an appeal bond.  First, if the Appellees had made any effort to propound discovery to Ms. Pack or to depose her, they would have concluded that Ms. Pack is a school teacher with two minor and dependent children, and that she earns an annual salary of less than $45,000.  Accordingly, while she may post a reasonable bond legitimately intended to secure the actual costs on appeal, *e.g.*, $1000, she most certainly lacks the financial wherewithal to post a bond of the ilk sought by the Appellees.  Second, there is simply no evidence before this Court that supports the conclusion that Ms. Pack or her counsel will shirk their responsibility to pay any costs which might be assessed against them by the Eleventh Circuit if Ms. Pack's appeal is unsuccessful.  Third, Ms. Pack and her counsel respectfully submit that the question of whether her appeal has merit is one for the Eleventh Circuit and not for this Court, which has previously overruled her objections, since Rule 7 does not provide that the district court should consider the merits of an appeal in determining whether to impose an appeal bond.  And while this Court intimated its disagreement with the issues raised by Ms. Pack, the Court should nonetheless be mindful of the novelty of this area of law and that some of Ms. Pack's arguments present substantive issues that may at least warrant additional consideration on appeal.

Fourth, while the Appellees have raised a concern that Ms. Pack's appeal was instituted in bad faith or vexatiously, it is significant that they fail to cite a single instance where Ms. Pack or her counsel have been found to have filed a frivolous appeal in the past, despite the fact that her counsel have been practicing law for a collective thirty-six (36) years.  What's more, the question of whether, or how, to deter a frivolous appeal is one best left to the Eleventh Circuit, which may dispose of an appeal at the outset through a screening process, grant a well-taken motion to dismiss, or even impose sanctions under Rule 38.  Fifth, there are also numerous

public policy reasons to reject the appeal bond sought here.  For instance, a Rule 7 bond including a large amount is more likely to "chill an appeal" than a bond covering the other smaller, and more predictable, costs on appeal.  When faced with a large bond requirement, many appellants, especially individuals like Ms. Pack, may simply be unable to post the bond to pursue an appeal.  And thus, imposition of a large bond here would effectively cut off Ms. Pack's right to appeal, take away that right altogether, and force her to abandon a meritorious appeal.

## II.  LEGAL ARGUMENT

### A.  Standard of Review

"The power to impose an appeal bond under Rule 7 has been specifically given to the discretion of the district court."  *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998).  Rule 7 provides in relevant part that, "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal."  The purpose of a Rule 7 bond is to "ensure that the appellee will be paid any costs that are awarded to him if the appellant is unsuccessful on the appeal."  20 James Wm. Moore et al., *Moore's Federal Practice* § 307.10[1] (3d ed. 2010).

### B.  The Relevant Factors Weigh Heavily Against Imposition of a Bond.

To determine whether to order an appellant to post an appeal bond, courts consider several factors, including: (1) the financial ability of the appellants to post the bond; (2) the risk of the appellants' nonpayment if the appeal is unsuccessful; (3) the merits of the appeal; and (4) whether the appellants' have shown "bad faith or vexatious conduct."  *Baker v. Urban Outfitters, Inc.*, 2006 U.S. Dist. LEXIS 90120, at *1 (S.D. N.Y. Dec. 12, 2006).

*Appellees have not demonstrated that Ms. Pack has the financial wherewithal to post a bond in the amount sought.*  The Appellees were afforded a reasonable opportunity to inquire into Ms. Pack's financial circumstances, through written discovery, oral deposition, or even informally through Ms. Pack's counsel.  Indeed, the Class Plaintiff candidly concedes the failure to obtain this information in the Joint Motion, at p. 8 ("There is no evidence in the record indicating that either of the objectors/appellants would be unable to post a bond.").  In the end, the Appellees failed to make any inquiries – formal or otherwise – to obtain such information. Nevertheless, relying on the absence of evidence in the record concerning Ms. Pack's finances (as opposed to the presence of it), the Appellees now maintain that a $61,400 bond is necessary. Imposing such a large bond on her would create a serious financial hardship on her family, and would be tantamount to barring her right to appeal.  Consequently, this factor weighs against requiring a bond in any amount.

*Appellees have failed to demonstrate a reasonable risk of nonpayment.*  The Appellees feign that a risk of nonpayment exists because the objecting class members are geographically dispersed (*see* Joint Motion, at pp. 7-8) and represented by attorneys who are "professional objectors" – *i.e.*, attorneys who specialize in objecting to large class-action settlements (*see* Joint Motion, at pp. 8-10).  For certain, this argument is wrong.  In fact, in the unlikely event that Ms. Pack is unsuccessful on her appeal <u>and</u> fails to pay costs assessed against her, the Appellees would merely need to institute a single collection action in Tennessee to recover such costs. Besides, just as one court recently (and rightly) concluded in resolving the same argument:

> the geographic location of the objectors does not raise an inference
> that they will not pay costs on appeal. Further, the fact that the
> objectors are represented by counsel who specialize in objecting to
> class-action settlements is not a reason to think that they will shirk

their liability for costs on appeal.

*In re Lawnmower Engine Horsepower Marketing & Sales Prac. Litig.,* 2010 U.S. Dist. LEXIS 123761, at *18 (E.D. Wisc. Nov. 2, 2010) (footnote omitted).

What's more, as in the case of *In re Lawnmower*, while the Appellees point to the fact that Ms. Pack's attorneys have objected to three (3) other settlements in their combined thirty-six (36) years of practice, not only do Appellees fail to "point to a case in which they represented an objector who refused to pay costs taxed against him or her on appeal," but they also do not (and cannot) point to a case in which *Ms Pack has ever objected* to a class action settlement, much less failed to pay any costs assessed against her.   *Id*. at *18.

In short, the Appellees have produced nothing to this Court which could permit this Court to assess whether, much less conclude, that there is a risk of nonpayment of costs by Ms. Pack. As a result, there is not a significant risk of non-payment and this factor weighs against requiring a bond in any amount.

***The issue of whether Ms. Pack's appeal has merit does not render an appeal bond proper.***   Appellees further suggest, as the class plaintiffs did in *In re Lawnmower*, that an appeal bond is proper because the appeal is purportedly without merit.  *See* Motion, at p. 10.  But, as the *In re Lawnmower* court correctly observed, Rule 7 does not provide that the Court should consider the merits of an appeal in determining whether to impose an appeal bond.  *Id*. at 18-19. Moreover, this Court, while overruling Ms. Pack's objections and intimating its disagreement with the issues she raised, should nevertheless be mindful of the novelty of this area of law, and that Ms. Pack presents substantive issues that could warrant additional consideration on appeal. *See Chiaverini*, 2008 U.S. Dist. LEXIS 45726, at *2 (district court noting that although it

disagrees with the plaintiff's claims on appeal, "the claims raised are viable and substantial issues").

***Appellees' allegations of bad faith are unwarranted.***   The Appellees have raised the concern that Ms. Pack's appeal was filed in bad faith, perhaps in an attempt to extract a "payoff" from the Class Plaintiffs.  To be sure, however, legitimate issues exist in this appeal.  And while the Appellees maintain that Ms. Pack's motivation is to obstruct the settlement in the hopes of a payoff, *see In re Lawnmower*, at *19 (citing *Vollmer v Selden*, 350 F.3d 656, 660-61 (7th Cir. 2003)), the evidence in this Court's record simply does not enable the Court to conclude – definitively or otherwise – that Ms. Pack is pursuing her appeal for an improper purpose.  Further, as noted, while the Appellees point to three other settlements where Ms. Pack's counsel have represented an objecting class member, Appellees fail to direct the Court to even a single instance where a district court has determined that any of those objections were made "in bad faith."

What's more, "the question of whether, or how, to deter frivolous appeals is best left to the courts of appeals, which may dispose of the appeal at the outset through a screening process, grant an appellee's motion to dismiss, or impose sanctions including attorney's fees under Rule 38."  *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 961 (9th Circ. 2007).  As the Ninth Circuit held:

> "Allowing district courts to impose high Rule 7 bonds on where the appeal might be found frivolous risks impermissibly encumbering appellants' right to appeal and effectively preempting this court's prerogative to make its own frivolousness determination."

*Id.* (emphasis and quotations omitted).

Significantly, the Appellees are not left without recourse if an appeal is determined frivolous. For instance, the amount of the bond set by the district court is also subject to review on appeal. *See, e.g., Azizian*, 499 F.3d at 955. Also, the parties may move to dismiss or expedite the appeal or move the Eleventh Circuit to impose monetary sanctions, if this appeal is found to be frivolous. *See* Fed. R. App. P. 38 (2008); 28 U.S.C. § 1912. *See, e.g., Libby, McNeill & Libby v. City Nat'l Bank*, 592 F.2d 504, 514 (9th Cir. 1978). And *see generally, Fleury v. Richemont North America, Inc.*, 2008 U.S. Dist. LEXIS 88166, at *25-30 (N.D. Cal. Oct. 21, 2008).

The Appellees posit – again, without evidentiary support – that Ms. Pack's counsel are "motivated by a bad faith desire to take advantage of the class action process" and to "gain leverage for what will be unscrupulous demands for payoffs to step aside." *See* Joint Motion, at pp. 8-9. However, the Appellees cannot point to any direct evidence of ill will or dishonest purpose on the part of Ms. Pack or her counsel. And although the Court may disagree with the arguments made on appeal, and Ms. Pack and her counsel clearly disagree with this Court's decision to grant final approval of the settlement, the fact remains that the "purpose of the appeals process is to permit objectors to challenge such rulings." *In re Countrywide Financial Corp. Customer Data Security Breach Litig.*, 2010 U.S. Dist. LEXIS 131775 (W.D. Ky. Dec. 13, 2010). Accordingly, there is no evidence before the Court to support the notion that the present appeal was filed for purposes of harassment or in bad faith. Therefore, this matter is best left to the discretion of the Eleventh Circuit. *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2010 U.S. Dist. LEXIS 27242, at *7 (E.D. N.Y. Mar. 22, 2010) ("it is for the court of appeals and not the district court to decide whether Rule 38 costs and damages should be allowed in any

given case").

Additionally, granting an excessive appeal bond for Ms. Pack on the supposition that her appeal is frivolous would create precisely the sort of multiple levels of review of an appeal that the Supreme Court rejected in *Devlin v. Scardelletti*, 536 U.S. 1 (2002). *Devlin* established the right of class action objectors to appeal without first seeking intervention. In doing so, the Court expressly rejected the formality which had been adopted by several circuits "to require class members to intervene for purposes of appeal." *Devlin*, 536 U.S. at 11. The court found no purpose to the formal barrier to appeal given "the ease with which nonnamed class members who have objected at the fairness hearing could intervene for purposes of appeal." *Id*. at 12.

The Supreme Court found the formal intervention rule impractical due to the numerous issues "which should be easily addressable by a court of appeals." *Id*. at 13. The requirement to intervene required district courts to consider issues normally considered by the appellate court such as "standing to appeal, waiver of objections below, and consolidation of appeals." *Id*. at 14. Should parties be dissatisfied with a district court's decision on intervention, "such determinations still would most likely lead to an appeal." *Id*. Appellate courts would then consider the same issues analyzed by the district court. Thus, the formal intervention rule "would only add an additional layer of complexity before the appeal of the settlement approval may finally be heard." *Id*.

Similarly, punitive appellate bonds imposed to block supposedly vexatious appeals require district courts to consider issues (such as the frivolousness of an appeal) best suited to appellate courts. Should appellant-objectors be dissatisfied with their appeal bond, they can simply appeal the bond determination itself, adding another layer of complexity, which the

-10-

*Devlin* court repudiated. Such tactics were employed in cases that the plaintiffs cite favorably.[2]

### B. The Amount of the Requested Bond Is Exorbitant.

The Appellees' requested bond consists of two component parts, $5000 for costs on appeal, and $56,400 in prospective "administrative costs" as a result of the delay. While Ms. Pack does not believe any bond appropriate, for the reasons set forth herein, a $1000 bond would not be unreasonable. However, she vehemently opposes inclusion of so-called "delay damages" in any sum in the bond amount.

At the outset, although Fed. R. App. P. 7 allows the district court to require an appellant to post a bond to cover "costs," the rule fails to define "costs." Two divergent lines of cases appear to have arisen. The first holds that costs under Rule 7 include only those that may be taxed against an unsuccessful litigant under Fed. R. App. P. 39(e)[3] or 28 U.S.C. §1920[4], and

---

[2]Consider the $500,000 bond ordered from objectors in *In re Wal-Mart Wage & Hour Empl. Practices Litig.*, 2010 U.S. Dist. LEXIS 21466 (D. Nev. Mar. 8, 2010). Instead of discouraging meritless appeals, the bond forced the objectors to litigate the issue before the Ninth Circuit in a separate appeal. The district court's order to require bond was eventually stayed pending resolution of the appeal. *See In re Wal-Mart Wage & Hour Empl. Practices Litig.*, 10-15516, Dkt. No. 11 (9th Cir. Jun. 3, 2010) (citing *Vaughn v. Am. Honda Motor Co.*, 507 F.3d 295 (5th Cir. 2007)). The appeals on the merits were eventually summarily dismissed by the Ninth Circuit. *In re Wal-Mart Wage & Hour Empl. Practices Litig.*, 09-17648, Dkt. No. 47 (9th Cir. Aug. 10, 2010). And so, by requiring a bond, the district court actually multiplied the number of appeals taken, when the issue could have been resolved by appellate motion practice. *Devlin* warns against such unnecessary complexity.

[3]Under Rule 39, the following costs on appeal are taxable in the district court:

    (1) the preparation and transmission of the record;
    (2) the reporter's transcript, if needed to determine the appeal;
        (3) premiums paid for a supersedeas bond or other bond to preserve rights
        pending appeal; and
    (4) the fee for filing the notice of appeal.

[4]Under 28 U.S.C. §1920, taxable costs are:

therefore, include neither "delay damages" nor attorney's fees.  The second line of cases, on the other hand, hold that Fed. R. App. P. 39 does not define "costs" at all; rather, it merely lists which costs can be "taxed" by the district court.  Nor, this line of cases holds, does 28 U.S.C. §1920 purport to define "costs;" rather, it lists those costs that a court may properly "tax" for its own benefit.  Thus, according to these courts, "costs" under Rule 7 may include "costs" as defined by a relevant underlying substantive statute, and are not limited to the "costs" enumerated in Rule 39.  Under either line of cases, there is no legal basis in this case to include "delay damages" in the bond amount.

***Cost on appeal should be limited to $1000.***  The Appellees have the "burden of justifying the amount of [their] request or providing a reasonable estimate of the actual costs [they] may incur on appeal."  *Chiaverini, Inc. v. Frenchie's Fine Jewelry, Coins & Stamps, Inc.*, 2008 U.S. Dist. LEXIS 45726, at *2 (E.D. Mich. June 12, 2008) (citing *Lundy v. Union Carbide Corp.*, 598 F. Supp. 451, 452 (D. Or. 1984).  They have failed to satisfy that burden here.

Initially, the $5000 bond for costs on appeal should be rejected for one plain and simple reason: there are no recoverable costs for the filing and service of an electronic brief.  And so, copying, binding, and filing costs are nonexistent or at least, minimal, and should in no case

---

> (1) Fees of the clerk and marshal;
> > (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> > (3) Fees and disbursements for printing and witnesses;
> > (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> > (5) Docket fees under section 1923 of this title; and
> > (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses and costs of special interpretation on services under section 1928 of this title.

exceed $1,000.

In the end analysis, the Appellees cannot dispute that the costs itemized in Rule 39 would be – at most – a few thousand dollars.  Instead, they maintain that the amount of the bond should be based upon the purported monetary harm the Settlement Class would incur from the delayed implementation of the settlement, through incremental administrator costs.  Respectfully, Ms. Pack submits that such "delay damages" are not within the scope of the "costs of appeal" within the meaning of Rule.

***The Court cannot include damages for delay in a Rule 7 bond where no underlying substantive statute authorizes the inclusion of such costs.***  Appellees mistakenly suggest that *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002) provides a basis for an appeal bond to include so-called "delay damages."  But *Pedraza* made clear that the meaning of "costs," as used in Rule 7, is derived from the definition of costs contained in the statutory fee-shifting provision that attends the plaintiff's underlying claim.  *Pedraza*, 313 F.3d at 1333. Thus, the Court held that attorney's fees could be included in the appeal bond, *but only where* the relevant statute provides for the award of such fees to the "prevailing party."  *Id*. at 1329, 1332-36; *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2010 U.S. Dist. LEXIS 27242, at *2 (E.D. N.Y. Mar. 22, 2010) (noting that damages resulting from delay or disruption of settlement administration caused by frivolous or vexatious appeals may be appropriate where the relevant underlying statute provides for awarding costs incident to delay on appeal).

It is undisputed that absent such a statute, delay damages cannot be included in a bond amount.  *See Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 959 (9th Circ. 2007); *see also In re AOL Time Warner, Inc.*, 2007 U.S. Dist. LEXIS 69510, at *4 (S.D. N.Y. Sept. 20,

2007) (holding delay damages cannot be included in appeal bond because underlying statute does not provide for the inclusion of such costs). Significantly, no such underlying statute has been cited by the Appellees here.

Since the "delay damages" component of the Appellees' requested bond accounts for the overwhelming majority of the bond amount, further analysis of the issue is necessary. There are, to be certain, numerous reasons to reject the Appellees' requested bond amount. First, in *Adsani v. Miller*, 139 F.3d 67 (2d Cir. 1998), the Second Circuit held that attorney fees are part of "costs" when the statute providing the substantive law of the case authorizes an award of attorney's fees to the prevailing party. *Adsani*, 139 F.3d at 71-76 (copyright infringement action). Four years later, in *Pedraza*, 313 F.3d at 1328-33 & n.12, the Eleventh Circuit adopted the approach in *Adsani*. Because the underlying statute did not include attorney fees as costs, the Eleventh Circuit refused to include such fees as part of costs on appeal), finding that Rule 7 authorizes a bond only to cover "costs on appeal only as expressly defined by rule or statute." *Id*. Similarly, Appellees have failed to cite an underlying statute or rule defining such "delay damages" as "costs."

Second, including "delay damages" as a component of the bond seems to fall within the purview of 28 U.S.C. § 1912, which provides that "[w]here a judgment is affirmed by the Supreme Court or a court of appeals, the court in its discretion may adjudge to the prevailing party just damages for his delay, and single or double costs." 28 U.S.C. § 1912. Section 1912 thus expressly characterizes the delay damages as distinct from "costs," and is thus, not within the literal scope of Rule 7.

Third, the Appellees contend that damages stemming from delay should be included in

-14-

the appeal bond using the rationale to justify *supersedeas* bonds under Rule 8. However, there is no reasonable basis to impose a supersedeas bond under Rule 8. As cautioned by the Second Circuit, "cost bonds and supersedeas bonds 'should not be confused.'" *Adsani*, 139 F.3d 67, 70 n.2 (2d Cir. 1998) (quoting Wright, Miller and Cooper, *16A Federal Practice & Procedure: Jurisdiction 2d §3953*, at 278). As the *Adsani* court explained, "a supersedeas bond is retrospective covering sums related to the merits of the underlying judgment (and stay of its execution), whereas a cost bond is prospective relating to the potential expenses of litigating an appeal." *Id.* (citations and quotation marks omitted). *Accord In re AOL Time Warner*, 2007 U.S. Dist. LEXIS 69510, at *4 n.4 (refusing to "apply Rule 8 jurisprudence in the Appellate Rule 7 context" in light of the Second Circuit's "explicit distinction between supersedeas and appeal bonds").

Simply put, the rationale underlying Rule 7 bonds is separate and distinct from the rationale underlying Rule 8 bonds, which "serve a different purpose and are governed by a separate Federal Rule of Appellate Procedure." Ms. Pack does not seek a stay of judgment. For this reason alone, this Court is without authority to issue a supersedeas bond. *See generally In re American Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 695 F. Supp. 2d 157, 162 (E.D. Pa. 2010) (citing cases where supersedeas bond for appellantobjectors denied); *see also Fleury v. Richemont North America, Inc.*, 2008 WL 4680033 at *7 (N.D Cal. Oct. 21, 2008) (cost of delay not appropriately part of appeal bond); *In re AOL Time Warner, Inc.*, 2007 U.S. Dist. LEXIS 69510, *12 (S.D. N.Y. Sept. 19, 2007) (same); *In re Currency Conversion Fee Antitrust Litig.*, 2010 U.S. Dist. LEXIS 27605 at *9 (S.D. N.Y. Mar. 5, 2010) (same).

If claims are not being paid while appeals are pending, it is solely because the Appellees

agreed to that limitation in their settlement instead of insisting that class members be entitled to interest during a pending appeal.[5] Requiring Ms. Pack to pay for this delay "would be inappropriate because an objector has no obligation to ensure the availability of the judgment; the defendants, and not the objector, are charged with implementing the settlement." *American Investors Life*, 695 F. Supp. 2d at 162.

### C. Public Policy Reasons Exist to Minimize the Hurdles to a Litigant's Right to Appeal Imposed by an Appeal Bond.

While Rule 7 leaves the question of whether a bond should be imposed, and if so, the amount of the bond, to the sound discretion of the district court, *Page v. A. H. Robins Company*, 85 F.R.D. 139, 140 (E.D. Va. 1980), the Court should be mindful of the ramifications of an excessive bond:

> These decisions are not without consequence. Requiring too large a bond may have the undesirable effect of discouraging meritorious appeals. Requiring too small a bond, or no bond at all, may encourage frivolous, time-consuming, harassing appeals.

*Id*. And see *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 341 (7th Cir. 1974) (stating that "any attempt by a court at preventing an appeal is unwarranted and cannot be tolerated"). After all, while the purpose of an appellate cost bond is "to protect the rights of appellees . . . ." *Pedraza*, 313 F.3d at 1333, a Rule 7 bond is not designed "to impose an independent penalty on the appellant." *Capizzi v. States Res. Corp.*, 2005 U.S. Dist. LEXIS 7338, at *4 (D. Mass. Apr. 26, 2005); *Azizian,* 499 F.3d at 960 (Rule 7 is not intended to provide a penalty to address the frivolity of an appeal).

---

[5]Besides, the law of economics teaches us that the Plaintiffs have already been compensated for that delay. That is, if class counsel had insisted on post-judgment interest as a condition of the settlement, the Defendant surely would have reduced the settlement offer by the expected

In conclusion, it is axiomatic that a district court may not impose a bond in an amount beyond what is necessary to ensure adequate security if to do so would effectively preclude pursuit of an appeal. *Lindsey v. Normet*, 405 U.S. 56, 77-79 (1972) (holding statute conditioning appeal on posting of double bond unconstitutional under Fourteenth Amendment equal protection clause).

For all of this, requiring a large Rule 7 bond is more likely to "chill an appeal" than a bond covering the other smaller, and more predictable, costs on appeal. *Id*. at 960.

### III.   CONCLUSION

In conclusion, the appeal bond sought by the Appellees is plainly excessive. For all of the foregoing reasons, the Appellees' Joint Motion for a Bond to Secure Payment of Costs on Appeal should be denied in its entirety. Alternatively, the Court should limit any appeal bond to $1000.00.

Respectfully submitted, this 22nd day of February, 2012.

---

additional cost, given the virtual certainty of an appeal.

        /s/ Dale Paul DiMaggio
        Dale Paul DiMaggio
        Fla. Bar #395,803
        dpd@mhdpatents.com
        Malin Haley DiMaggio Bowen & Lhota, P.A.
        1936 South Andrews Ave.
        Fort Lauderdale, FL, 33316
        Phone:   (954) 763-3303
        Fax:   (954) 522-6507

        James H. Price
        jprice@lpwpc.com
        W. Allen McDonald
        amcdonald@lpwpc.com
        Lacy, Price & Wagner, P.C.
        Tenn. BPR # 016210
        249 N. Peters Rd., Suite 101
        Knoxville, TN 37923
        Phone: (865) 246-0800
        Fax: (865) 690-8199

        *Attorneys for Sandra M. Pack*

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2012, a true and correct copy of the foregoing was filed directly with the Clerk of the Court, who will send notice to all counsel and parties of record using the CM/ECF system and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mailing Notice List.

        /s/ Dale Paul DiMaggio
        Dale Paul DiMaggio