UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-MD-02222-COHN/SELTZER

IN RE: ENFAMIL LIPIL MARKETING
AND SALES PRACTICES LITIGATION
MDL 2222
_____

REPLY IN SUPPORT OF JOINT MOTION FOR A BOND
TO SECURE PAYMENT OF COSTS ON APPEAL

I.   PRELIMINARY STATEMENT

The right to appeal class action settlements is not absolute. When concern exists in relation to the merits of an objector's appeal, the Rules of Appellate Procedure enable the Court to require Appellant to post an appeal bond. Requiring objectors to post a bond serves two functions. First, it guarantees that class counsel and defendant's counsel will not be forced to engage in burdensome collection actions to recover costs incurred during the unnecessary additional litigation of the case (including those costs incurred for the delay in effectuating the judgment). Second, it helps to ensure that objectors are committed to the merits of their appeals.

Appellant Sandra M. Pack ("Pack") asks this Court to ignore precedent, cast aside reason and grant further leeway to meritless objections. Appellant has done nothing to refute the arguments made by the Joint Motion for a Bond to Secure Payment of Costs on Appeal. Moreover, Appellant does not dispute the factors this Court must consider when determining whether Pack should be required to post an appeal bond. With no legal support to validate her arguments, Appellant instead attempts to reinvent the way these factors are interpreted and applied.

Plaintiff and Defendant have outlined, highlighted and summarized the numerous cases that support their joint request for an appeal bond. Doc. 96 and 97. Although not required to do

1

so by law, Appellees have also provided this Court with a substantiated accounting of the reasonable costs that will be incurred because of the delay caused by Pack's meritless appeal. Doc. 97-1 (Declaration of Joel Botzet in Support of Motion for Appeal Bond). Imposition of a bond to secure costs is appropriate in this case. Accordingly, Plaintiff and Defendant respectfully request that such an order be entered.[1]

## II.  FINANCIAL ABILITY

Appellees do not have the burden of proving that Pack can or cannot afford to post an appeal bond. Courts presume that appellants are financially able to post appeal bonds unless they demonstrate otherwise. *In re Initial Pub. Offering Sec. Litig.*, 721 F.Supp. 2d 201, 213 (S.D.N.Y. 2010); *see also Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998) ("without any showing of [appellant's] financial hardship," the imposition of a bond is "not an impermissible barrier to appeal"). Appellant Pack has done nothing to refute this presumption or to demonstrate that she should not be required to post the requested bond.

Appellant argues that it is somehow Appellees' responsibility to establish Pack's financial ability to post a bond. Significantly, however, Pack cites no case law in support of this assertion. The law sets a clear standard. If there is no information in the record concerning Appellant's ability to post a bond, precedent demands that the Court deem this factor weighs in favor of granting the joint request for a bond. *Fleury v. Richemont North America Inc.*, No. C-05-4525 EMC, 2008 U.S. Dist. LEXIS 88166, at *21 (N.D. Cal. Oct. 21, 2008); *see also Chiaverini, Inc. v. Frenchie's Fine Jewelry*, No. 04-CV-74891, 2008 WL 2415340, at *2 (E.D. Mich. June 12, 2008).

---

[1]  On March 29, 2012, the Eleventh Circuit granted the joint motion to dismiss the appeal of Margaret Huter. Accordingly, Appellees withdraw their motion for an appeal bond as to Huter.

Although it is not Appellees' responsibility to establish that Pack is financially able to post a bond, they attempted to obtain relevant information from Pack. The evidence adduced by Appellees does not support Pack's contention that she is financially unable to post a bond. *See Baker v. Urban Outfitters, Inc.*, No. 01-CV-5440, 2006 WL 3635395, at *1 (S.D.N.Y. December 13, 2006) (Party presented limited financial information verifying some of its expenses. Information provided deemed insufficient because party had failed to affirmatively verify that it did not have other assets or interests which could be used to obtain a bond. Accordingly, the party was prohibited from claiming it was financially unable to post a bond.).

Pack is employed full time as a teacher at South Doyle Middle School. Her "net income," that assumedly means her after tax take home pay, is over $33,000 per year. Exhibit C.[2] Pack and her husband are currently living rent free. Exhibit A at 28. Pack has refused to provide any information regarding her husband's earnings or financial holdings or his contribution to monthly household expenses or to their combined income and resources. Moreover, Pack has failed to provide any information pertaining to her retirement holdings.[3] All of this information is relevant to the issue of Pack's financial ability to post a bond.

Pack testified that she has not contacted any bonding companies concerning what the actual cost of the requested bond would be. *Id*. at 27. Bonds generally cost only 1-2% of the principal. As Pack has not established her financial inability to post a bond, this factor weighs in favor of granting the joint request.

---

[2] In 2009-10, teachers in Tennessee earned nearly $9,000 more than the average wage for all occupations in the state according to the Tennessee Department of Labor and Workforce Development. *Tennessee Teacher Salaries and Benefits*, http://www.teacher-world.com/teacher-salary/tennessee.html.

[3] All full time teachers are required to contribute a tax deferred portion of their salary to the Tennessee Consolidated Retirement System. Tennessee Department of Treasury, http://treasury.tn.gov/tcrs/K-12.html.

00042132

### III. RISK OF NONPAYMENT

Rule 7 confirms that Appellees should not be forced to bear the risk of nonpayment associated with defending against appeals such as this one. The case law cited by Appellees demonstrates that this factor weighs in favor of granting the appeal bond request. *Fleury*, 2008 U.S. Dist Lexis 88166, at *22; *In re Initial Pub. Offering Sec. Litig.*, 721 F.Supp. at 213.

Pack has called her own ability to pay Appellees' costs into question. Her testimony also calls into question whether she is even aware that her attorneys have suggested that a $1,000 bond would be appropriate or if she would be willing to post even that bond (which the evidence deems insufficient to cover Appellees' costs). Pack contends that she would not be able to post the requested bond and testified that her attorneys have not agreed to post on her behalf any bond that the Court may order. Exhibit A at 27. In fact, she testified that she does not have a retainer agreement with her attorneys, one of whom is her brother. *Id.* at 25.

Ms. Pack appeared unaware of the fact that the posting of a bond requires only that the posting party put forth a fraction of the bonded sum (generally 1-2% of the principal). That calls into question her claim that she cannot post the requested bond, but if she is in fact unwilling or unable to post that bond, that confirms that Appellees are justified in their concern about the risk of nonpayment and confirms that an appeal bond is appropriate under these circumstances.

In addition, Appellees should not be forced to institute collection proceedings in Pack's home state of Tennessee when her meritless appeal fails. The only way to mitigate this risk is to require the requested bond. Requiring a bond helps limit the risk to which Appellees are exposed.

The only case Pack cites in support of her argument is *In re Lawnmower Engine Horsepower Marketing and Sales Practices Litig.* No. 08-1999, 2010 WL 4630846, (E.D. Wisc.

4

Nov. 2, 2010) (a case where Pack's attorney also represented an objector and then dismissed the appeal after receiving a pay off, or as Pack's counsel puts it, "on terms agreeable to the parties." Doc 101 at 2, n. 1). The *Lawnmower* court, however, merely held that plaintiffs in that case had not supplied it with any law on the issue of the risk of nonpayment, and therefore had not met their burden. *In re Lawnmower*, 2010 WL 4630846, at *1. Here, Appellees have cited the applicable precedent which supports their request. Doc. 96 at 8. Additionally, Appellant has called her own ability to pay Appellees' costs into question. Exhibit A at 27-30. Accordingly, imposition of an appeal bond to secure costs is appropriate.

## IV.   MERITS OF THE APPEAL

Pack argues that the merits of her appeal should not be considered in an appeal bond motion. This contention is flatly contradicted by law and Pack's own briefing. Appellant's own brief states that "the merits of the appeal" is one of the four factors this Court must consider when determining whether "to order an appellant to post an appeal bond." Doc. 101 at 5 (*quoting Baker*, 2006 WL 3635395, at *1).

Appellant also wrongly suggests that *In re Lawnmower* should be read to stand for the proposition that the merits of an appeal should not be considered when determining whether to require an appeal bond. On the contrary, the court in *In re Lawnmower* correctly observed that the merits of the appeal are relevant to the court's determination of whether an appeal bond is appropriate. *In re Lawnmower*, 2010 WL 4630846, at *1. The *In re Lawnmower* court reasoned that "the merits of the appeal might be relevant to the risk of nonpayment, in that if the appellant is pursuing a clearly frivolous appeal one might infer that the appellant is abusing the judicial process and thus has no intention of paying any costs taxed on appeal." *Id*. at *1. Here, the record demonstrates that Pack is pursuing her appeal for an improper purpose. Pack was

00042132

apparently willing to withdraw her objection, with no change in the settlement terms or benefit to the other class members, in exchange for a $150,000 payoff to her brother's law firm (one of Pack's counsel at the Price firm is her brother W. Allen McDonald).  *See* Exhibit A at 12; *see also* Exhibit A.3 (McDonald Email).[4]  When Class Counsel tried to question Pack concerning her knowledge of the offer and its terms (including her expected recovery), her attorney immediately terminated the deposition.  Exhibit A at 33.

As to the merits of her appeal, Appellant says nothing except that the Court should be "mindful of the novelty of this area of law."  There is nothing novel about Pack's objections or appeal.  Her opening brief on appeal raises the same complaints routinely made by serial objectors: settlement relief was too low, attorneys' fees were too high, notice could have been different, and though courts across the country have approved *cy pres* distributions, it was an abuse of discretion to approve *cy pres* in this case.  This Court overruled each objection after extensive briefing and oral argument by Mr. McDonald.  Doc. 79.  Mr. McDonald and his colleagues made the same basic objections to the other class action settlements they have challenged.  Doc. 69-3; Doc 69-4; Doc. 96-3.  Pack's objections were properly overruled by this Court as they are formulaic and not even tailored to the circumstances of this case.[5]

---

[4]  This evidence is admissible to raise doubt about Appellant's motives in pursuing the appeal.  *See Rader v. ShareBuilder Corp.*, 722 F.Supp. 2d 599, 605 (D. Del. 2011) (noting that evidence of settlement offer admissible to prove that party was acting in bad faith, threatening and attempting to blackmail the other party); *Jablonski v. St. Paul Fire & Marine Ins. Co,* No. 2:07-CV-00386, 2009 WL 2252094, at * 8 (M.D. Fla. July 24, 2009) (offers to compromise were admissible to prove that plaintiff acted unreasonably); *ESPN, Inc. v. Office of Comm'r of Baseball*, 76 F.Supp. 2d 383, 412-13 (S.D.N.Y. 1999) (evidence of settlement materials admissible to establish party's improper motive); *Resolution Trust Corp. v. Blasdell*, 154 F.R.D. 675, 681 (D.Ariz. 1993) (settlement negotiations admissible to prove improper motive in filing suit).

[5]  "Pack objects that the settlement is inadequate because the class could have received 'treble damages.'  Doc. 61.  The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201 et seq. ('FDUTPA'), however, does not provide for treble damages." Doc. 96 at Page 11.

00042132

Pack's objections and appeal are without merit. Accordingly, this factor weighs heavily in favor of granting the joint motion.

## V.     BAD FAITH AND VEXATIOUS CONDUCT

Appellant has exhibited bad faith and vexatious conduct since she first filed her objection. From her failure to follow established *pro hac* admission procedures absent a court order (Doc. 65), to her failure to timely submit required documentation or pay docket and filing fees to the Eleventh Circuit (Ex. B), Appellant has flouted the rules of court.

Consider also Pack's objection and appeal. Appellant claims that the class notice was insufficient. She admits, however, that she did not read the notice which she received. Exhibit A at 19. Pack also claims that the settlement relief to be distributed to class members is inadequate. Pack, however, admits to having no idea of the settlement relief value. *Id.* at 24. Pack doesn't even understand that she filed an objection to attorneys' fees or the *cy pres* charitable donation. Nor could she since she has never seen or read the objections to the settlement that were filed on her behalf. *Id.* at 17.

Pack is represented by her brother's law firm: Lacey, Price & Wagner from Knoxville, Tennessee. *Id.* at 19. Pack admitted she did not sign a retainer agreement with the Price firm, in direct contravention of the professional rules of conduct. Tennessee Rules of Professional Conduct Rule 1.5(c); Exhibit A at 25. In this vein, Pack has done little to demonstrate that a proper attorney/client relationship exists. Pack testified that she is not paying the Price firm for their services (Exhibit A at 25), yet she also denies a contingency arrangement because she doesn't expect to get any money out of the appeal and she has no agreement pursuant to which the Price firm would give her any portion of a settlement or a court award. *Id.* at 31. Pack has seemingly granted the Price firm carte blanche in the objection and this appeal. One can only presume that the $150,000 sought by Pack's counsel to drop the appeal would go to benefit her

7

brother and his colleagues. Exhibit A.3 (McDonald Email). Certainly no money would go to the class.

Appellant's questionable commitment to her objection and its legitimacy is further evidenced by her actions during her deposition. Pack agreed to be deposed on issues "relevant to the appeal bond issue." Doc. 110-1. Accordingly, Plaintiff and Defendant took the necessary steps to have their attorneys present at the scheduled deposition. The two attorneys that traveled to Knoxville, Tennessee, one of whom made the trip from Hartford, Connecticut, were, however, prevented from deposing Pack on the issues relevant to their appeal bond motion. Despite requests from Defendant's counsel, only thirty minutes into the deposition, Pack and her counsel walked out, claiming that the questions being asked were irrelevant.

The bad faith and vexatious conduct of Appellant and her counsel has been established. Accordingly, this factor weighs in favor of requiring Pack to post the requested bond.

## VI.     THE AMOUNT REQUESTED IS REASONABLE

### A. $5,000 is a Reasonable Approximation of Costs to be Incurred

Taxable costs will likely be substantial. The matter was litigated for two years, through class certification, to the eve of trial. The record encompasses eight cases covered by the multi-district litigation. Although Appellees are not required to "make any showing of costs for a bond motion," they have provided this Court with more than enough evidence and precedential support to justify imposition of a modest $5,000 cost bond. *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2007 U.S. Dist. LEXIS 47659, at *42 (D.N.J. June 29, 2007).

Although Appellant argues that "copying, binding, and filing costs are nonexistent or at least, minimal, and should in no case exceed $1,000," no evidence has been supplied to validate this contention. On the contrary, Appellant actually concedes that costs could total in the

8

thousands of dollars. Doc. 101 at 13. For instance, Appellant has left it to Appellees to pay the costs of transcribing the final approval hearing and designating the transcript for the appeal. A cost bond in the amount of $5,000 is thus unquestionably reasonable.

### B. Imposition of a $56,400 Supersedeas Bond is Reasonable

"The district court has substantial discretion to determine the amount of a bond necessary to ensure the payment of costs on appeal." *In re Checking Account Overdraft Litigation*, No. 09-MD-02036, 2012 WL 456691, at *2 (S.D. Fla. 2012). Moreover, "the costs that can be included in a Rule 7 bond are not … limited to costs defined by Rule 39." *Id.* (court ordered objector/appellants to post a bond in the amount of $616,338).

Appellees have never, as Appellant suggests, included attorneys' fees in the calculation of the appropriate bond amount. Appellees, however, are not barred from seeking and appropriately obtaining a *supersedeas* bond to cover costs that will be incurred as a result of this meritless appeal. Consider *Allapattah Services, Inc. v. Exxon Corp.*, "Pursuant to Rule 7, the Court will require Westheimer to post an appeal bond in an amount sufficient to cover the damages, costs and interest that the entire class will lose as a result of the appeal. The amount of the bond will be $13,500,000.00." No. 91-0986, 2006 WL 1132371, at *18 (S.D. Fla. April 7, 2006) (citation omitted). In this vein, the amount requested ($56,400) is modest. Compare *Conroy v. 3M Corp.*, No. 00-CV-2810, Order Granting Plaintiff's Motion for Appellate Bond (N.D. Cal. Aug. 10, 2006) (objectors ordered to post an appeal bond in the amount of $431,167); *Barnes v. FleetBoston Fin. Corp.*, No. 1:01-CV-1039, slip op. at *2 (D. Mass. Aug. 22, 2006) (order imposing $645,111 appeal bond); *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, MDL No. 1735, 2010 WL 786513, at *2 (D. Nev. Mar. 8, 2010) (aggregate $1.5 million appeal bond imposed).

00042132

As *In re Ins. Brokerage Antitrust Litigation* makes clear, "[A] district court, familiar with the contours of the case appealed, has the discretion to impose a bond which reflects its determination of the likely outcome of the appeal." *In re Ins. Brokerage Antitrust Litigation*, No. 04-5184, 2007 WL 1963063, at *2 (D.N.J. 2007) (*quoting Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998)).  The Appellees Joint Motion and supporting declaration from the class action settlement administrator provides this Court with a detailed breakdown of the justifications underlying their request for a $56,400 *supersedeas* bond.  Doc. 97-1.  Appellant's arguments refuting these justifications are misplaced and evidence its misunderstanding of the law.  Accordingly, Appellees' request for a *supersedeas* bond in the amount of $56,000 is reasonable.

### VII.   CONCLUSION

Plaintiff and Defendant recognize the need to safeguard the rights of meritorious objectors.  They simultaneously acknowledge, however, that serial objectors produce unwarranted waste and harm.  *Manual for Complex Litigation (Fourth)*, §21.643, p. 326.  By helping to ensure that the judiciary is not clogged by meritless appeals and the subsequent collection actions that all too often follow, appeal bonds help to increase access to the courts.

For the reasons set forth above and in the Joint Motion, Appellees respectfully request that this Court require Pack to post a $61,400 appeal bond.

Dated:  April 5, 2012                                           THE WRIGHT LAW OFFICE, P.A.
                                                                WILLIAM C. WRIGHT


                                                                By:    /s/ William C. Wright
                                                                         WILLIAM C. WRIGHT

                                                                301 Clematis Street, Suite 3000
                                                                West Palm Beach, FL 33401
                                                                Telephone:  561/514-0904
                                                                561/514-0905 (fax)
                                                                willwright@wrightlawoffice.com

10

00042132

        BLOOD HURST & O'REARDON, LLP
        TIMOTHY G. BLOOD
        THOMAS J. O'REARDON II
        701 B Street, Suite 1700
        San Diego, CA 92101
        Telephone: 619/338-1100
        619/338-1101 (fax)
        tblood@bholaw.com
        toreardon@bholaw.com

        BONNETT, FAIRBOURN, FRIEDMAN
         & BALINT, P.C.
        Elaine A. Ryan
        Patricia N. Syverson
        2901 N. Central Ave., Suite 1000
        Phoenix, AZ 85012
        Telephone: 602/274-1100
        602/798-5860 (fax)
        eryan@bffb.com
        psyverson@bffb.com

        WHATLEY DRAKE & KALLAS
        PATRICK J. SHEEHAN
        60 State Street, Seventh Floor
        Boston, MA 02109
        Telephone: 617/573-5118
        617/573-5090 (fax)
        psheehan@wdklaw.com

        *Attorneys for Plaintiff*

00042132

Dated:  April 5, 2012	AXINN VELTROP & HARKRIDER LLP
	GAIL L. GOTTEHRER (pro hac vice)


	*By:*	*/s/* Gail L. Gottehrer
	       GAIL L. GOTTEHRER (pro hac vice)

	90 State House Square, 9th Floor
	Hartford, Connecticut 06103
	Telephone: 860.275.8100
	Facsimile: 860.275.8101
	glg@avhlaw.com

	*Attorneys for Defendant*
	*Mead Johnson & Company LLC*

00042132