UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-MD-02222-COHN/SELTZER

IN RE: ENFAMIL LIPIL MARKETING AND
SALES PRACTICES LITIGATION
MDL 2222
_____/

## ORDER GRANTING IN PART AND DENYING IN PART JOINT MOTION FOR AN APPEAL BOND

**THIS CAUSE** is before the Court on the Joint Motion for a Bond to Secure Payment of Costs on Appeal [DE 96] ("Motion"). The Court has carefully reviewed the Motion, Defendant Mead Johnson's Memorandum in Support thereof [DE 97] ("Mead Johnson's Mem."), Objector Sandra M. Pack's Response [DE 101] ("Response"), and Plaintiff and Mead Johnson's Reply [DE 121] ("Reply") and is otherwise fully advised in the premises.[1]

## I. BACKGROUND

In October 2009, Allison Nelson ("Plaintiff") filed suit against Defendant Mead Johnson & Johnson Company ("Mead Johnson") in Nelson v. Mead Johnson, 09-61625-CIV-COHN/SELTZER. The Complaint alleged that Mead Johnson attempted to raise sales by falsely representing that its Enfamil LIPIL baby formula was the only baby formula on the market which contains DHA and ARA. In November 2010, after

---

[1] Plaintiff and Mead Johnson (collectively "parties") also originally sought an appeal bond against Objector Margaret Huter ("Huter"). Huter filed a response [DE 102], but later elected to dismiss her appeal. See Order granting Appellees and Appellant Huter's Joint Motion to Dismiss [DE 120]. Accordingly, the parties no longer seek an appeal bond against Huter. See Reply at 2 n.1.

Plaintiff and Mead Johnson attached a Request for Hearing as an exhibit to their Motion. See DE 96-5. Because the Court does not believe oral argument would be helpful to the Court, the request is denied.

oral argument, this Court granted Plaintiff's Motion for Class Certification.  After similar complaints were filed around the country against Mead Johnson, on December 7, 2010, Mead Johnson moved the Judicial Panel on Multidistrict Litigation ("MDL panel") for consolidation and transfer of all cases to one forum.  On February 9, 2011, the MDL panel ruled that five cases were related to the original Nelson case and transferred them to this Court.  Two additional cases were also subsequently transferred to the MDL.

On March 15, 2011, the parties filed a Settlement Stipulation covering all cases in the MDL.  See Stipulation of Settlement [DE 26].  The settlement called for Mead Johnson to pay up to $12 million in cash or products to the class.  Id. § IV.A.3.  Class members who purchased Enfamil for longer than six months could receive either $12.00 or two, 12.5-ounce containers of formula.  Id. § IV.A.2.b.  Class members who purchased the product for less than six months could receive either $6.00 or one, 12.5 ounce container of formula.  Id.  § IV.A.2.a.  Additionally, if the total amount of payments to class members was less than $8 million, pursuant to the *cy pres* doctrine, Mead Johnson would pay the remaining amount, up to $8 million, in product to one or more charities selected by the parties and approved by the Court.  Id. § IV.B.

The Settlement also provided that Mead Johnson would pay all notice costs, the costs to review claims and distribute settlement fund, the costs to otherwise administer the settlement, and attorneys' fees and expenses up to the agreed amount.  Id. §§ IV.C, VIII.A.  The Court held a preliminary approval hearing on March 18, 2011 in which the Court approved the motion for preliminary approval of class action settlement.  See

Order Preliminarily Approving Class Action Settlement, Conditionally Certifying the Class, Providing for Notice and Scheduling Order [DE 28]. Allison Nelson was appointed class representative, class counsel was appointed to represent the class, the final approval hearing was set, and the Claims Administrator was directed to publish the class notice and administer the claims. Id.

On September 26, 2011, the Court held a final fairness hearing on the proposed settlement. At the fairness hearing, the Court found that the settlement was fair, reasonable, and adequate and was not the product of collusion between the parties. The Court also overruled the eleven objections made to the settlement, including the objection of Sandra Pack, who was represented by counsel at the fairness hearing. On November 14, 2011, the Court entered a final order approving the class action settlement. See DE 79. The Court subsequently entered a final judgment and approved a joint motion for *cy pres* distribution on January 9, 2012. See DE 86, 87.

Meanwhile, two objectors, Margaret Huter ("Huter") and Sandra Pack ("Pack") appealed the Court's final approval of the settlement. See Notices of Appeal [DE 81, 82]. The parties filed the instant motion pursuant to Federal Rule of Appellate Procedure 7 seeking that the Court require Huter and Pack to post an appeal bond on February 8, 2012. The parties contend that both appeals are frivolous, brought in bad faith, and filed by professional objectors. Motion at 1. Without an appeal bond, they argue that "there is a significant risk that the objectors will not pay the costs of appeal." Id. The parties seek a bond of $61,400. Id. at 6. This amount includes $5,000 of reimbursable expenses the parties anticipate they will incur during the appeal and

$56,400 to preserve the status quo on behalf of the non-objecting class members. Id. Pack opposes the parties' Motion, arguing that the request for an appeal bond should be denied in its entirety, or alternatively, only a $1,000 bond is warranted. Response at 11.

## II. DISCUSSION

### A. Legal Standard.

Federal Rule of Appellate Procedure 7 provides that "the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. When deciding whether an appeal bond is merited, "courts consider (i) the appellant's financial ability to post a bond; (ii) the merits of the appeal; (iii) whether the appellant has shown any bad faith or vexatious conduct; (iv) the risk that the appellant would not pay appellee's costs if the appeal is unsuccessful . . .; and (v) the appellant's attorney's prior actions." In re Checking Account Overdraft Litig., No. 1:09-MD-02036-JLK, 2012 WL 456691, at *2 (S.D. Fla. Feb. 14, 2012) (citations omitted).

### B. The Parties Are Not Entitled to a *Supersedas* Bond of $56,400.

The parties argue that they are entitled to a *supersedas* bond in the amount of $56,400 which covers costs associated with delay in finalizing the settlement. Motion at 12-13. Because the settlement does not permit distributions to the settlement class until all appeals are resolved, the parties argue that they will incur significant costs to

"safeguard the rights of class members."  Motion at 13.  Specifically, the parties state that while Pack's appeal is pending, Mead Johnson will incur expenses of approximately $4,700 per month.   Mead Johnson's Mem. at 2.  This amount includes "costs for work the Claims Administrator will need to do during the pendency of the appeal, including project accounting and administration fees, system management fees, fees associated with updating the information on the Settlement Website and toll free number, and fees for time spent reviewing correspondence and responding to inquiries from class members."  Id. at 1-2 (citing Declaration of Joe Botzet of Rust Consulting ("Botzet Declaration") [DE 97-1] ¶¶ 7-8).  They argue that requiring Pack to post a bond "will ensure that Mead Johnson will be able to collect these administration costs of delay from Appellants if they are awarded to Mead Johnson by the Court of Appeals." Id. at 2.  Pack opposes a bond related to these administration costs, arguing that there is no Eleventh Circuit precedent which permits the parties to include these costs in an appeal bond.  Response at 3.

Federal Rule of Appellate Procedure 39(e) provides that costs on appeal that may be taxed include: "(1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a supersedas bond or other bond to preserve rights during appeal; and (4) the fee for filing the notice of appeal."  Fed. R. App. P. 39(e).  The Eleventh Circuit has never approved including damages to a class in an appeal bond.  Eastwood Enters., LLC v. Farha, No. 8:07-cv-1940-T-33EAJ, 2011 WL 2681915, at *1 (M.D. Fla. July 11, 2011) (noting that in Pedraza v. United Guaranty Corp., 313 F.3d 1323 (11th Cir. 2002), the

5

Eleventh Circuit "did not address or approve including potential damages to a class in an appeal bond."). There is also a lack of consensus among district courts in this circuit as to whether delay costs may be the subject of an appeal bond. In Eastwood Enterprises, LLC v. Farha, the Middle District of Florida concluded that the plaintiffs had "not met their burden of establishing a right to an appeal bond to cover delay damages to the class." Id. at *2. In In Re Checking Account Overdraft Litigation, however, Judge King concluded that an appeal bond could include the costs related to the delay of distribution of funds to the class. 2012 WL 456691, at *3. Specifically, Judge King approved a $616,338.00 bond, an amount which represented two years of compounded interest on the $280 million settlement plus a $5,000 cost bond. Id.

The Court finds that the present case is distinguishable from In Re Checking Account Overdraft Litigation on several grounds. In In Re Checking Account Overdraft Litigation, the court concluded that "because the filing of this appeal prevents distribution of the Settlement proceeds as ordered by this Court's Final Judgment, it is an actual stay of Judgment and bond is appropriate." 2012 WL 456691, at *2. In that case, however, the parties sought relief under both Federal Rules of Appellate Procedure 7 and 8. Id. at *1. Here, the parties have sought relief solely under Rule 7. Additionally, in In Re Checking Account Overdraft Litigation, the plaintiffs sought to protect a tangible benefit to the class members: two years' compounded interest on the settlement amount. 2012 WL 456691, at *3. In this case, the Settlement Stipulation provides that Mead Johnson "shall pay the cost of Class Notice and Claim Administration." Settlement Stipulation § IV.C. Indeed, the $56,400 in delay costs

described in the Botzet Declaration are solely additional administration costs which the parties agreed are to be borne by Mead Johnson.  Thus, unlike in In Re Checking Account Overdraft Litigation, the parties seek to protect Mead Johnson rather than the class as a whole.[2]  Accordingly, due to the lack of binding appellate authority on this issue[3] and the parties' failure to demonstrate a tangible threat to the class as a whole, the Court declines to grant a *supersedas* bond in the amount of $56,400.

**C.  The Parties have Failed to Document Anticipated Costs of $5000.**

The parties also seek a bond of $5,000 to cover their costs on appeal.  Motion at 6.  Plaintiff argues that "$5,000 is a fair estimate of the cost plaintiff will incur as a result of these appeals."  Id. at 12.  Pack disputes that the parties are entitled to a bond.  She

---

[2] Similarly, in Allpattah Services, Inc. v. Exxon Corp., the court imposed an appeal bond "in an amount sufficient to cover the damages, costs and interest that *the entire class will lose* as a result of the appeal."  No. 91-0986-CIV, 2006 WL 113271, at *18 (S.D. Fla. Apr. 7, 2006) (emphasis added).  Here, the parties have failed to articulate how additional expenses to be borne by Mead Johnson will impact the class.  As Pack points out in her response, "[i]f claims are not being paid while appeals are pending, it is solely because the Appellees agreed to that limitation in their settlement instead of insisting that class members be entitled to interest during a pending appeal."  Response at 15-16.

[3] Mead Johnson cites In re Pharmaceutical Industry Average Wholesale Price Litigation, 520 F. Supp. 2d 274 (D. Mass. 2007), to support its argument that a bond to cover administrative costs arising from delay is warranted.  In In re Pharmaceutical Industry Average Wholesale Price Litigation, however, the court imposed the appeal bond because the court found that the one-sentence objection was frivolous and inadequate to preserve the objection on appeal.  520 F. Supp. 2d at 278.  In In Re Broadcom Corp. Securities Litigation, also cited by Mead Johnson, the court imposed an appeal bond which included administrative costs based on delay because the class would incur these additional expenses.  No. 01-cv-275, 2005 U.S. Dist. LEXIS 45656, at *9 (C.D. Cal. Dec. 5, 2005).

argues that (1) the parties have failed to demonstrate that she has the financial ability to post a bond; (2) they have failed to demonstrate a risk of non-payment; (3) the issue of whether her appeal has merit does not render an appeal bond proper; and (4) the allegations of bad faith on the part of Pack are unwarranted.  Response at 6-8.  In the event that the Court finds that a bond for costs is proper, Pack contends that any such bond should be limited to $1,000.  Id. at 12.

Applying the factors from In re Checking Account Overdraft Litigation, the Court finds that an appeal bond is warranted.  First, there is nothing in the record before the Court that Pack is financially unable to post a bond.  An objector's ability to post a bond is presumed.  In re Initial Pub. Offering Sec. Litig., 728 F. Supp. 2d 289, 293  (S.D.N.Y. 2010).  According to the parties, Pack is employed full time, making in excess of $33,000 per year.  Reply at 3.  Pack is married and lives with her husband rent free.  Id.  Pack did not present any evidence which disputes her ability to post a bond.  See In re Initial Pub. Offering Sec. Litig., 728 F. Supp. 2d at 293.  Second, the Court finds little merit to Pack's appeal.  The Court already considered and overruled Pack's objections to the settlement agreement.  The Court is also troubled that Pack's attorney, W. Allen McDonald, offered to withdraw her appeal in exchange for a payment of $150,000.  Reply at 6 & Exhibit 3 to the Deposition Transcript of Sandra Pack [DE 121-1].  This settlement offer suggests that Pack's objections are tied to her ability to garner a windfall for herself rather than ensuring an adequate settlement for the class.

Third, the Court  agrees that there is evidence of bad faith on the part of Pack.  Pack is represented by her brother's law firm.  Reply at 7 & Deposition Transcript of

Sandra Pack [DE 121-1] ("Pack Tr.") at 10:15-11:6.  When questioned regarding whether she had a retention agreement with her brother's law firm, Pack stated that she did not sign a retainer agreement with the firm.  Reply at 7 & Pack Tr. at 25:7-15.  Pack also admitted that she had never read any documents concerning this litigation.  Reply at 7 & Pack Tr. at 17:5-19:16.  Given Pack's close familial relationship with one of the attorneys representing her, the Court finds Pack's lack of knowledge about her own case worrisome and evidence of her lack of good faith.  Fourth, the Court finds, that given Pack's lack of awareness regarding the details of her own appeal, there is a risk that she may not pay costs if her appeal is unsuccessful.  Finally, the Court agrees with the parties that the representation of three previous objectors by the Lacy, Price & Wagner firm weighs in favor of requiring an appeal bond in this case.  See In re Initial Pub. Offering Sec. Litig., 728 F. Supp. 2d at 295 (holding that appeal bond was warranted because "professional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients.").

Although the Court agrees that the parties are entitled to an appeal bond, the Court finds that the parties have provided insufficient documentation that a $5,000 bond is necessary.  Other than a bare assertion that this amount is necessary, the parties fail to provide any support that their costs on appeal will total $5,000.  Plaintiff cites a case from the District of New Jersey for the proposition that she is "not required to make any 'showing of costs for a bond motion.'"  Id. (quoting In re Ins. Brokerage Antitrust Litig., MDL No. 1663, 2007 U.S. Dist. LEXIS 45659, at *42 (D.N.J. June 29, 2007)).  While it

is true that the court in that case did not require the plaintiffs "to make some sort of delineated showing of costs for a bond motion," other courts have reached the opposite result.  See In re Ins. Brokerage Antitrust Litig., 2007 U.S. Dist. LEXIS 45659, at *42.  In In re Pharmaceutical Industry Average Wholesale Price Litigation, a case cited by Mead Johnson in support of the request for a *supersdeas* bond, the court declined to include $700 for costs in the bond amount because the plaintiffs "failed to submit any evidentiary authority for their estimates that expenses will cost approximately $700." 520 F. Supp. 2d at 279.  Here, Pack disputes that $5,000 is warranted because "copying, biding, and filing costs are nonexistent, or at least, minimal."  Response at 12.

The Court agrees that $5,000 seems an excessive amount of costs in this particular case.  In In re Checking Account Overdraft Litigation, Judge King included $5,000 for costs in an appeal bond.  2012 WL 456691, at *3 n.6.  However, that case involved a $280 million settlement, over 60 members cases, and an MDL docket with over 2,400 docket entries on the date that the appeal bond was approved.  By contrast, the settlement in this matter is between $8 million and $12 million, there are only 8 member cases, and the MDL docket has only 121 docket entries as of today's date.  Thus, in the absence of further documentation from the parties, the Court believes that a $5,000 appeal bond for costs is excessive.  The Court finds that an appeal bond of $1,000 is fair and reasonable and will secure the parties' costs on appeal.

### III. CONCLUSION

In light of the foregoing, it is **ORDERED AND ADJUDGED** that the Joint Motion

for a Bond to Secure Payment of Costs on Appeal [DE 96] is **GRANTED IN PART AND DENIED IN PART**. Sandra Pack is required to post an appeal bond in the amount of **$1,000** (one-thousand) on or before **April 23, 2012.**

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 9th day of April, 2012.

*[Signature]*
JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF